N/S/I

FEE PAID

FILED

1  Edwin Hamid Nahavandi
2  5710 Comanche Ave.
   Woodland Hills, CA. 91367
3  Telephone: (818) 569-9673
4  Email: edwin.nahavandi@gmail.com

5  Plaintiff in pro per

2024 MAY -7  PM 12: 05

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY  EEE

6

7

8

9            UNITED STATES DISTRICT COURT

10          CENTRAL DISTRICT OF CALIFORNIA

11                 WESTERN DIVISION

12                                    2:24-CV-03791-RGK-MRWx

| | |
|---|---|
| 13  EDWIN HAMID NAHAVANDI | Case No. |
| 14                    Plaintiff(s), | **COMPLAINT** |
| 15      vs. | |
| 16  BOARD OF TRUSTEES OF THE | **1. Violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.** |
| 17  CALIFORNIA STATE UNIVERSITY (the State of California acting in its higher education capacity); ERIKA DREW BECK, in her official capacity as President of California State University, Northridge; ZEINA OTAKY RAMIREZ, in her official capacity as Director of Student Conduct and Ethical Development at California State University, Northridge; WILLIAM WATKINS, in his official capacity as Vice President of Student Affairs at California State University, Northridge | **2. Violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq.** |
| | **DEMAND FOR JURY TRIAL** |
| 26                   Defendant(s). | |

27

28

- 1 -
COMPLAINT

**INTRODUCTION**

1.      This action arises out of California State University, Northridge's retaliation, discrimination, wrongful suspension and probation towards Plaintiff EDWIN HAMID NAHAVANDI, for the engagement of participating in his protected activities that were based upon his disability, race, color, and national origin, which were excluded, prevented, and deprived, personally targeting his perceived status to give him unequal, uncivil, inequitable, and biased treatment.

2.      Action is brought under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq. to prohibit CSU, Northridge from the engagement of discrimination on the basis of race, color, or national origin, and disability.

**JURISDICTION, VENUE, AND DIVISIONAL ASSIGNMENT**

3.      Plaintiff brings this action pursuant to 42 U.S.C. § 2000d et seq, and 29 U.S.C. § 794 et seq. Jurisdiction is conferred in this Court by 28 U.S.C. § 1331 because the causes of action arise under the laws of the United States, and is pursuant to 42 U.S.C. § 2000d-7(a)(1), waiving state immunity from suit in federal court. Plaintiff is in compliance with the Government Torts Claim Act, and sought through all appropriate exhaustive and administrative measures before proceeding, allowing this Court to have full jurisdiction.

4.      Venue is proper in this Court pursuant to 28 U.S.C § 1391 because Defendants reside in the Central District of California, and conduct business in the State of California. This action is properly assigned to the Western Division because a substantial part of the events or omissions giving rise to the claim occurred in the County of Los Angeles.

**PARTIES**

5.      Plaintiff EDWIN HAMID NAHAVANDI is a Middle Eastern Jew with a learning disability who is currently under disciplinary probation in all 23 CSU campuses. Before Plaintiff was suspended from CSU, Northridge, he was receiving

1  funding by the California Department of Rehabilitation for his disability. Plaintiff at
2  all relevant times during the events claimed in this complaint resided in Los Angeles,
3  California.

4        6.     Defendant BOARD OF TRUSTEES OF THE CALIFORNIA STATE
5  UNIVERSITY (hereinafter "Defendant CSU") is a public entity under Cal. Gov.
6  Code § 811.2 acting in its higher education capacity to govern all 23 CSU campuses,
7  and is the only proper entity to be named in a suit. Defendant CSU at all relevant
8  times during the events claimed in this complaint resided in Los Angeles, California.

9        7.     Defendant ERIKA DREW BECK is sued in her official capacity as the
10 President of California State University, Northridge. Her duties include governing
11 and overseeing the operations of CSU, Northridge. Plaintiff believes that Defendant
12 BECK at all relevant times during the events claimed in this complaint resided in Los
13 Angeles, California.

14       8.     Defendant ZEINA OTAKY RAMIREZ is sued in her official capacity as
15 the Director of Student Conduct and Ethical Development at California State
16 University, Northridge. Her duties include enforcing the CSU Student Conduct Code.
17 Plaintiff believes that Defendant RAMIREZ at all relevant times during the events
18 claimed in this complaint resided in Los Angeles, California.

19       9.     Defendant WILLIAM WATKINS is sued in his official capacity as the
20 Vice President of Student Affairs at California State University, Northridge. His
21 duties include governing and overseeing CSU, Northridge's Student Affairs
22 departments. Plaintiff believes that Defendant WATKINS at all relevant times during
23 the events claimed in this complaint resided in Los Angeles, California.

24                           **STATEMENT OF FACTS**

25       10.    During the beginning of the Fall 2022 semester Plaintiff EDWIN
26 HAMID NAHAVANDI (hereinafter "Plaintiff") moved into California State
27 University, Northridge's student housing as a resident to be closer to the University.

28

During the time in which Plaintiff resided as a resident he experienced Antisemitic rhetoric and harassment from his roommates.

11.    Eventually as time passes one of the roommates started harassing Plaintiff about his Jewish lifestyle, and became much more hostile after Plaintiff would practice his religion, which caused difficulty with the participation of his academic courses.

12.    Plaintiff was worried, so he went to the University's Office of Student Housing and Residential Life to express his concerns about the issues he was facing, from his roommate's discrimination. The office told Plaintiff that they don't deal with matters involving such claims, and that the Plaintiff would have to sort it out by himself or request a room change.

13.    Plaintiff went to the University's Office of the Vice President for Student Affairs (hereinafter "OVP") to discuss and report the situation, the employee at the office suggested that the Plaintiff should go to counseling, as a result of his roommate's behavior revolving Antisemitism.

14.    Plaintiff went to the University's Office of Disability Resources and Educational Services (hereinafter "DRES") to speak about the matter, and ask about filing a discrimination report to the University's Office of Equity and Compliance (hereinafter "OEC"). The employee discouraged Plaintiff from filing a report, discussing that problems do occur between roommates, explaining how this behavior is normal for what the Plaintiff is experiencing, and recommended that he go to the University Counseling Service (hereinafter "UCS") building upstairs to talk about his situation, towards his roommate's harassment about Jews.

15.    Plaintiff went to the UCS to talk about the situation, of his roommate's inappropriate behavior against Jewish people. The office scheduled a meeting for the Plaintiff to meet with their therapist Amy Rosenblatt. Plaintiff spoke to Dr. Rosenblatt about the situation, towards his roommate's aggressive conduct against Jewish people, discussing that he's worried and scared of his roommate. Dr.

Rosenblatt told Plaintiff that conflict between roommate's are normal, said to ignore the situation, and recommended that he speak to his psychologist and psychiatrist, about the Antisemitic activity that occurred towards Plaintiff from their students.

16.     During that time the Plaintiff witnessed a group of students cheating on a psychology exam in the University using the Discord platform's live voice chat and real-time text feature to send and ask for exam answers between each other. Plaintiff was concerned, and took all the pictures he could of the chat log for evidence, sending an email with photographic evidence of the students who were cheating to the professor of that course Marc Hamer, stating that he came across a bunch of students who were cheating, explaining that some of the students who were cheating had different names to mask their identities, and why cheating is very serious. Plaintiff assured Dr. Hamer that with the evidence he provided, Dr. Hamer would know what to do.

17.     Plaintiff forwarded the email with the photographic evidence of the students who were cheating to Defendant WILLIAM WATKINS (hereinafter "Defendant WATKINS") the University's Vice President of Student Affairs, sending a carbon copy to Dr. Hamer, stating that he wanted to bring up the issue of students cheating to Defendant WATKINS's attention, so he could be informed of the issue. Plaintiff discussed that most of the students who were cheating shared their emails before without realizing it. Plaintiff noted his Jewish affiliation, and stated that it's basically God's law to not turn a blind eye to injustices, explaining that it's a Jewish law handed by God to Moses, informing Defendant WATKINS that he's reporting this on behalf of his religious beliefs, and respect for God, stating that it's the right thing to do.

18.     Plaintiff continued to send emails with additional photographic evidence to Dr. Hamer and Defendant WATKINS that had information of the students who were cheating, to give them all the evidence they needed to adequately complete the investigation, stating the blessings of God in Hebrew, and how they should track the

students IP addresses to investigate, reminding them that his report is based off his religious duty, and obligation to God, for reporting injustices, while discussing that it's God's law to not turn a blind eye.

19.    When Plaintiff was gathering and organizing the evidence to make it easier for Defendant WATKINS and Dr. Hamer to identify which students were cheating on Dr. Hamer's exam, the Plaintiff stumbled upon a bunch of concerning comments from the students in Dr. Hamer's psychology course, discussing that Dr. Hamer doesn't take attendance, have any lecture slides or PowerPoints, nor turns on his video camera to teach his class, gives students medical diagnosis's without a full assessment, talks about things not related to the psychology course, uses profanity, talks about sexual intercourse, brags about how rich he is, while telling students to stop being poor, and become rich like him.

20.    Plaintiff collected the evidence, and sent an email with photographic evidence of Dr. Hamer's misconduct to Defendant WATKINS, sending a carbon copy to Dr. Hamer, stating his disappointment regarding the situation, discussing how he follows his religious views, towards Judaism, and laws that God gave to Moses.

21.    Dr. Hamer emailed Plaintiff about his cheating report, thanking him, for reporting the students who were cheating, stating that it was correct, of Plaintiff to report student conduct, and informed Plaintiff that he would speak to Jill Razani the University's Department Chair of Psychology for Social and Behavioral Sciences on how they should proceed.

22.    Plaintiff believed that Dr. Hamer, Dr. Razani, and Defendant WATKINS would do nothing regarding the matter of misconduct in the University, so Plaintiff sent emails with photographic evidence of the students who cheated, and Dr. Hamer's misconduct to Defendant ERIKA DREW BECK (hereinafter "Defendant BECK") the President of the University, stating briefly that he wanted to inform her of the nuisances of students cheating in Dr. Hamer's psychology course, explaining the evidence of faculty misconduct he has against Dr. Hamer. Plaintiff stated that he

obeys the laws of God, of his Jewish religion, which God gave to Moses, discussing how he's not allowed to turn a blind eye because it goes against God, forwarding the emails he sent to Defendant BECK to Defendant WATKINS, Yan Dominic Searcy, the University's Dean for Social and Behavioral Sciences, Dr. Hamer, and the OVP.

23. Defendant WATKINS emailed Plaintiff in reply to his email sent to Defendant BECK, stating that he has forwarded Plaintiff's emails, which had the photographic evidence of misconduct, to Defendant ZEINA OTAKY RAMIREZ (hereinafter "Defendant RAMIREZ") the University's Director of Student Conduct and Ethical Development for investigation, and wrote that she will review his allegations, of the claim he made without proof.

24. Plaintiff sent an email with photographic evidence of Dr. Hamer's misconduct, as well as the students academic misconduct to the members of the University that included Defendants BECK, RAMIREZ, and WATKINS, Dr. Hamer, Dr. Razani, Dr. Searcy, OEC, and the CSU's Office of the Chancellor's Compliance department (hereinafter "CSU's Chancellor's Office") who specializes in discrimination, harassment, retaliation, and whistleblowing, kindly greeting them, explaining the situation of students cheating in Dr. Hamers course, including the professor's misconduct, discussing how it's not possible for Defendant WATKINS to tell Plaintiff that he's making an allegation of students cheating, because it was said employees of the state charge people for conduct based off factual evidence, which moves beyond an mere allegation, stating that under Title 5, California Code of Regulations, Section 41301, students are encouraged to report acts of academic dishonesty, and sincerely expressed how he abides by his religious laws to not turn a blind eye.

25. Robin Ferguson the Executive Assistant for Defendant WATKINS, emailed Plaintiff on behalf of the OVP to acknowledge that her office has received the Plaintiff's report of cheating he made, about Dr. Hamer's psychology course, and stated that she has forward it to a student conduct officer to address, for investigation.

26.     Defendant WATKINS emailed Plaintiff, stating that in his last reply to him, of Plaintiff making an allegation, about students who were cheating that Defendant RAMIREZ will contact Plaintiff, for his accusation of students cheating. Defendant RAMIREZ replied that she will review and investigate Plaintiff's report, informing Plaintiff that her office will determine the outcome of the investigation, and to refrain from reporting the situation to anyone in the University.

27.     Plaintiff went to the OVP, regarding the matter of students cheating in Dr. Hamer's psychology course, speaking to an employee about the situation, and discussed the evidence he gathered. The employee discussed that the Plaintiff isn't allowed to possess pictures of students cheating, explaining how the exam and its contents are the property of the professor, mentioning that providing evidence will result in legal trouble, and suspension or expulsion from the University. Plaintiff discussed to the employee that the exam was taken on Canvas, an online platform university professors use to assign and create quizzes or exams, and track cheating, explaining that the platform tracks user information to track cheating. The employee told Plaintiff that this wasn't possible, so Plaintiff tried explaining the situation further, and was threatened to leave or the police would be called on him for disturbance.

28.     Plaintiff was worried that Defendant RAMIREZ and the OVP might refuse to enforce the CSU's policies, and retaliate back, so Plaintiff in an attempt to obtain witnesses posted on the University's Reddit, blogging platform service, page about the academic dishonesty and faculty misconduct he witnessed, writing about his dedication to God, expressing his Jewish religions standpoint of not turning a blind eye, and stated the blessing of God in Hebrew.

29.     After the post was made, students in the University, including the students who were cheating in Dr. Hamer's course got ahold of the Reddit post, and wrote Antisemitic comments against Plaintiff's religion, discussing how Plaintiff is not a good person for believing in God, is a failure to God, expressing that's the

1  reason to why he's ugly and fat, while using abusive and offensive language towards

2  Plaintiff's Jewish religion.

3      30.    A student in the Discord chat showed everyone the Reddit post the

4  Plaintiff made, and told them that someone in the Discord chat ratted them out for

5  cheating. They made comments discussing that they were going to be fine, how their

6  professor Dr. Hamer hasn't brought up the cheating incident since a week of

7  Plaintiff's report, how Dr. Hamer is aware of them cheating, while ignoring the

8  Plaintiff, how they don't mind if Dr. Hamer uses offensive or abusive language in his

9  class, how nothing will happen to them because the CSU Chancellor, the University,

10 Dr. Hamer, and Defendants BECK and WATKINS received the Plaintiff's report, and

11 will not proceed any further since he would be ignored, explaining that the University

12 was on top of deleting and concealing the evidence against them, how Plaintiff will

13 not be taken seriously from the University, how Dr. Hamer's misconduct is actually

14 standard behavior from professors in a University, how disrespecting a professor is

15 not illegal or against the University's policies because students disrespect professors

16 all the time.

17     31.    The students targeted Plaintiff for his religious beliefs for reporting

18 them, stating that the Plaintiff should get kicked out from the University, conducted

19 harassment for reporting them, explained how Plaintiff is going to get in trouble from

20 the University for reporting cheating against them because it's messed up, mentioning

21 that the Plaintiff is mentally ill, somethings mentally wrong with him, needs to seek a

22 medical professional, are unsafe knowing the Plaintiff goes to the University, are

23 unsafe that Plaintiff wrote that he has to defend himself against retaliation from the

24 University, how he's a threat to the safety of the University and students for reporting

25 academic misconduct against them, expressing their intent of inflicting fear onto the

26 Plaintiff, while laughing at the hate speech targeted towards Plaintiff's Jewish

27 religion, and ridiculed his religious views.

28

32.   The students discussed that the Plaintiff has all the evidence against them cheating, including the parts of them taking the exam together, mentioning that they can't defend themselves against the school and the Plaintiff, due to the fact that they got caught, which created a commotion of crying emojis.

33.   The students all teamed up to initiate a lawsuit against the Plaintiff, for reporting them for cheating, stating that it's illegal, insisting that they will report the Plaintiff to get him in trouble instead, especially because they pulled an UNO, family card game, reverse card against him, while discussing how they could get paid a huge amount of money for their lawsuit against him, so Plaintiff could pay for their tuition, comforting each other not to worry because they have lawyers in their family, and are going to get each other's backs. Plaintiff's Reddit post was then taken down due to a violation, for being threatening towards the members of the University.

34.   Plaintiff was exposed to a group of students mentioning on Discord, about cheating in Tony Rowe's physics class, so he gathered evidence, and sent an email that had photographic evidence of students cheating to Dr. Rowe, which included Defendants BECK and WATKINS, the CSU's Chancellor's Office, OEC, and DRES, explaining that students in his physics class were cheating, discussing that he's scared to report students for cheating due to his fears of being seen as a criminal for reporting injustices that occur on campus, stating in the Torah, of his Jewish religion's literature, he could only fear God, and do what's right under his commandments.

35.   The CSU's Chancellor's Office replied back to the email letting Plaintiff know that they are in receipt of his email, and mentioned to email their CSU's Human Resources department with the evidence to investigate the issue. Plaintiff then emailed the CSU's Human Resources department and Chancellor's Office providing the photographic evidence of student academic misconduct, and faculty misconduct.

36.   Defendant RAMIREZ immediately emailed the Plaintiff, carbon copying Defendant WATKINS, threatening the Plaintiff to stop what he's doing, for reporting

his grievances, explaining that it's against federal law because he's not a part of the Discord chat, which Plaintiff was a part of, and not being a part of the chat in which Plaintiff was a part of results in privacy infringement, discussing that this will result in a violation of the CSU Student Conduct Code, while placing Plaintiff's student status in jeopardy. Defendant RAMIREZ shared that the students implicated filing a complaint against him, harassing Plaintiff to not to share his complaints, about Dr. Hamer's misconduct, or it could lead to legal action against him from Dr. Hamer.

37.    On October 8, 2022, Plaintiff out of fear for retaliation from the University, gathered the emails of attorneys, federal and state agencies, members of the University, DRES, OEC, CSU's Human Resources and Chancellor's Office, Defendants BECK and WATKINS, Kristen Walker the University's Director of the Masters of Business Administration (hereinafter "MBA") program, Chandra Subramaniam the MBA Dean, Paul Lazarony who was the MBA Associate Dean, Shelley Ruelas-Bischoff the OVP Associate Vice President, Freddie Sanchez the OVP Interim Assistant, Maria Fidaleo-Angell the OVP Administrative Analyst, Michelle Kilmnick Director for Faculty Affairs, Diane Guido Assistant Vice President for Faculty Affairs, and sent them emails with photographic evidence of Antisemitism, hate speech towards Plaintiff's Jewish religion, and other misconduct from the students and faculty at CSU, Northridge, asking for help against harassment, religious discrimination, and retaliation from the members of the University, stating his Jewish religions law.

38.    Defendant RAMIREZ was forwarded the email that was sent on October 8, 2022, and replied back to everyone listed on that email, including the Plaintiff, discussing on behalf of the University, how they take misconduct by members of the University seriously, and will proceed with investigating the matter. She stated that CSU, Northridge doesn't retaliate, to students engaging in their protected activity, explaining to the recipients that the Plaintiff is to blame for developing such concern, of his Jewish background. Defendant RAMIREZ didn't ever inform Plaintiff that he

was charged for the email he sent on October 8, 2022, concealing the violation until the hearing that determined his suspension, for protecting and defending his Jewish religion and community, and place of worship, which has children from harm against a CSU, Northridge student who wanted to physically harm them, determining that Plaintiff's email sent on October 8, 2022, without due process was a threat towards the members of the University.

39.    Plaintiff, his Jewish community and its children received death threats from a student in the University who wanted to harm them in their place of worship, and immediately called the police. The police came, asked a few questions to the Plaintiff, filed a report for investigation, and left. The officers emailed Plaintiff a personalized safety plan for the Plaintiff's protection, which included information about the resources Plaintiff could use, and provided safety protocol measures to protect Plaintiff's Jewish community in their place of worship.

40.    Plaintiff consulted with an attorney named Stanley Apps, asking if he could help Plaintiff with his situation. The attorney was provided evidence of hate speech towards Plaintiff's religion, and was told of the death threats against Plaintiff and his community, including the emails that Defendant RAMIREZ sent to him, in regard to the situation. Mr. Apps told Plaintiff that the law she's accusing Plaintiff of is false, and a form of retaliation, explaining in writing that the University may not retaliate against Plaintiff for his lawful action of reporting cheating, and how Plaintiff is not bound by the requirements of the federal law that Defendant RAMIREZ is declaring towards Plaintiff, clarifying that this cannot be a basis for discipline or other academic consequences towards him, stating that it's CSU, Northridge's obligation to stop hate speech against the Plaintiff, and to discipline the students responsible.

41.    Plaintiff stumbled upon a group of students in the University cheating on professor Mariano Loza-Coll's biology quiz on Canvas in Discord, and went to the

OVP to report the incident. The Plaintiff spoke to the office employee about the situation, and was told that they will document Plaintiff for his harassment.

42. Plaintiff wanted to spread awareness to other students in the University to follow the CSU policies, and created another post in the University's Reddit page called Academic Honesty and Misconduct Awareness, explaining how there should be more preventive measures towards students cheating, while providing useful information about what the University could do to deter cheaters, discussing how spreading awareness shouldn't result in death threats, from CSU, Northridge students intending to harm Jewish children and communities for practicing and participating in religious activities, talking about accountability, and why it's important to uphold the University's policies. Plaintiff's Reddit post was then taken down due to a violation, for being threatening towards the members of the University.

43. On October 18, 2022, Plaintiff sent out no emails. Defendant RAMIREZ charged Plaintiff for an email violation on October 18, 2022, for not sending any emails, stating that it was intimidating and abusive towards students and faculty.

44. Plaintiff had concerns that he emailed Dr. Subramaniam about, regarding his former professor Dr. Walker, towards the unfair treatment he received from Dr. Walker, and was told by him to contact her, so she can explain the situation.

45. Plaintiff emailed Dr. Walker regarding the situation, asking through explanation why he was subject to unfair treatment in her class. Dr. Walker didn't deny that the Plaintiff was treated more differently, and emailed Plaintiff, discussing that his issues during the time of his medical condition, which caused his lack of participation was the reason to why she treated Plaintiff more differently, explaining that regardless of Plaintiff's doctor's note for his mental condition, what she did was appropriate due to the circumstances Plaintiff was experiencing, stating her policies listed on the syllabus, don't make exceptions for medical documentation, since it's the students responsibility to prevent medical conditions that arise from their disability, not hers.

46.     On October 28, 2022, Plaintiff emailed the United States Department of Education Office of Civil Rights (hereinafter "OCR"), and reported Dr. Walker for discrimination. Defendant RAMIREZ charged Plaintiff's email on October 28, 2022, as a violation, stating that it was intimidating and abusive towards their members, Dr. Walker.

47.     Plaintiff emailed Dr. Subramaniam about the death threats, of the student in CSU, Northridge who wanted to physically harm the Jewish children and people of his community in their place of worship, expressing his worries and fears that he's being specifically targeted in the University, discussing that his values, for being Jewish, are being discriminated against, and how he wanted to spread awareness of educational rights and violations on the University's Reddit page, but got banned, explaining that there are other students talking about parties, illicit drugs, and disrespecting professors whose comments aren't banned, mentioning to Dr. Subramaniam that there was no consequences for those students, but his comments of spreading academic awareness gets specifically targeted and banned, instead of the students who are actually violating the University's policies. Plaintiff explained that he's scared to go into campus at night due to the fear of being harmed, discussing that he feels ill due to the situation. Plaintiff asked if Dr. Subramaniam could help him for his safety, and expressed that he just wanted to be safe. Dr. Subramaniam mentioned his thankfulness, regarding Plaintiff's serious situation, doing nothing to help or accommodate him for his duress and fear of being harmed.

48.     Plaintiff sent out an email to Defendant WATKINS, and a carbon copy, which included Defendant BECK, Colin Donahue the University's Vice President of Administration and Finance, and Rick Evans the University's Executive Director of the University Corporation, talking about the situation regarding illegal activity happening in CSU, Northridge, and explained that he doesn't want any more death threats against him, his people, and the children, of his Jewish religious community, but was ignored.

49.     Plaintiff under duress for his roommate's behavior sent an email, which included Defendants BECK and WATKINS, Barrett Samuel Morris the OEC Assistant Vice President, stating all the concerns and issues he was having with his roommate, including the threatening hate speech against his Jewish religion, explaining that he doesn't feel safe anymore, to participate and practice his Jewish religion. Plaintiff went to the OEC to file a discrimination report against his roommate, and an employee in the office told Plaintiff that they don't address matters involving issues with roommates, and didn't allow him to file a report towards discrimination against his Jewish religion.

50.     Plaintiff wanted to pray, and went to grab his kippah and tefillin to find it missing. Plaintiff checked the dorm, and couldn't find it, so he filed a police report for the theft of his religious belongings.

51.     On November 17, 2022, Plaintiff sent out emails to people in the University talking about Antisemitism, the theft of his Jewish belongings, and the threats of harm towards him and his Jewish community, including the children.

52.     A few of the University's faculty reached out emailing the Plaintiff to help him, commending him for him trying to take action against Antisemitism, telling Plaintiff that they care about the situation, including a Jewish student who informed Plaintiff that she also has been exposed to Antisemitism by the members of the University. The University's Associated Students President and Vice President wanted to reach out to the Plaintiff about the situation regarding Antisemitism, explaining that they want students, including him, to feel safe on campus. Defendant RAMIREZ charged Plaintiff's email on November 17, 2022, as a violation for being threatening towards the members of the University, stating that it was intimidating, to protest about Antisemitism in the University.

53.     On November 20, 2022, Plaintiff emailed the Prime Minister of Israel Benjamin Netanyahu that Antisemitism is going on in CSU, Northridge, explaining the situation he was experiencing. Defendant RAMIREZ charged Plaintiff's email on

November 20, 2022, as a violation for being threatening again, stating that it was intimidating, to protest the situation to Benjamin Netanyahu.

54. Plaintiff emailed Defendants BECK and WATKINS, the MBA department, and Dr. Walker, asking for accommodations, against the death threats, hate speech and crimes from the CSU, Northridge students, which caused significant duress to the Plaintiff. Defendant WATKINS added Julie Pearce the UCS Director to the email, and stated to reach out to their therapist Dr. Pearce, which Plaintiff did, but was ignored by Dr. Pearce.

55. Plaintiff sent emails that included Defendants BECK and WATKINS, Dr. Walker, and Dr. Pearce, stating that he's giving up hope from the University, for allowing Antisemitism, explaining the situation of discrimination and harassment towards his national origin, expressing the stress he's experiencing, discussing that Defendant BECK and the University doesn't want to help stop Antisemitism on campus, and don't care about his religion, asking how could Defendant BECK disregard the theft, of his kippah and tefillin, and death threats that occurred, from their student who wanted to harm and hurt the children and members of his Jewish community, including the Plaintiff.

56. Defendant WATKINS replied back defending the University, and its students, of their good intentions, explaining that Plaintiff should take a better approach to addressing his concerns, telling Plaintiff that his emails have no real purpose for the University to address his issues, discussing that Defendant BECK's staff, Meera Komarraju, Colin Donahue, Nichole Ipach, Ranjit Philip, Amanda Quintero, and Genevieve Evans Taylor joins him in reviewing and considering each of Plaintiff's emails, which found it appropriate to discipline Plaintiff. Defendant WATKINS said that he's willing to arrange a Zoom, video and audio communication platform, meeting with Plaintiff to discuss the matter, of his situation.

57. On November 24, 2022, Plaintiff sent an email to the members of the University explaining his situation of discrimination, retaliation, and Antisemitism at

CSU, Northridge. The University's members emailed Plaintiff discussing that he's bothering them, don't care about the situation, of Antisemitic attacks towards Jewish people, and to stop emailing them. Defendant RAMIREZ charged Plaintiff's email on November 24, 2022, as a violation for being threatening towards the members of the University, stating that it was intimidating, to protest about Antisemitic activity in CSU, Northridge.

58.     Plaintiff called the UCS to talk about his situation, was told to contact and apologize to Defendant WATKINS, and ask him to help find Plaintiff a therapist, which Plaintiff did. Defendant WATKINS emailed Plaintiff, telling him that he will personally follow up with the UCS to observe how they plan to proceed with him, and then told Plaintiff that Marilyn Mendoza from the UCS will reach out to him.

59.     Plaintiff sought help from Ms. Mendoza regarding the situation he was experiencing, she explained that the University just wanted the Plaintiff to stop emailing people about his problems, of their students death threats, and hate speech and crimes towards his Jewish religion, telling Plaintiff how his emails aren't threats, and wants to help him graduate without any issues. Ms. Mendoza said if the Plaintiff wants to continue going to the University, he should seek a psychiatrist accompanied with an actual psychologist to help stabilize him for his behavior.

60.     Plaintiff emailed Defendant WATKINS if he could schedule a meeting with him, and he agreed to meet with Plaintiff on Zoom. In the meeting Plaintiff spoke about his concerns related to the emails he sent. Defendant WATKINS told Plaintiff that his emails, about hate speech and crimes against his Jewish religion, and death threats towards his Jewish community and children from being harmed through threats of violence, in regard to their Jewish identity, from their CSU, Northridge students, serve no real purpose for the University to address his situation, stating how Plaintiff could cause fear to the members of the University because he looks like a person that could be seen as a threat.

61.    Defendant RAMIREZ on behalf of the OVP sent an email to the Plaintiff, and a carbon copy, which included Defendant WATKINS, telling Plaintiff that the emails he sent on October and November 2022, were marked as a violation, stating that it was intimidating and abusive towards the members of the University, explaining that the Plaintiff is required to defend himself against the charges in a meeting scheduled with her during the date of Plaintiff's Jewish holiday.

62.    Plaintiff went to the DRES department, scheduled a meeting with Jodi Johnson the DRES Director, talking to her about his situation. Plaintiff told her that he wanted to file a discrimination report against the University, she recommended him not to file a complaint, explaining that the University is doing this to him so he could stop sending emails, about Antisemitism, telling Plaintiff that his emails are not a threat, insisting that Plaintiff should knock it off with his emails before he gets into serious trouble, suggesting Plaintiff to use their counseling services, for his concerns about discrimination.

63.    Plaintiff went to the UCS to schedule a meeting, and met with Seung Yoon Christina Lee a therapist. Plaintiff explained his situation to Ms. Lee, she told him that the University doesn't discriminate, and explained what Plaintiff did was wrong, to email people about their students offenses against Jewish people, recommending him to email everyone he emailed before to apologize to them.

64.    On December 6, 2022, Plaintiff sent an email to the members of the University on behalf of Ms. Lee's recommendation, apologizing, for the emails he sent on behalf of his Jewish affiliation and origin. Jennifer Marshall a professor in the University's Communication Studies department emailed Plaintiff threatening him of his inappropriate actions, of apologizing, harassing him that she will inform Kim Jinah the University's Communication Studies Department Chair of his email, about apologizing. After the email was sent on December 6, 2022, Defendant RAMIREZ emailed Plaintiff to harass him, discussing that his behaviors are unacceptable for the

University, stating that it would lead to a severe sanction of suspension or expulsion, to the Plaintiff.

65.    Plaintiff would continue to try using the services of the University for help regarding his concerns of Antisemitic activity, but was told by Ms. Mendoza to stop using their crisis services for his problems, regarding Antisemitism.

66.    Plaintiff called the UCS for an appointment, and the office scheduled a meeting with their therapist Sunil Obediah. Plaintiff informed Dr. Obediah of his situation, and told him that he can't attend the meeting with Defendant RAMIREZ due to his religious holiday, and mental state. Dr. Obediah told Plaintiff that he's in the wrong for what he did, to email people about the offenses of their students against Jewish people, telling Plaintiff not to worry about the meeting because he has a close relationship with Defendant RAMIREZ, recommending Plaintiff to call the OVP to reschedule, and meet with him again after he called them. Plaintiff then called the OVP, speaking to Ms. Ferguson about rescheduling due to private and religious reasons. Ms. Ferguson then cancelled the meeting scheduled on Plaintiff's Jewish holiday, telling him that he would be hearing back from Defendant RAMIREZ to schedule another date, for Plaintiff's due process meeting, which never happened. Plaintiff rescheduled a meeting with Dr. Obediah again, and was reassured by him that Defendant RAMIREZ will reschedule, which she didn't.

67.    On December 15, 2022, Plaintiff sent an email to the members of the University talking about discrimination and unfairness for people of minorities against the education system, giving examples of why these things happen.

68.    Defendant RAMIREZ sent an email in regard to Plaintiff's email on December 15, 2022, harassing Plaintiff that the email is a violation, and disciplined him without Plaintiff's right of due process by limiting his ability to participate and engage in activities that require the use of emailing, informing Plaintiff that she's personally preventing him from enrolling next semester for missing the meeting that was scheduled on his Jewish holiday, refusing to reschedule it, coercing the Plaintiff

to now attend a final hearing to determine whether he should be suspended or expelled, for trying to prevent Antisemitism, death threats against his Jewish community and children, as well as hate speech and crimes against Jewish people from the students in CSU, Northridge.

69.     Defendant RAMIREZ on behalf of the OVP sent an email to the Plaintiff, which included a carbon copy to Defendant WATKINS, stating that the Plaintiff is being officially charged for the emails he sent on October and November of 2022, confirming that Plaintiff's emails were threats, based off her evaluation and investigation, towards the University members, not giving Plaintiff the ability of due process to explain himself, for protecting his Jewish religion and community. It also stated that Plaintiff is in violation for what he emailed on December 15, 2022, when he advocated for student diversity.

70.     Defendant RAMIREZ created an resolution agreement if the Plaintiff chose to accept, discussing that if he accepts the agreement, Plaintiff would waive his right to sue the University, agrees to serve suspension, would be required to seek mental health treatment, and provide medical documentation if he wanted to enroll in the University, further explaining that Plaintiff will be placed under disciplinary probation after he serves his suspension, and would be subject to expulsion with no right to due process, which Plaintiff never received anyways, if he were to continue proceeding in the matter, of protecting his Jewish religion and community, and otherwise.

71.     Plaintiff under significant duress sent out an email, which included Defendants BECK and WATKINS, Dr. Walker, Sheila Brown the MBA Assistant Director, Dr. Subramaniam, OEC, CSU's Chancellor's Office, quoting the United States's constitutional laws and bill of rights, and commandments of his Jewish religion, which stated not to bear false witness, to reprove wrongdoers, not to testify falsely, and for a judge to not pervert justice, under God's law.

72.   Plaintiff discussed his side of the story, since he wasn't allowed due process, explaining in detail how his emails are not threats. Defendant RAMIREZ emailed Plaintiff in regard to that email, explaining that the CSU's Chancellor's Office notified her that they are aware Plaintiff didn't receive due process. Plaintiff's University email was terminated by the University during that time, so he couldn't receive emails, send emails, and view them, which prevented him from accessing time sensitive information sent to his school email.

73.   Plaintiff who was mentally unstable at the time due to the University's actions of charging Plaintiff for being a threat for protecting and defending his Jewish religion and community in relation to the roots of his national origin, sent an email, which included Defendants RAMIREZ and WATKINS, Dr. Walker, Dr. Subramaniam, Dr. Morris, Dr. Lazarony, Ms. Ferguson, Ms. Fidaleo-Angell, OEC, the MBA department, CSU's Chancellor's Office and Human Resources, stating that he apologizes for being Jewish, and understands why Jews are not welcome in the University. Plaintiff stated that he apologizes for the death threats against him, which included the Jewish community and children who were targeted for violence, stating that he understands why Jews are a threat to the University, and will never exercise his rights again, towards protecting and defending his Jewish religion and community, explaining that education is his life, and would do anything to continue school, begging that if the University hates Jews so much, he would convert to Christianity or Hinduism to make Defendant RAMIREZ and the University happy.

74.   Every email Plaintiff sent to Dr. Walker and Dr. Subramaniam towards his serious situation was ignored, including the death threats against Plaintiff, and his Jewish community, choosing not to accommodate Plaintiff for his fears, worries, and stress from the members of the University, which caused harm to the Plaintiff, negatively impacting his participation and experience in the MBA program at CSU, Northridge, showing blatant disregard of Plaintiff's safety, disregarding any effort to engage in mitigating Plaintiff's issues for the harm caused against Plaintiff that had a

rippling effect on his wellbeing and mental health, causing Plaintiff to have significant irreparable trauma.

75.    The University allowed the Plaintiff to register for his courses, so he enrolled. As Plaintiff began class his professor Thomas Wedel lecturer of the MBA Systems and Operations Management course would bring up examples of Plaintiff's situation, stating how cases revolving plaintiffs and defendants can be deadly, if Plaintiff sued them, teaching content of lawsuits, testimonies, prisons, while making statements about convicting an innocent person, lying, and deceiving your audience through the use of mathematics, explaining in reference through statements and content how Plaintiff's lawsuit case would get a motion to dismiss from the University, as well as a reverse judgement against him for his lawsuit case, in a math course that's supposed to be teaching supply chain management, purchasing and inventory, planning, and scheduling.

76.    Dr. Wedel had inappropriate, abusive and offensive math questions, which included inappropriate terms and phrases, as well as video and audio recordings of all his lectures, which he shared online to the students, including the Plaintiff to download.

77.    Dr. Wedel asked Plaintiff if he could drive him to his car after class to the University parking lot, so he did. During the time in which Plaintiff was driving Dr. Wedel to his car, Dr. Wedel sexually touched him, and let Plaintiff know that if he wanted help in his class, he could meet with him in his office hours.

78.    Plaintiff sought help from his attorney Mr. Apps, showing him documents of the emails he was charged with that were considered threats to the University. Mr. Apps told Plaintiff that none of the emails he was charged with were considered threatening, abusive, or offensive, informing Plaintiff in writing that he would file a lawsuit against the University to prevent the hearing from proceeding.

79.    Eventually Mr. Apps didn't prevent the hearing from proceeding, telling Plaintiff that he's not going to sue the University, deceiving Plaintiff's case, and

ignored him, working on behalf of the benefit of the CSU rather than the Plaintiff for defending his ancestry roots of Israel. Plaintiff spoke to Mr. Apps about the situation regarding the students who he reported for cheating in Dr. Hamer's course, and was told by Mr. Apps that the students were allowed to cheat on their exams, however Plaintiff stated otherwise.

80.    Defendants RAMIREZ and WATKINS, Ms. Monaco, and Ms. Fidaleo-Angell was informed in writing by Plaintiff's attorney that Plaintiff couldn't attend the hearing due to his mental state and condition to engage in the meeting. The hearing still continued on June 15, 2023, by a student conduct administrator, and Juana Maria Valdivia who was the University's Hearing Officer. Plaintiff was informed by Defendant WATKINS that in regard to the hearing which took place, it was mentioned that Plaintiff was charged for the emails he was in violation for on October and November of 2022, for defending and protecting his Jewish religion and community, since it was threatening to the members of the University. It was stated that Plaintiff should be suspended, be put on disciplinary probation, seek medical treatment, and provide medical documentation if he wants to be allowed in the University, disregarding Plaintiff's medical documentation that was already provided to CSU, Northridge, leaving no option for the Plaintiff to protect himself from the members of the University who instill harm to his Jewish religion and community. The report stated that they took Plaintiff's previous disciplinary probation into consideration, when he utilized the UCS to talk to a therapist about having thoughts of retaliating, as a form of self-defense to prevent him from being harmed, against a student in CSU, Northridge, who caused physical harm towards Plaintiff on campus.

81.    On August 11, 2023, Defendant WATKINS sent Plaintiff a letter from the OVP to inform him that in regard to the hearing that took place on June 15, 2023, Defendant WATKINS decided to officially suspended Plaintiff, while putting him on disciplinary probation until he completes his degree, explaining that the conduct

Plaintiff did regarding the emails that he was in violation for, towards defending his Jewish religion and community, resulted in his decision to suspend him.

82. Plaintiff spoke to Ms. Fidaleo-Angell regarding the matter, she mentioned that Plaintiff's emails were unnecessary, to protect his Jewish religion and community, telling Plaintiff to take a break from the situation since she understands what he's mentally going through.

83. To exhaust all administrative measures Plaintiff sent complaint forms through certified mail on November 20, 2023, with documentation that included the University's discrimination, harassment, and retaliation towards him to CSU, Northridge, the OCR, the United States Department of Justice Civil Rights Division (hereinafter "DOJ"), which were all received on or before November 24, 2023.

84. Plaintiff sent a notice of claim through certified mail to Ms. Monaco on November 20, 2023, which was received on November 22, 2023, to inform her and the CSU on notice and existence of Plaintiff's discrimination claims against CSU, Northridge, and his intent to file a lawsuit against them, stating that this is a condition that is supposedly needed to be met to bring a lawsuit in the near future.

85. Plaintiff in compliance with the Government Tort Claims Act, sent the claim form through certified mail on November 20, 2023, which was received on November 21, 2023, to the CSU Office of the Chancellor, to their Systemwide Risk Management department with documentation that included the University's discrimination, harassment, and retaliation. The CSU didn't respond after 45 days of receiving the government claim form, which was deemed rejected under Cal. Gov. Code § 912.4.

86. In the documentation and government claim form, which had evidence of discrimination that was sent through certified mail, it discussed in good faith that the Plaintiff wants to give the OCR, DOJ, and CSU, Northridge a fair opportunity to review his report against discrimination, harassment, and retaliation against the University in an unbiased manner. Plaintiff included approximately 100 pages worth

1  of information and evidence that showed the University's conduct against him, which
2  included violations such as abuse of power, breach of contract, falsification, fraud,
3  misrepresentation of factual evidence, and other illegal activities initiated against the
4  Plaintiff to specifically target him.

5       87.   CSU, Northridge acknowledged Plaintiff's complaint, and scheduled a
6  virtual meeting with Aimee May the OEC Investigator of discrimination, harassment,
7  and retaliation. The investigator told Plaintiff that they will not take the case because
8  nothing in his complaint showed any type of discrimination, harassment, or
9  retaliation from the University, which excluded him from participating in the
10 University's procedures of conducting a review of evidence between the Plaintiff, and
11 CSU, Northridge. It was mentioned by Ms. May that Plaintiffs other reports to the
12 OCR and DOJ will be rejected too.

13      88.   The DOJ acknowledged Plaintiff's complaint, and on November 28,
14 2023, informed Plaintiff that his case could have merit for a lawsuit, giving him
15 additional information for the legal process. The OCR acknowledged Plaintiff's
16 complaint, but didn't proceed any further in assisting Plaintiff, leaving him with no
17 more options of utilizing administrative and exhaustive measures, but to proceed the
18 dispute in court.

19                        **FIRST CAUSE OF ACTION**

20 **Violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.**

21      89.   Plaintiff repeats and realleges each of the allegations in the complaint.

22      90.   Defendants   CSU   and   BECK   allowed   Defendants   RAMIREZ,
23 WATKINS, and the employees of Defendant CSU to engage in retaliatory and
24 discriminatory conduct against the Plaintiff for reporting students who were cheating,
25 reporting their faculties misconduct, participating in religious activities, rightfully
26 protesting against Antisemitism, and for reporting a faculty member to the OCR, by
27 harassing, threatening, disciplining, and punishing Plaintiff through charges of

28

violation, suspension, and probation in an attempt to prevent Plaintiff from ever engaging in the participation of his protected activities.

91.    The conduct Plaintiff was exposed to due to Defendant CSU's employees retaliation were constant threats to suspend and expel him from CSU, Northridge, marking him as a high-level threat, terminating and interfering with Plaintiff's school email to exclude him from sending and viewing emails, which prevented him from receiving important emails that were time sensitive, intimidating Plaintiff in a conspiracy to obstruct justice and harm him if a lawsuit were to happen against them, and threatening to call the police if he participated and engaged in the use of their services.

92.    Defendant RAMIREZ failed to adequately investigate Plaintiff's report of cheating by conducting a flawed and inadequate investigation into Plaintiff's claims, relieving the students from discipline for being caught from cheating, treating them more favorably than the Plaintiff who was treated differently, coercing Plaintiff to accept that the photographic evidence he sent with proof of the CSU, Northridge students cheating were reports of allegations without proof, while personally retaliating against Plaintiff through threats of severe punishment and violation for participating in his protected activities, allowing the students to engage in academic dishonesty, refusing to discipline them by disciplining Plaintiff instead as a form of retaliation for following the policies of reporting academic misconduct, excluding and ignoring Plaintiff's facts and information, harassing him for trying to enforce academic dishonesty, deeming that the Plaintiff is the problem for having such concern for the CSU's Student Conduct Code's rather than supporting him for following the University's policies that encourages students to report cheating.

93.    Defendant CSU's employees had the ability to monitor user information to detect cheating, but chose not to, allowing the students to safely engage in academic misconduct, while harassing Plaintiff for having photographic evidence of students cheating by threatening expulsion, suspension, and legal trouble against him,

1  coercing Plaintiff to leave their premises when he engaged in the use of their services
2  by force or they would call the police to file a disturbance report against him,
3  subjugating him through retaliatory conduct through the use of intimidation and fear.

4      94.    No further steps were taken to alleviate Plaintiff's other claims of
5  students cheating when informed to the employees of Defendant CSU, who were
6  denying and excluding Plaintiff from filing reports of misconduct that occurred on
7  CSU, Northridge, retaliating against him through the use of threats that they would
8  charge him for harassment if he continues to participate in his protected activity.

9      95.    Defendant CSU allowed its employees to exclude, prevent, and deny
10  Plaintiff from filing reports of discrimination, harassment, and retaliation, refusing to
11  open an investigation upon notice of Plaintiff's claims that had clear evidence beyond
12  a reasonable doubt that there was misconduct being conducted from their members,
13  and retaliated against the Plaintiff through threats of legal action for trying to seek
14  enforcement of the CSU Student Conduct Code's.

15      96.    Defendants CSU, BECK, and WATKINS allowed Defendants
16  RAMIREZ to wrongfully charge Plaintiff for the emails he sent on October 8, 2022,
17  which was when he asked for help against harassment, religious discrimination, and
18  retaliation from the University, showing photographic evidence of the students hate
19  speech who targeted Plaintiff's religion, October 18, 2022, for not sending an email,
20  October 28, 2022, for reporting a faculty member to the OCR, November 17, 2022,
21  for talking about Antisemitism, the theft of his Jewish belongings used to show his
22  appreciation for God, the kippah and tefillin, and the death threats against him and his
23  Jewish community, November 20, 2022, for emailing the Prime Minister of Israel
24  Benjamin Netanyahu that Antisemitism is going on in CSU, Northridge, November
25  24, 2022, for sending out emails to the members of the University, explaining his
26  situation of discrimination, retaliation, and Antisemitism in the University, December
27  6, 2022, for sending an email on behalf of their employee's instructions to apologize
28  to members of the University, for emailing them about his concerns related to

Antisemitism, discrimination, and retaliation in the University, December 15, 2022, for sending an email to the University talking about discrimination and unfairness for the people of minorities, which are clear indicators beyond a reasonable doubt that the Plaintiff was specifically targeted, retaliated, and discriminated against based off his race, color, and national origin.

97.   Defendant WATKINS made bias statements with prejudice against Plaintiff's perceived status by the implication that his appearance is a threat, subjugating Plaintiff under discrimination for his genetic heredities of his race, color, and national origin.

98.   Defendant RAMIREZ denied rescheduling Plaintiff's due process meeting upon notice, intentionally scheduling the meeting on Plaintiff's Jewish holiday, with a conscious disregard of preventing Plaintiff from participating and practicing his religion, knowingly aware that Plaintiff couldn't attend the meeting due to religious reasons, and ignored the cancellation to reschedule the due process meeting in another day that does not correspond with his religious practices, specifically targeting Plaintiff for his perceived status.

99.   Defendant CSU's employees excluded, prevented, and deprived Plaintiff from filing a discrimination report against his roommates discriminatory conduct, which involved harassing Plaintiff for being Jewish, creating a hostile environment which he didn't feel safe in, and allowed Plaintiff's roommates to engage in discriminatory conduct to specifically target him for his perceived status.

100.   Defendant CSU allowed its employees to specifically target the Plaintiff from his right to participate and engage in their Reddit page, banning his comments as a form of retaliation for encouraging students to follow the CSU policies and maintain academic integrity, while allowing their students to post content and comments that are unlawful, unethical or a violation to the CSU policies, including offensive and abusive language on their public forums.

101.   Defendants CSU and BECK allowed its employees to discriminate Plaintiff from exercising his religious laws and beliefs by retaliating against him for his protected activity of honoring God's commandments, allowing its students to conduct hate speech, racial slurs, and Antisemitic rhetoric against his religion to specifically target Plaintiff for his perceived status of being Jewish, while disciplining Plaintiff through student conduct charges for bringing up Antisemitism, the theft of his religious items the kippah and tefillin, and the death threats against him, his community, and the children of his place of prayer and worship.

102.   Defendant CSU allowed its employees to use class resources to talk about what would happen if the Plaintiff were to conduct a lawsuit by showing Plaintiff what they can do to prevent a lawsuit, how cases revolving plaintiffs and defendants can be deadly, inferring the intent to cause severe harm towards Plaintiff, including content that teaches how to convict an innocent person, commit perjury, and deceive your audience through the use of mathematics, while explaining how Plaintiff's lawsuit case would get a motion to dismiss, including an amended reverse judgement to the Defendants in that case, giving math questions about prisons, testimonies, and lawsuits in an system and operations management mathematics course that teaches supply chain management, purchasing and inventory, planning, and scheduling.

103.   Defendants CSU, BECK, RAMIREZ, WATKINS, and Defendant CSU's employees actions were willful, intentional, malicious, oppressive, and despicable, acting with willful and conscious disregard for Plaintiffs protected activity, perceived status, and rights by subjugating him through discriminatory and retaliatory conduct to prevent him from the engagement and participation of their services, as well as Plaintiff's protected rights.

104.   Defendants CSU, BECK, RAMIREZ, WATKINS, and Defendant CSU's employees have contractual and obligational duties to report discrimination, harassment, and retaliation, making the clear concise decision of allowing its

employees to engage in retaliatory conduct towards Plaintiff to specifically target him by giving him unfair, unequal, and uncivil treatments and punishments for engaging in his protected activity, knowing that the Plaintiff was fundamentally exercising his rights, retaliating against him for defending his national origin, while allowing their students to engage in hate speech and discriminatory conduct towards his religion with no consequences or punishments.

105.   Defendant CSU, BECK, RAMIREZ, WATKINS, and Defendant CSU's employees have an obligation to stop hate speech, racial slurs, or any discriminatory rhetoric, but made the conscious decision to allow this conduct to occur towards the Plaintiff, subjugating him through discrimination, and segregating him from his protected activity of exercising his religion, while creating a hostile environment, which he didn't feel safe in due to the conduct that specifically targeted his perceived religious status, disregarding any attempts to assist the Plaintiff from the attacks against his Jewish religion, and disciplined him instead.

## SECOND CAUSE OF ACTION

**Violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq.**

106.   Plaintiff repeats and realleges each of the allegations in the complaint.

107.   Defendants RAMIREZ, WATKINS, and Defendant CSU's employees were consciously aware that Plaintiff has a disability, and couldn't attend the hearing due to his mental state, proceeding to continue with the hearing anyways without further accommodating Plaintiff's capacity to participate, subjugating Plaintiff through disability discrimination from unfair, uncivilized, and unequal treatment in regard to his protected status.

108.   Defendant CSU's employees retaliated against Plaintiff based upon his mental condition, by taking advantage of that fact that he has a disability, disengaging his worries and fears through manipulative practices to trick Plaintiff into believing that he's the problem, recommending him to be stabilized for having concerns that attacked his perceived status, which was exacerbated by the members of the

University, telling him that he needs to seek a psychiatrist for the purpose of being medicated, in regard to his fears and worries from harassment, discrimination, and hostile behavior towards his national origin, subjugating Plaintiff through disability discrimination by stereotyping his protected status, inferring that the problem associated with their students Antisemitic conduct as well as their own discriminatory conduct are medical concerns that should be addressed by a mental health professional, retaliating against the Plaintiff that medical treatment revolving medication is the solution for discriminatory conduct that occurs at CSU, Northridge, while insisting that it's a requirement for Plaintiff to receive medical care, if he wants to be allowed to enroll in the University, since his behaviors caused by his mental condition was not assessed properly, which segregated Plaintiff for unfair, unequal, and uncivil treatment based upon his disability.

109. Defendant CSU's employees intentionally discriminated against Plaintiff's mental condition, which prevented him from participating in class, treating him unfairly, unequally, and inhumanely than other students in the University, refusing to accommodate him properly, after being provided with medical documentation of his mental state and condition.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully request that this Court order the following relief:

1.    An injunction preliminarily and permanently requiring Defendants to remove any records of Plaintiff's suspension and probation.

2.    An injunction preliminarily and permanently requiring Defendants to enforce their nondiscrimination policies, ensuring that Jewish members in the CSU community are protected with respect to their Jewish identities, including their physical safety and otherwise.

3.    An injunction preliminarily and permanently mandating that Defendants take action by combating Antisemitism within the CSU by communicating to the

entire 23 CSU campuses via broadcast email or similar that the CSU's will properly and truthfully investigate, condemn, and punish any conduct that harasses members of the Jewish community, or others on the basis of their ethnic or ancestral background without retaliation, and initiate mandatory educative training of Antisemitism to all their employees.

4.      An injunction preliminary and permanently mandating that Defendants allow students who are subject to disciplinary action the right to video and audio record their meetings in all 23 CSU campuses, and to allow those students to use it for evidence wherever required, especially in court.

5.      An injunction preliminary and permanently mandating Defendants to allow attorneys or others the right to defend and speak for students who are subject to disciplinary action in all 23 CSU campuses.

6.      An injunction preliminary and permanently mandating Defendants to require persons with mental conditions or disabilities who are subject to disciplinary action a proper determination meeting in all 23 CSU campuses that includes a psychologist, psychiatrist, and medical professional input, allowing any evidence from persons medical history to be reviewed, and be required to video and audio record the determination meetings in all 23 CSU campuses, giving each persons a copy of the recordings, allowing it to be used for evidence wherever required, especially in court.

7.      An injunction preliminary and permanently mandating that Defendants provide resources on how to sue a state university to all their students in the 23 CSU campuses, showing the correct procedural steps before filing a lawsuit, for the sole purpose of preventing Defendants from freely engaging in discriminatory conduct and otherwise.

8.      Any other relief which this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

1

2

3       DATED: May 2, 2024

        Signature: _Edwin Nahavandi_____

        Plaintiff in Pro Per

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 33 -

COMPLAINT