1  ROB BONTA
   Attorney General of California
2  BENJAMIN G. DIEHL
   Supervising Deputy Attorney General
3  CRISTINA M. MATSUSHIMA
   Deputy Attorneys General
4   300 South Spring Street, Suite 1702
   Los Angeles, CA  90013-1230
5   Telephone:  (213) 269-6218
   Fax:  (916) 731-2125
6   E-mail:  Cristina.Matsushima@doj.ca.gov
   *Attorneys for Defendants Board of Trustees of the*
7  *California State University*

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11

12

13 | | |
|---|---|
| **EDWIN HAMID NAHAVANDI,** | 2:24-cv-03791 RGK(Ex) |
| Plaintiff, | **DISCOVERY MATTER:** |
| | **DECLARATION OF CRISTINA M.** |
| **v.** | **MATSUSHIMA IN SUPPORT OF** |
| | **DEFENDANT'S MOTION FOR** |
| | **SANCTIONS AND RE** |
| **BOARD OF TRUSTEES OF THE** | **PLAINTIFF'S FAILURE TO SIGN** |
| **CALIFORNIA STATE** | **JOINT STIPULATION** |
| **UNIVERSITY (the State of** | |
| **California acting in its higher** | Date:        March 28, 2025 |
| **education capacity),** | Time:        9:30 a.m. |
| | Courtroom:   750 |
| Defendant. | Judge:       Magistrate Judge |
| | Charles F. Eick |
| | |
| | Discovery Cutoff:  April 11, 2025 |
| | Pretrial Conference:  June 23, 2025 |
| | Trial Date:  July 8, 2025 |
| | Action Filed: May 7, 2024 |

24       I, Cristina M. Matsushima, declare as follows:

25       1.    I am an attorney at law licensed to practice before all courts of the State

26 of California, including the United States District Court for the Central District of

27 California.  I am a Deputy Attorney General with the Health, Education, and

28 Welfare Section of the Civil Division of the California Attorney General's Office.  I

                              1

am one of the attorneys assigned to represent Defendant Board of Trustees of the California State University (CSU) in the above-referenced matter.

2.    This declaration is based on my personal knowledge and experience, unless otherwise stated.

3.    On December 18, 2024, Magistrate Judge Charles F. Eick ruled on Defendant's Motion to Compel Plaintiff's (1) Initial Disclosures, (2) Responses to Interrogatories, and (3) Responses o Requests for Production of Documents.  A true and correct copy of Magistrate Judge Charles F. Eick's December 18, 2024, Civil Minutes (Discovery Order, ECF 67) is included as **Exhibit A**.

4.    Pursuant to the Discovery Order, "Plaintiff's failure timely to serve responses to the interrogatories or to the requests for production waived all potential objections thereto." Ex. A, p. 1.

5.    Pursuant to the Discovery Order, CSU's interrogatories consist of "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," within the meaning of Rule 26(b)(1) of the Federal Rules of Civil Procedure.  Ex. A, pp. 1-2.

6.    Pursuant to the Discovery Order, Plaintiff was ordered, in relevant part, to "serve written Rule 26(a) initial disclosures" and "serve without objection verified answers to the subject interrogatories[.]"  Ex. A, p. 2.  The Magistrate Judge further "cautioned" Plaintiff that "failure timely to comply fully with this Order may result in the imposition of drastic sanctions, including, without limitation, the dismissal of this action." *Id.* at p. 3.

7.    A true and correct copy of Plaintiff's Written Disclosures, dated January 17, 2025, is included as **Exhibit B**.

8.    A true and correct copy of Defendant's Special Interrogatories (Set 1) to Plaintiff, dated October 8, 2024, is included as **Exhibit C**.

9.    A true and correct copy of Plaintiff's Responses in Support of Interrogatories, dated January 17, 2025, is included as **Exhibit D**.

10.    On or around January 27, 2025, I e-mailed written meet and confer correspondence to Plaintiff regarding his deficient discovery responses and requesting an in-person conference.  A true and correct copy of CSU's Request for Prefiling Conference correspondence, dated January 27, 2025, is included as **Exhibit E**.

11.    Plaintiff did not respond in writing to my January 27, 2025, e-mail and letter.

12.    On January 29, 2025, after concluding Plaintiff's in-person deposition, I conferred with Plaintiff regarding his deficient discovery responses.  I explained that because Plaintiff's discovery responses were grossly deficient, CSU was unable to fully evaluate Plaintiff's allegations, CSU's own potential defenses, or any potential for resolution.  I expressly noted that Plaintiff's discovery responses merely refer to his own unverified Complaint and other court filings, which fails to comply with the Federal Rules of Civil Procedure, specifically because a response cannot vaguely reference a document without specifying which portion of the document contains the responsive information.  I stated that failure to provide Rule-compliant responses could result in severe sanctions, including dismissal of this lawsuit.  I asked Plaintiff if he would amend his responses, or whether he intended to rely wholly on his prior court filings.  He confirmed that he was relying on his filings, including his Complaint.

13.    During our in-person conference on January 29, 2025, I told Plaintiff that CSU would not pursue a motion for sanctions until after mediation so the parties could focus on potential resolution.

14.    The parties attended a virtual mediation on February 6, 2025, but did not resolve this matter.

15.    On February 6, 2025, Plaintiff e-mailed me a letter requesting a Pre-Filing Conference.  In his letter he alleges, in part, that the Department of Justice (in its capacity as CSU's counsel of record) had engaged in "improper advocacy

1   and intentional purpose to harass" him; that the DOJ "intentionally committed a

2   felony" by asserting Eleventh Amendment immunity on behalf of CSU in the

3   course of this litigation; that the DOJ had sought to "influence a judge or other

4   official by means prohibited by law;" and that DOJ "counsel . . . could,

5   individually, be subject to a lawsuit."  Plaintiff further stated that CSU filing a

6   motion for sanctions "would be seen as another intentional attempt of bad faith, and

7   will be documented for future referencing to the appropriate entities."  A true and

8   correct copy of Plaintiff's letter, dated February 6, 2025, is included as **Exhibit F**.

9       16.   On February 13, 2025, I e-mailed Plaintiff a responsive letter seeking

10   clarification of the purpose of Plaintiff's requested Pre-Filing Conference and

11   disputing his allegations.  A true and correct copy of my letter, dated February 13,

12   2025, is included as **Exhibit G**.

13       17.   On February 13, 2025, I also separately e-mailed CSU's portions of the

14   Joint Stipulation and Exhibits A through G in support of its Motion for Sanctions.

15   A true and correct copy of my e-mail to Plaintiff is included as **Exhibit H**.

16       18.   ***Plaintiff did not provide his portion of the Joint Stipulation***.  Instead,

17   Plaintiff provided a separate 62-page response (including exhibits).  A true and

18   correct copy of Plaintiff's Joint Stipulation Response is included as **Exhibit I**.

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

19.    On February 24, 2025, I e-mailed Plaintiff the final version of the Joint Stipulation and requested his signature, pursuant to Local Rule 37-2.2. ***Plaintiff declined to the Joint Stipulation***, and instead responded with an e-mail.  A true and correct copy of my e-mail exchange with Plaintiff, dated February 24-25, 2025, is included as **Exhibit J**.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 25th day of February 2025, at Los Angeles, California

_____
CRISTINA M. MATSUSHIMA
Deputy Attorney General IV

LA2024302735
67451327.docx

Moving Party's

# EXHIBIT A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 24-3791-RGK(Ex) | Date | December 18, 2024 |
|---|---|---|---|
| Title | EDWIN HAMID NAHAVANDI v. BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY, ET AL. | | |

Present: The Honorable   Charles F. Eick, United States Magistrate Judge

| Valencia Munroe | None | None |
|---|---|---|
| Deputy Clerk | Court Reporter/Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**          **(IN CHAMBERS)**

The Magistrate Judge has read and considered all papers filed in support of and in opposition to "Defendant's Motion to Compel, etc." ("the Motion"), filed December 5, 2024. The previously noticed January 3, 2025 hearing is vacated. The Magistrate Judge has taken the Motion under submission without oral argument.

Plaintiff has not yet served written initial disclosures in compliance with Rule 26(a) of the Federal Rules of Civil Procedure. See "Declaration of Cristina M. Matsushima, etc.," filed December 5, 2024. Plaintiff failed timely to serve any responses to Defendant's "Special Interrogatories (Set 1)" or to Defendant's "Request for Production (Set 1)." See id. In the Motion, Defendant seeks an order that Plaintiff serve within seven (7) days "verified written [initial] disclosures," "verified responses" to the interrogatories and "verified responses and a production of responsive documents" as to the requests for production. See "[Proposed] Order Granting Defendant's Motion to Compel," filed December 5, 2024.

Rule 26(a) requires the service of written initial disclosures described therein. Plaintiff has not yet met this requirement. Plaintiff's failure timely to serve responses to the interrogatories or to the requests for production waived all potential objections thereto. See Richmark Corp. v. Timberfalling Consultants, 959 F.2d 1468, 1473 (9th Cir), cert. denied, 506 U.S. 948 (1992) (failure timely to respond to discovery requests waives all potential objections, including potential privilege objections). In any event, the Magistrate Judge has reviewed all of the subject interrogatories and requests for production and has found that the requested discovery

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 24-3791-RGK(Ex) | Date | December 18, 2024 |
|---|---|---|---|
| Title | EDWIN HAMID NAHAVANDI v. BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY, ET AL. | | |

consists of "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," within the meaning of Rule 26(b)(1) of the Federal Rules of Civil Procedure.

Plaintiff argues that Defendant has failed to comply with its own discovery obligations. Such argument presents a <u>non sequitur</u> in the context of the present Motion. <u>See, e.g.</u>, <u>Harrison v. Comm'r Gary Lanigan</u>, 2016 WL 3626524, at *2 (D. N.J. July 1, 2016) ("there is no place for 'tit-for-tat' in a court of law. One party's failure to comply with certain rules and procedures is not an excuse for another party to do the same"); <u>Genentech, Inc. v. Trustees of University of Pennsylvania</u>, 2011 WL 7074208, at *1 (N.D. Cal. June 10, 2011) ("A party may not excuse its failure to comply with discovery obligations by claiming that its opposing party is similarly delinquent. Nor may a party condition its compliance with discovery obligations on receiving discovery from its opponent.") (citations and quotations omitted); <u>see also</u> Fed. R. Civ. P. 26(a)(1)(E).

Plaintiff also appears to express strongly held beliefs that his claims against Defendant in this action are meritorious and that Defendant has no valid defense thereto. Plaintiff's views regarding the merits of the case do not relieve Plaintiff of his discovery obligations. <u>See, e.g.</u>, <u>Third Pentacle, LLC v. Interactive Life Forms, LLC</u>, 2012 WL 27473, at *3 (S.D. Ohio Jan. 5, 2012) ("Although [the plaintiff] presently holds a strong belief in the merits of its litigation positions, its strong belief – whether ultimately justified or not – provides no basis for avoiding its discovery obligations created by the Federal Rules of Civil Procedure"). Similarly, challenges to the factual or legal viability of an opposing party's claims, defenses or theories ordinarily do not affect the proper scope of discovery. <u>See</u> Fed. R. Civ. P. 26(b); <u>see also</u> <u>Williams v. Hargrove</u>, 2017 WL 11454716, at *1 (S.D. Miss. April 12, 2017); <u>Celanese Corp. v. Clariant Corp.</u>, 2016 WL 1074573, at *4-5 (N.D. Tex. March 18, 2016); <u>Third Pentacle, LLC v. Interactive Life Forms, LLC</u>, 2012 WL 27473, at *3 (C.D. Ohio Jan. 5, 2012); <u>see generally</u> 8 Wright, Miller & Marcus, Federal Practice and Procedure § 2008, p. 137 (3d ed. 2010) ("Discovery is not to be denied because it relates to a claim or defense that is being challenged as insufficient").

Accordingly, it is ordered that, on or before January 17, 2025, Plaintiff must: (1) serve written Rule 26(a) initial disclosures; (2) serve without objection verified answers to the subject interrogatories; and (3) without objection make available to Defendant for inspection and copying all documents within Plaintiff's possession, custody or control responsive to the subject

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 24-3791-RGK(Ex) | Date | December 18, 2024 |
|---|---|---|---|
| Title | EDWIN HAMID NAHAVANDI v. BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY, ET AL. | | |

requests for production.  Plaintiff is cautioned that failure timely to comply fully with this Order may result in the imposition of drastic sanctions, including, without limitation, the dismissal of this action.

      Except as expressly stated herein, the Motion is denied.  The seven-day deadline requested by Defendant for compliance is unnecessarily short.  Initial disclosures and responses to requests for production (as distinguished from answers to interrogatories) need not be verified.  <u>See</u> Fed. R. Civ. P. 26, 34; <u>Trust Labs, Inc.</u>, 2023 WL 2949158, at *1 (N.D. Cal. April 13, 2023).  Given Plaintiff's waiver of all potential objections to the subject requests for production, and the Magistrate Judge's order that Plaintiff make available for inspection and copying all documents responsive to the subject requests for production, written responses to the subject requests for production would appear to serve little or no purpose.

      Lastly, Plaintiff's request for "protective orders" is denied because the request is procedurally improper and because Plaintiff has failed to demonstrate "good cause" for any such relief.  <u>See</u> Fed. R. Civ. P. 26(c); L.R. 37.

cc:     Judge Klausner
        Plaintiff
        All Counsel of Record

Initials of Deputy Clerk  <u>VMUN</u>

Moving Party's

# EXHIBIT B

Edwin Hamid Nahavandi
5710 Comanche Ave.
Woodland Hills, CA. 91367
Telephone: (818) 569-9673
Email: edwin.nahavandi@gmail.com

Plaintiff in pro per

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| EDWIN HAMID NAHAVANDI | Case No. 2:24-cv-03791-RGK(EX) |
| Plaintiff(s), | **WRITTEN DISCLOSURES** |
| vs. | |
| BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY (the State of California acting in its higher education capacity); ERIKA DREW BECK, in her official capacity as President of California State University, Northridge; ZEINA OTAKY RAMIREZ, in her official capacity as Director of Student Conduct and Ethical Development at California State University, Northridge; WILLIAM WATKINS, in his official capacity as Vice President of Student Affairs at California State University, Northridge | |
| Defendant(s). | |

## WRITTEN DISCLOSURES

The entities along with the subjects of that information as characterized by Plaintiff's given information towards case number 2:24-cv-03791 serves as the true disclosure. Defendant CSU has records pertaining to this information under their control and custody, for possession.

## MONETARY DAMAGES

1) Federally Funded Aid

    A) Pell Grant - $2081

       • Calculated by previous grants, see Exhibits, $(2081 + 2081) \div 2 = 2081$

    B) Rehabilitation Grant - $2443.61

       • Calculated by previous grants, see Exhibits, $(2167 + 219.61 + 2281 + 219.61) \div 2 = 2443.61$

2) Jewish Religious Items

    A) Kippah and Tefellin - $505

       • Calculated by Jewish public sources

DATED: 1/17/25

Signature: Edwih Nahavandi

Plaintiff in Pro Per

Moving Party's
# EXHIBIT C

1   Rob Bonta
    Attorney General of California
2   Benjamin G. Diehl
    Supervising Deputy Attorney General
3   Andrew Z. Edelstein (SBN 218023)
    Cristina M. Matsushima (SBN 291220)
4   Deputy Attorneys General
     300 South Spring Street, Suite 1702
5     Los Angeles, CA  90013-1230
      Telephone:  (213) 269-6218
6     Fax:  (916) 731-2125
      E-mail:  Cristina.Matsushima@doj.ca.gov
7   *Attorneys for Defendants Board of Trustees of the*
    *California State University*

8

9                  IN THE UNITED STATES DISTRICT COURT

10                FOR THE CENTRAL DISTRICT OF CALIFORNIA

11

12

13  **EDWIN HAMID NAHAVANDI,**          2:24-cv-03791-RGK-MRWx

14                           Plaintiff,  **DEFENDANT'S SPECIAL**
                                         **INTERROGATORIES (SET 1) TO**
15         **v.**                        **PLAINTIFF**

16

17  **BOARD OF TRUSTEES OF THE**
    **CALIFORNIA STATE**
18  **UNIVERSITY (the State of**
    **California acting in its higher**
19  **education capacity),**

20                           Defendant.

21  PROPOUNDING PARTY:    Defendant Board of Trustees of the California
22                        State University

23  RESPONDING PARTY:    Plaintiff Edwin Hamid Nahavandi

24
    SET:                 One
25

26       Defendant Board of Trustees of the California State University requests that

27  plaintiff Edwin Hamid Nahavandi answer the following interrogatories within thirty

28

                                    1

1  (30) days and in accordance with the provisions of Federal Rules of Civil

2  Procedure, rule 33.

3                              **DEFINITIONS**

4       The following definitions apply to each interrogatory below and are deemed

5  to be incorporated in each interrogatory:

6       1.  "PLAINTIFF," "YOU," and "YOUR" includes plaintiff Edwin Hamid

7  Nahavandi and his agent(s), attorney(s), and/or representative(s).

8       2.  "COMPLAINT" means the operative COMPLAINT in the matter of

9  *Nahavandi v. CSU, et al.*, United State District Court, Central District of California,

10  Case No. 2:24-cv-03791-RGK-MRWx, filed on May 7, 2024.

11       3.  "CSU" means defendant Board of Trustees of the California State

12  University, including its employees, agents, and legal representatives.

13       4.  "CSUN" means California State University, Northridge.

14       5.  "BECK" means former defendant Erika Drew Beck, President of CSUN.

15       6.  "RAMIREZ" means former defendant Zeina Otaky Ramirez, Assistant

16  Dean of Students and Director of Student Conduct and Ethical Development at

17  CSUN.

18       7.  "WATKINS" means former defendant William Watkins, Vice President of

19  Student Affairs at CSUN.

20       8.   "IDENTIFY," with respect to a person (including any natural person,

21  corporation, limited liability company, partnership, or association), means describe

22  the person's name, address, and telephone number.

23       9.  "E-MAIL" includes the e-mail message and any attachments.

24       10. "RELATING TO" means containing, constituting, considering,

25  comprising, concerning, discussing, regarding, describing, reflecting, studying,

26  commenting or reporting on, mentioning, analyzing, or referring, alluding, or

27  pertaining to, in whole or in part.

28

1    11. "STATE ALL FACTS" means to describe in detail each and every fact
2    and/or circumstance which YOU contend supports or forms any part of the basis for
3    YOUR response, including dates, times, locations, circumstances, and names of
4    people.

5    **INTERROGATORIES**

6    **INTERROGATORY NO. 1.**

7    IDENTIFY YOUR roommate(s), as referenced in paragraphs 10 through 15,
8    49, and 99 of the COMPLAINT.

9    **INTERROGATORY NO. 2.**

10    STATE ALL FACTS in support of YOUR allegation that YOU experienced
11    Antisemitic rhetoric and harassment from YOUR roommate(s).

12    **INTERROGATORY NO. 3.**

13    IDENTIFY all CSU faculty and staff who YOU allege harassed, threatened,
14    and/or discriminated against YOU based on YOUR race, religion, and/or national
15    origin.

16    **INTERROGATORY NO. 4.**

17    If YOU contend that CSU retaliated against YOU due to YOUR race, religion,
18    or national origin, STATE ALL FACTS in support of YOUR contention.

19    **INTERROGATORY NO. 5.**

20    IDENTIFY all CSU students who YOU allege harassed, threatened, or
21    discriminated against YOU based on YOUR race, religion, and/or national origin.

22    **INTERROGATORY NO. 6.**

23    STATE ALL FACTS in support of YOUR assertion in paragraph 38 of the
24    COMPLAINT that YOU were worried RAMIREZ and the Office of the Vice
25    President for Student Affairs "might refuse to enforce the CSU's policies, and
26    retaliate back[.]"

27

28

**INTERROGATORY NO. 7.**

STATE ALL FACTS in support of YOUR contention that a CSU student "wanted to physically harm" YOU, YOUR "Jewish religion and community, and place of worship, which has children," as referenced in paragraph 38 of the COMPLAINT.

**INTERROGATORY NO. 8.**

STATE ALL FACTS in support of YOUR contention that YOU received death threats from a CSU student.

**INTERROGATORY NO. 9.**

If YOU allege that YOU were subjected to antisemitic discrimination, harassment, or hate speech, STATE ALL FACTS in support of YOUR contention, including a description of the action itself, contents of such speech, the actor or speaker, and the time and location of the interaction.

**INTERROGATORY NO. 10.**

STATE ALL FACTS in support of YOUR contention that YOU were "scared to go into campus at night due to the fear of being harmed," as alleged in paragraph 47 of the COMPLAINT.

**INTERROGATORY NO. 11.**

STATE ALL FACTS in support of YOUR allegations that CSU prevented YOU from filing complaints and/or reports regarding antisemitic harassment and discrimination.

**INTERROGATORY NO. 12.**

STATE ALL FACTS in support of YOUR allegation that YOUR kippah and tefillin were stolen, as alleged in paragraph 50 of the COMPLAINT.

**INTERROGATORY NO. 13.**

STATE ALL FACTS in support of YOUR contention that CSUN "allow[ed] Antisemitism," as stated in paragraph 55 of the COMPLAINT.

**INTERROGATORY NO. 14.**

STATE ALL FACTS RELATING TO the "Antisemitic attacks towards Jewish people" referenced in paragraph 57 of the COMPLAINT.

**INTERROGATORY NO. 15.**

STATE ALL FACTS RELATING TO YOUR meeting with WATKINS, as referenced in paragraph 60 of the COMPLAINT.

**INTERROGATORY NO. 16.**

STATE ALL FACTS RELATING TO YOUR discussion(s) with Jodi Johnson, as referenced in paragraph 62 of the COMPLAINT.

**INTERROGATORY NO. 17.**

STATE ALL FACTS RELATING TO YOUR interaction with Marilyn Mendoza, as referenced in paragraph 65 of the COMPLAINT.

**INTERROGATORY NO. 18.**

STATE ALL FACTS RELATING TO YOUR interaction with Executive Assistant Robin Ferguson, as referenced in paragraph 66 of the COMPLAINT.

**INTERROGATORY NO. 19.**

STATE ALL FACTS RELATING TO YOUR contention that CSU chose "not to accommodate Plaintiff for his fears, worries, and stress from the members of the University," as alleged in paragraph 74 of the COMPLAINT.

**INTERROGATORY NO. 20.**

STATE ALL FACTS in support of YOUR contention that CSU's actions or inactions negatively impacted YOUR participation and experience in the MBA program, as alleged in paragraph 74 of the COMPLAINT.

**INTERROGATORY NO. 21.**

STATE ALL FACTS in support of YOUR allegation that Professor Thomas Wedel utilized inappropriate examples of YOUR "situation" in the Systems and

1  Operations Management course, as alleged in paragraphs 75 and 76 of the

2  COMPLAINT.

3  **INTERROGATORY NO. 22.**

4      STATE ALL FACTS in support of YOUR allegation that CSU engaged in

5  "retaliatory and discriminatory conduct against [YOU] for reporting students who

6  were cheating, reporting their faculties misconduct, participating in religious

7  activities, rightfully protesting against Antisemitism, and for reporting a faculty

8  member to the [United States Department of Education Office of Civil Rights], by

9  harassing, threatening, disciplining, and punishing [YOU] through charges of

10  violation, suspension, and probation in an attempt to prevent [YOU] from ever

11  engaging in the participation of [YOUR] protected activities," as alleged in

12  paragraph 90 of the COMPLAINT.

13  **INTERROGATORY NO. 23.**

14      STATE ALL FACTS in support of YOUR allegation that CSU marked YOU

15  as a "high-level threat," as alleged in paragraph 91 of the COMPLAINT.

16  **INTERROGATORY NO. 24.**

17      STATE ALL FACTS in support of YOUR allegation that CSU created a

18  "hostile environment," as alleged in paragraph 105 of the COMPLAINT.

19

20  Date: October 8, 2024                    Respectfully submitted,

21                                           ROB BONTA
                                             Attorney General of California
22                                           BENJAMIN G. DIEHL
                                             Supervising Deputy Attorney General
23

24

25                                           ANDREW Z. EDELSTEIN
                                             CRISTINA M. MATSUSHIMA
26                                           Deputy Attorneys General
                                             *Attorneys for Defendants*
27  LA2024302735
    67106239.docx

28

6

## DECLARATION OF SERVICE BY ELECTRONIC SERVICE

Case Name:     **Nahavandi v. Board of Trustees of the CSU, et al.**
Case No.:      **2:24-cv-03791-RGK-MRWx**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made.  I am 18 years of age or older and not a party to this matter.

On October 8, 2024, I served the attached **DEFENDANT'S SPECIAL INTERROGATORIES (SET 1) TO PLAINTIFF** by transmitting a true copy via electronic mail addressed as follows:

Edwin Hamid Nahavandi
5710 Comanche Ave.
Woodland Hills, CA. 91367
Email: edwin.nahavandi@gmail.com

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on October 8, 2024, at Los Angeles, California.

| G. Agcaoili | /s/ G. Agcaoili |
|---|---|
| Declarant | Signature |

Moving Party's
# EXHIBIT D

Edwin Hamid Nahavandi
5710 Comanche Ave.
Woodland Hills, CA. 91367
Telephone: (818) 569-9673
Email: edwin.nahavandi@gmail.com

Plaintiff in pro per

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| EDWIN HAMID NAHAVANDI | Case No. 2:24-cv-03791-RGK(EX) |
| Plaintiff(s), | **RESPONSES IN SUPPORT OF INTERROGATORIES** |
| vs. | |
| BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY (the State of California acting in its higher education capacity); ERIKA DREW BECK, in her official capacity as President of California State University, Northridge; ZEINA OTAKY RAMIREZ, in her official capacity as Director of Student Conduct and Ethical Development at California State University, Northridge; WILLIAM WATKINS, in his official capacity as Vice President of Student Affairs at California State University, Northridge | |
| Defendant(s). | |

**RESPONSES TO INTERROGATORIES**

**RESPONSE TO INTERROGATORY NO. 1**

Plaintiff, a witness to the events, provides this response based on either his current recollection, memory, and information reasonably available, or its entirety. Both roommates were pronounced as "KRIS-chen", as their names reflect on such contextual pronunciation towards their legal names. Defendant CSU has records pertaining to this information under their control and custody, for possession, of all Plaintiff's roommates contextually pronounced as "KRIS-chen".

**RESPONSE TO INTERROGATORY NO. 2**

Plaintiff provides this response based on either his current recollection, memory, and information reasonably available, or its entirety. Plaintiff, a witness to the events, specifically emphasizes that his claims are not an allegation, as characterized by this interrogatory, but rather is factual. On the basis of Plaintiff's previously stated emphasis aforementioned above, the claims in Plaintiff's *Complaint* serve as the true integrity of the response to this interrogatory.

**RESPONSE TO INTERROGATORY NO. 3**

Plaintiff provides this response based on either his current recollection, memory, and information reasonably available, or its entirety. Plaintiff, a witness to the events, specifically emphasizes that his claims are not an allegation, as characterized by this interrogatory, but rather is factual. On the basis of Plaintiff's previously stated emphasis aforementioned above, the entities in Plaintiff's *Complaint* serve as the true integrity of the response to this interrogatory.

**RESPONSE TO INTERROGATORY NO. 4**

Plaintiff provides this response based on either his current recollection, memory, and information reasonably available, or its entirety. Plaintiff, a witness to the events, specifically reaffirms to the entirety of all his given information towards case number 2:24-cv-03791 as the true integrity of the response to this interrogatory.

1  **RESPONSE TO INTERROGATORY NO. 5**

2    Plaintiff provides this response based on either his current recollection, memory,

3  and information reasonably available, or its entirety. Plaintiff, a witness to the events,

4  specifically emphasizes that his claims are not an allegation, as characterized by this

5  interrogatory, but rather is factual. On the basis of Plaintiff's previously stated

6  emphasis aforementioned above, Plaintiff specifically reaffirms to the entirety of all

7  his given information towards case number 2:24-cv-03791 as the true integrity of the

8  response to this interrogatory.

9  **RESPONSE TO INTERROGATORY NO. 6**

10    Plaintiff provides this response based on either his current recollection, memory,

11  and information reasonably available, or its entirety. Plaintiff, a witness to the events,

12  specifically emphasizes that his claims are not an allegation, as characterized by this

13  interrogatory, but rather is factual. On the basis of Plaintiff's previously stated

14  emphasis aforementioned above, Plaintiff specifically reaffirms that his *Complaint*

15  serves as the true integrity of the response to this interrogatory.

16  **RESPONSE TO INTERROGATORY NO. 7**

17    Plaintiff provides this response based on either his current recollection, memory,

18  and information reasonably available, or its entirety. Plaintiff, a witness to the events,

19  specifically reaffirms to the entirety of all his given information towards case number

20  2:24-cv-03791 as the true integrity of the response to this interrogatory.

21  **RESPONSE TO INTERROGATORY NO. 8**

22    Plaintiff provides this response based on either his current recollection, memory,

23  and information reasonably available, or its entirety. Plaintiff, a witness to the events,

24  specifically reaffirms to the entirety of all his given information towards case number

25  2:24-cv-03791 as the true integrity of the response to this interrogatory.

26  **RESPONSE TO INTERROGATORY NO. 9**

27    Plaintiff provides this response based on either his current recollection, memory,

28  and information reasonably available, or its entirety. Plaintiff, a witness to the events,

specifically emphasizes that his claims are not an allegation, as characterized by this interrogatory, but rather is factual. On the basis of Plaintiff's previously stated emphasis aforementioned above, Plaintiff specifically reaffirms to the entirety of all his given information towards case number 2:24-cv-03791 as the true integrity of the response to this interrogatory.

**RESPONSE TO INTERROGATORY NO. 10**

Plaintiff provides this response based on either his current recollection, memory, and information reasonably available, or its entirety. Plaintiff, a witness to the events, specifically emphasizes that his claims are not an allegation, as characterized by this interrogatory, but rather is factual. On the basis of Plaintiff's previously stated emphasis aforementioned above, Plaintiff specifically reaffirms to the entirety of all his given information towards case number 2:24-cv-03791 as the true integrity of the response to this interrogatory.

**RESPONSE TO INTERROGATORY NO. 11**

Plaintiff provides this response based on either his current recollection, memory, and information reasonably available, or its entirety. Plaintiff, a witness to the events, specifically emphasizes that his claims are not an allegation, as characterized by this interrogatory, but rather is factual. On the basis of Plaintiff's previously stated emphasis aforementioned above, Plaintiff specifically reaffirms that his *Complaint* serves as the true integrity of the response to this interrogatory.

**RESPONSE TO INTERROGATORY NO. 12**

Plaintiff provides this response based on either his current recollection, memory, and information reasonably available, or its entirety. Plaintiff, a witness to the events, specifically emphasizes that his claims are not an allegation, as characterized by this interrogatory, but rather is factual. On the basis of Plaintiff's previously stated emphasis aforementioned above, Plaintiff specifically reaffirms that his *Complaint* serves as the true integrity of the response to this interrogatory.

**RESPONSE TO INTERROGATORY NO. 13**

Plaintiff provides this response based on either his current recollection, memory, and information reasonably available, or its entirety. Plaintiff, a witness to the events, specifically reaffirms to the entirety of all his given information towards case number 2:24-cv-03791 as the true integrity of the response to this interrogatory.

**RESPONSE TO INTERROGATORY NO. 14**

Plaintiff provides this response based on either his current recollection, memory, and information reasonably available, or its entirety. Plaintiff, a witness to the events, specifically reaffirms to the entirety of all his given information towards case number 2:24-cv-03791 as the true integrity of the response to this interrogatory.

**RESPONSE TO INTERROGATORY NO. 15**

Plaintiff provides this response based on either his current recollection, memory, and information reasonably available, or its entirety. Plaintiff, a witness to the events, specifically reaffirms that his *Complaint* serves as the true integrity of the response to this interrogatory.

**RESPONSE TO INTERROGATORY NO. 16**

Plaintiff provides this response based on either his current recollection, memory, and information reasonably available, or its entirety. Plaintiff, a witness to the events, specifically reaffirms that his *Complaint* serves as the true integrity of the response to this interrogatory.

**RESPONSE TO INTERROGATORY NO. 17**

Plaintiff provides this response based on either his current recollection, memory, and information reasonably available, or its entirety. Plaintiff, a witness to the events, specifically reaffirms to the entirety of all his given information towards case number 2:24-cv-03791 as the true integrity of the response to this interrogatory.

**RESPONSE TO INTERROGATORY NO. 18**

Plaintiff provides this response based on either his current recollection, memory, and information reasonably available, or its entirety. Plaintiff, a witness to the events,

specifically reaffirms that his *Complaint* serves as the true integrity of the response to this interrogatory.

**RESPONSE TO INTERROGATORY NO. 19**

Plaintiff provides this response based on either his current recollection, memory, and information reasonably available, or its entirety. Plaintiff, a witness to the events, specifically emphasizes that his claims are not an allegation, as characterized by this interrogatory, but rather is factual. On the basis of Plaintiff's previously stated emphasis aforementioned above, Plaintiff specifically reaffirms to the entirety of all his given information towards case number 2:24-cv-03791 as the true integrity of the response to this interrogatory.

**RESPONSE TO INTERROGATORY NO. 20**

Plaintiff provides this response based on either his current recollection, memory, and information reasonably available, or its entirety. Plaintiff, a witness to the events, specifically emphasizes that his claims are not an allegation, as characterized by this interrogatory, but rather is factual. On the basis of Plaintiff's previously stated emphasis aforementioned above, Plaintiff specifically reaffirms to the entirety of all his given information towards case number 2:24-cv-03791 as the true integrity of the response to this interrogatory.

**RESPONSE TO INTERROGATORY NO. 21**

Plaintiff provides this response based on either his current recollection, memory, and information reasonably available, or its entirety. Plaintiff, a witness to the events, specifically emphasizes that his claims are not an allegation, as characterized by this interrogatory, but rather is factual. On the basis of Plaintiff's previously stated emphasis aforementioned above, Plaintiff specifically reaffirms to the entirety of all his given information towards case number 2:24-cv-03791 as the true integrity of the response to this interrogatory.

RESPONSES IN SUPPORT OF INTERROGATORIES

**RESPONSE TO INTERROGATORY NO. 22**

Plaintiff provides this response based on either his current recollection, memory, and information reasonably available, or its entirety. Plaintiff, a witness to the events, specifically emphasizes that his claims are not an allegation, as characterized by this interrogatory, but rather is factual. On the basis of Plaintiff's previously stated emphasis aforementioned above, Plaintiff specifically reaffirms to the entirety of all his given information towards case number 2:24-cv-03791 as the true integrity of the response to this interrogatory.

**RESPONSE TO INTERROGATORY NO. 23**

Plaintiff provides this response based on either his current recollection, memory, and information reasonably available, or its entirety. Plaintiff, a witness to the events, specifically emphasizes that his claims are not an allegation, as characterized by this interrogatory, but rather is factual. On the basis of Plaintiff's previously stated emphasis aforementioned above, Plaintiff specifically reaffirms to the entirety of all his given information towards case number 2:24-cv-03791 as the true integrity of the response to this interrogatory.

**RESPONSE TO INTERROGATORY NO. 24**

Plaintiff provides this response based on either his current recollection, memory, and information reasonably available, or its entirety. Plaintiff, a witness to the events, specifically emphasizes that his claims are not an allegation, as characterized by this interrogatory, but rather is factual. On the basis of Plaintiff's previously stated emphasis aforementioned above, Plaintiff specifically reaffirms to the entirety of all his given information towards case number 2:24-cv-03791 as the true integrity of the response to this interrogatory.

DATED: 1/17/25

Signature: Edwin Nahavandi

Plaintiff in Pro Per

RESPONSES IN SUPPORT OF INTERROGATORIES

Moving Party's
# EXHIBIT E

| | |
|---|---|
| **From:** | Cristina Matsushima |
| **To:** | edwin.nahavandi@gmail.com; edwin.hamid.nahavandi@gmail.com |
| **Cc:** | Benjamin G. Diehl |
| **Subject:** | Nahavandi v. CSU - Request for Prefiling Conference |
| **Date:** | Monday, January 27, 2025 11:27:40 AM |
| **Attachments:** | Nahavandi v. CSU - Request for Prefiling Conference.pdf |

Mr. Nahavandi,

Please see the attached correspondence.

**CRISTINA M. MATSUSHIMA**
Deputy Attorney General
California Department of Justice
Office of the Attorney General
300 South Spring Street, Suite 1702
Los Angeles, California  90013
Tel:  (213) 269-6218
Fax:  (916) 731-2125
cristina.matsushima@doj.ca.gov

C A L I F O R N I A

**DEPARTMENT OF JUSTICE**

*Rob Bonta*
**Attorney General**

300 SOUTH SPRING STREET, SUITE 1702
LOS ANGELES, CA 90013-1230

Public: (213) 269-6000
Telephone: (213) 269-6218
Facsimile: (916) 731-2125
E-Mail: Cristina.Matsushima@doj.ca.gov

January 27, 2025

Via e-mail

Edwin Nahavandi
edwin.nahavandi@gmail.com

RE:     *Nahavandi v. Board of Trustees of the CSU* United States District Court, Central District
          of California, Case No. 2:24-cv-03791 RGK(Ex)
          Request for Prefiling Conference pursuant to Local Rule 37-1

Dear Mr. Nahavandi:

     We have received your Written Disclosures and Responses to Special Interrogatories (Set 1), which were served on January 17, 2025. This letter constitutes my formal request to schedule a Prefiling Conference on **January 29, 2025**, pursuant to Local Rule 37-1, regarding your deficient discovery responses.

**I.     WRITTEN DISCLOSURES**

     In violation of Magistrate Judge Charles F. Eick's Discovery Order, dated December 18, 2024, instructing you to serve written Rule 26(a) initial disclosures, you have served deficient disclosures.

     Pursuant to Federal Rules of Civil Procedure, Rule 26(1)(1)(A)(i), each party shall disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment[.]" Your response states, "The entities along with the subjects of that information as characterized by Plaintiff's given information towards case number 2:24-cv-03791 serves as the true disclosure. Defendant CSU has records pertaining to this information under their control and custody, for possession."

     Your written response is vague, evasive, and nonresponsive, which is tantamount to serving to response at all. Fed. R. Civ. P. 37(a)(4). Insofar are you are asserting that you need not provide the requested information because it is already in CSU's possession, custody, or control, "courts have unambiguously stated that this exact objection is insufficient to resist a discovery request." *Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 682 (C.D. Cal. 2009).

Edwin Nahavandi
January 27, 2025
Page 2

## II.    RESPONSES TO SPECIAL INTERROGATORIES (SET 1)

Your responses to CSU's Special Interrogatories (Set 1) similarly violate the Magistrate Judge's discovery order which directed you to serve, without objection, verified answers to the subject interrogatories. Rather than substantive responses, you have served almost identical evasive, nonsubstantive, boilerplate responses to every interrogatory, stating some variation of:

> Plaintiff provides this response based on either his current recollection, memory, and information reasonably available, or its entirety. Plaintiff, a witness to the events, specifically emphasizes that his claims are not an allegation, as characterized by this interrogatory, but rather is factual. On the basis of Plaintiff's previously stated emphasis aforementioned above, the claims in Plaintiff's *Complaint* serve as the true integrity of the response to this interrogatory.

Again, because your interrogatory responses are evasive and incomplete, they "must be treated as a failure to . . . respond." Fed. R. Civ. P. 37(a)(4). Your continued failure to participate in the discovery process in good faith thwarts the very purpose of discovery, which is "to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." *U.S. ex rel. Schwartz v. TRW, Inc.*, 211 F.R.D. 388, 392 (C.D. Cal. 2002) (citing *Oakes v. Halvorsen Marine Ltd.,* 179 F.R.D. 281, 283 (C.D.Cal.1998)).

## III.    CSU'S MOTION FOR SANCTIONS

Because of your ongoing failure to comply with the Magistrate Judge's Discovery Order or the Federal Rules of Civil Procedure, CSU intends to file a motion for terminating sanctions and attorney's fees or, in the alternative, for evidentiary sanctions, pursuant to Rule 37.

A terminating sanction, while "very severe," is justified based upon a showing of "willfulness, bad faith, and fault." *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007); Fed. R. Civ. P. 37(b)(2)(A)(v). In determining the appropriateness of terminating sanctions, a court should consider the following factors:

> (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions."

*Connecticut Gen. Life Ins. Co.,* 482 F.3d at 1096.

"The sub-parts of the fifth factor are whether the court has considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of case-dispositive sanctions." *Connecticut Gen. Life Ins. Co.,* 482 F.3d at 1096. "The most critical

Edwin Nahavandi
January 27, 2025
Page 3

factor to be considered in case-dispositive sanctions is whether 'a party's discovery violations make it impossible for a court to be confident that the parties will ever have access to the true facts.'" *Id.* at 1097 (quoting *Valley Eng'rs v. Electric Eng'g Co.*, 158 F.3d 1051, 1058 (9th Cir.1998). The party facing the sanctions "'carries the burden of demonstrating that the failure to comply with" disclosure rules "is substantially justified or harmless.'" *Haas v. Travelex Ins. Servs. Inc.*, 679 F. Supp. 3d 962, 966 (C.D. Cal. 2023), appeal dismissed, No. 23-55670, 2023 WL 9381382 (9th Cir. Dec. 5, 2023) (quoting *Jarrow Formulas, Inc. v. Now Health Grp., Inc.*, No. CV 10-8301 PSG (JCx), 2012 WL 3186576, at \*15 (C.D. Cal. Aug. 2, 2012).)

Here, you have failed to comply with the very basic requirements of discovery as well as this Court's Discovery Order. Your failure to meaningfully participate in the discovery process has prejudiced CSU's ability to evaluate and/or resolve this dispute. This matter cannot be tried on the merits because CSU currently has no access to the "true facts" of the case, beyond the information within its own possession. Due to your failure to comply with this Court's Discovery Order, CSU will seek sanctions including attorney's fees and dismissal of this action or, in the alternative, an order excluding your evidence at trial. Fed. R. Civ. P. 37(b)(2)(A)(ii), (v).

## IV.    REQUEST FOR PREFILING CONFERENCE AND AMENDED DISCOVERY RESPONSES

Pursuant to Local Rule 37-1, I am requesting a Prefiling Conference to discuss these deficiencies. Because you will already be present in my office on **January 29, 2025**, I suggest we have our conference before or after your deposition on that day. As we will further discuss during our Prefiling Conference, absent receipt of timely amended, Rule-compliant responses, CSU will pursue a motion for sanctions.

Sincerely,

CRISTINA M. MATSUSHIMA
Deputy Attorney General

For    ROB BONTA
    Attorney General

LA2024302735
67384148.docx

Moving Party's
# EXHIBIT F

| | |
|---|---|
| **From:** | Edwin Nahavandi |
| **To:** | edwin.hamid.nahavandi@gmail.com; Edwin Nahavandi; edovandi@gmail.com; Benjamin G. Diehl; Cristina Matsushima; Gail Agcaoili; Alyssa Barragan |
| **Subject:** | Re: Documents with Exhibits |
| **Date:** | Thursday, February 6, 2025 5:13:52 AM |
| **Attachments:** | Edwin Hamid Nahavandi Document.pdf |
| | Edwin Hamid Nahavandi Exhibits.zip |

**EXTERNAL EMAIL:** This message was sent from outside DOJ. Please do not click links or open attachments that appear suspicious.

Electronic Mail Service, Sent on February 6, 2025 or 2/6/25.

Edwin Hamid Nahavandi
5710 Comanche Ave.
Woodland Hills, CA. 91367
Telephone: (818) 569-9673
Email: edwin.nahavandi@gmail.com

Plaintiff in pro per

Department of Justice
300 South Spring Street, Suite 1702
Los Angeles, CA. 90013

Defendant's Attorneys

**<u>Via e-mail</u>**
Department of Justice Attorneys for Defendant CSU

RE: EDWIN HAMID NAHAVANDI vs. BOARD OF TRUSTEES OF THE
CALIFORNIA STATE UNIVERSITY (the State of California acting in its higher
education capacity); ERIKA DREW BECK, in her official capacity as President of
California State University, Northridge; ZEINA OTAKY RAMIREZ, in her
official capacity as Director of Student Conduct and Ethical Development at
California State University, Northridge; WILLIAM WATKINS, in his official
capacity as Vice President of Student Affairs at California State University,
Northridge, United States District Court, Central District Court of California,
Western Division. Case No. 2:24-cv-03791
<u>Request for Prefiling Conference pursuant to Local Rule 37-1</u>

Dear Department of Justice,

I have received your letter regarding your allegations, in response to my written
disclosures and interrogatories for this proceeding and have met and conferred with
you in good faith on January 29, 2025, pursuant to Local Rule 37-1, towards
Defendant CSU's intent to still continue their motion for sanctions. I would like to
schedule a Prefiling Conference to speak with you regarding your improper
advocacy and intentional purpose to harass Plaintiff EDWIN HAMID
NAHAVANDI.

On October 3, 2024, the Department of Justice counsel served Plaintiff their
allegedly complete initial disclosures, pursuant to the Federal Rules of Procedure,

Rule 26, see Exhibit A, failing to provide their initial disclosures 10 days after their *Responsive Defensive Pleading*, as stipulated, see *Parties Joint Rule 26(f)*.

In the Written Disclosures, pursuant to the Federal Rules of Procedure, Rule 26(a)(1)(i), the Department of Justice counsel, in bad faith, had intentionally and knowingly concealed material information of potential witnesses that were addressed in Plaintiff's Court filed documents, but not limited to other participants, which the Plaintiff could have not known about, since it's reasonable that other California State University employees or others, relevant to the nature of this proceeding, explicitly had communication channels that were most likely pertinent to the provisions governed by the required disclosures, however, the Department of Justice had given no contact information of their deficient witnesses, stating "Because all the individuals named in response to Rule 26(a)(1)(A)(i) are current or former CSU employees, they should be contacted through CSU's counsel of record.", see Exhibit B, and had intentionally made a false claim that their disclosures were not deficient, see *Motion to Compel*.

Department of Justice counsel, in the Initial Disclosures, Plaintiff, a witness to the events, had sent, provided his responses based on either his current recollection, memory, and information reasonably available, or its entirety. If the court orders discovery of interrogatory responses, it must be protected against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party concerning the litigation, pursuant to Federal Rule of Procedure, Rule 26(b)(3)(B).

A significant potential witness that the Department of Justice counsel, in bad faith, withheld would be a person such as Thy Monaco, the designated Attorney for Defendant CSU, for California State University, Northridge, see Exhibit C, which knew about Plaintiff's Federally protected disability, see Exhibit D, upheld by Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq, and expressed to Plaintiff the loss of funding from his disability grant, funded by the Federal Government, for his disability, is his problem to address, with the Federal Government himself, see Exhibit E, causing irreparable damage to Plaintiff's legitimate and truthful claim, for it to be dismissed in this Court, disregarding the fact that the only way to be funded by the Department of Rehabilitation is to actually have a disability, which is defined by the Department of Rehabilitation as having a physical or mental impairment that substantially limits one or more major life activity, and has a record of or is regarded as having such an impairment, see Exhibit F.

Notably, the Department of Rehabilitation has a contractual agreement with Defendant CSU, which deems that if Defendant CSU had accepted funds from this Federal Government Entity, Defendant CSU cannot deny or exclude Plaintiff EDWIN HAMID NAHAVANDI's involvement or disability benefits with any Federal Government entity such as the Department of Justice, or it could lead to the suspension and debarment of the Federal Government funds to Defendant CSU, see Exhibit G, and since Defendant CSU intentionally denied Plaintiff of his disability, which they knew about, publicly in this Court, they are in violation of their contract between the Federal Government. Most importantly, Plaintiff did not have a duty to disclose his privileged and confidential information towards his disability, whatsoever, in this Court that led to the dismissal of his disability claim, due to the willful concealment of material fact from Defendant CSU, because it was determined in *Cahill v. Liberty Mut. Ins. Co*, 80 F.3d 336, 337-38 (9th Cir. 1996) that the Plaintiff's pleadings must be construed as true.

Department of Justice counsel, the State of California had intentionally stole Federal Government funds from Plaintiff's financial aid grant, provided by the Department of Education, including the funds Plaintiff was obtaining for his disability grant, from the Department of Rehabilitation, another Federal Government entity, by fraudulently misallocating the Department of Education's funds to themselves, while unlawfully obtaining the extra amount of monetary assets from the Department of Rehabilitation, since the Department of Rehabilitation was funding Plaintiff's entire tuition, subtracted by the costs funded by the Department of Education, illegally and criminally stealing from two Federal Government Entities. Here in Exhibit H, you can see Plaintiff's receipts from Defendant CSU, including the funding from the Department of Education and Department of Rehabilitation, and with a side by side comparison you can observe that in one term of Plaintiff's semester Defendant CSU gave Plaintiff the appropriate disbursements of funds when he had accepted the Federal aid, and in the other Defendant CSU conducted criminal embezzlement, misappropriately taking extra funds through theft, since Defendant CSU knew that Plaintiff had a full scholarship from the Department of Rehabilitation.

Also, in Plaintiff's *Complaint*, Defendant CSU, and prior to the dismissal of the other Defendants, Defendants ERIKA DREW BECK, ZEINA OTAKY RAMIREZ, and WILLIAM WATKINS, intentionally denied that Plaintiff had a disability and was being funded by the Department of Rehabilitation for his disability, when they knew that Plaintiff had a disability, see Exhibit D, and *Motion to Dismiss*, *Responsive Defensive Pleading*.

Not to mention the fact that Defendant CSU retaliated against Plaintiff based upon his mental condition, by taking advantage of the fact that Plaintiff EDWIN HAMID NAHAVANDI had a disability, disengaging his worries and fears of Antisemitism through manipulative practices to trick Plaintiff into believing that he's the problem, recommending him to be stabilized for having concerns that attacked his perceived Jewish identity, which was exacerbated by the members of the University, telling Plaintiff that he needs to seek a psychiatrist for the purpose of being medicated, in regard to his fears and worries from harassment, discrimination, and retaliation towards his national origin, subjugating Plaintiff through disability discrimination by stereotyping his protected status, inferring that the problem associated with their students Antisemitic conduct as well as Defendant CSU's discriminatory conduct are medical concerns that should be addressed by a mental health professional, retaliating against the Plaintiff that medical treatment revolving medication is the solution for discrimination, harassment, and retaliatory conduct that occurs at CSU, Northridge, while insisting that it's a requirement for Plaintiff to receive medical supervision, if he wants to be allowed to enroll in the University, since his behaviors caused by his mental condition was not assessed properly, which segregated Plaintiff for unfair, unequal, and uncivil treatment based upon his disability, showing their true intentions of how they treat persons with disabilities.

Department of Justice counsel, upon the filing of your motion to dismiss, Plaintiff EDWIN HAMID NAHAVANDI obtained all the case laws and relevant information of discrimination from the Department of Justice, see *Plaintiff's Opposition to Motion to Dismiss*, however, you denied your own Department of Justice, and factually argued against yourselves, from your own policies and procedures towards what defines discrimination. Plaintiff is not an attorney whatsoever that's why he used the Department of Justices resources to support his case, and the material that was provided by the Department of Justice only revealed that Plaintiff does have a case, within the meritable bounds of the Department of Justice, but to deny yourselves is questionable and unintelligible.

Department of Justice counsel, your allegations are not only moot, but are also threatening, harassing, discriminatory, and retaliatory, in nature, especially when you, as the Department of Justice counsel, intentionally disregard honorable Judge Gary R. Klausner's orders, implying that the Judge is wrong for not dismissing Plaintiff's legitimate and truthful discrimination claim, deliberately committing criminal contempt by being disobedient or disrespectful toward the court of law, due to the willful act of defying the authority, justice, and dignity of this Court. Not only do you keep redundantly and frivolously contending that Plaintiff does not have a case, you deny yourselves, by denying your own policies, procedures, and rules,

which constitute discrimination, which Plaintiff obtained from the Department of Justice, see *Plaintiff's Opposition to Motion to Dismiss*. It's not factually possible for the Department of Justice to deny the Department of Justice, but you managed to somehow create that possibility.

Department of Justice counsel, you intentionally committed a felony in this Court, pursuant to 18 U.S.C. § 241; 18 U.S.C. § 242; 18 U.S.C. § 245, by depriving and denying Plaintiff of his Constitutional rights, pleading that the State of California is immune to lawsuits, see *Defendant's Responsive Pleading*, in a proceeding that they are not immune to, and when Plaintiff had cited the United States laws from the Federal Government's House of Representatives, see Exhibit I, to explain to the Department of Justice that they are incorrect about the Federal laws of the United States, you, the Department of Justice denied the Federal Government again, by explaining that these are not true facts, implying that the Federal Government, also, must have gotten their own Federal laws wrong too, especially, the Federal Government entity, who actually creates these Federal laws, for you, the Department of Justice, to enforce, see *Motion to Strike*.

Department of Justice counsel, the Federal Bureau of Investigation defines Conspiracy Against Rights, pursuant to 18 U.S.C. § 241, as an unlawful criminal felony, for when two or more persons conspire to injure, oppress, threaten, or intimidate any person of any state, territory or district in the free exercise or enjoyment of any right or privilege secured to them by the Constitution or the laws of the United States, which includes punishment from a fine or imprisonment of up to ten years, or both, see Exhibit J, which you, the Department of Justice have violated.

Department of Justice counsel, the Federal Bureau of Investigation defines Deprivation of Rights Under Color of Law, pursuant to 18 U.S.C. § 242, as an unlawful criminal felony, for when any person acting under color of law, statute, ordinance, regulation, or custom to willfully deprive or cause to be deprived from any person those rights, privileges, or immunities secured or protected by the Constitution and laws of the U.S, these acts under "color of any law" include acts not only done by federal, state, or local officials within the bounds or limits of their lawful authority, but also acts done without and beyond the bounds of their lawful authority; provided that, in order for unlawful acts of any official to be done under "color of any law," the unlawful acts must be done while such official is purporting or pretending to act in the performance of his/her official duties, which includes, but is not limited to, law enforcement officials, individuals such as Mayors, Council persons, Judges, Nursing Home Proprietors, Security Guards, etc, persons who are

bound by laws, statutes ordinances, or customs, resulting in punishment from a fine or imprisonment of up to one year, or both, see Exhibit J, which you, the Department of Justice have violated.

Department of Justice counsel, the Federal Bureau of Investigation defines Federally Protected Activities, pursuant to 18 U.S.C. § 245, as an unlawful criminal felony, for when any person willfully injures, intimidates, or interferes, or attempt to do so, by force or threat of force of any person or class of persons because of their protected activity, which is subject to a fine or imprisonment of up to one year, or both, see Exhibit J, which you, the Department of Justice have violated.

Department of Justice counsel, the amount of unlawful violations or acts conducted by you, the Department of Justice, and the State of California are not limited to other misconduct that was done under the scope of both your official duties, as you both are bound to the fullest extent of the applicable laws, ordinances, regulations, policies, and etc. in California and the United States.

Department of Justice counsel, an attorney for the Government shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State, pursuant to 28 U.S.C. § 530B, see Exhibit K.

Department of Justice counsel, you have made an lawful oath to solemnly swear (or affirm), by truth, that you will support and defend the Constitution of the United States, pursuant to 5 U.S.C. § 3331, see Exhibit L, but violated this oath, and are subject to disciplinary action from the Department of Justice Office of Professional Responsibility, which investigates attorney misconduct from Department of Justice employees, see Exhibit M.

Department of Justice counsel, you have violated the Local Rules of the United States District, Central District of Court California, and are subjection to discipline, pursuant to Local Rule 83-3.1, including disciplinary action from The Standing Committee on Discipline, pursuant to Local Rule 83-3.1.1, as well as the Standards of Professional Conduct, pursuant to Local Rule 83-3.1.2, which could also subject you to disbarment, suspension, monetary penalties, and resignation, pursuant to Local Rule 83-3.1.3, and since you have violated the ethical standards of conduct, a complaint may be filed against you for further investigation, pursuant to Local Rule 83-3.1.4.

Department of Justice counsel, you are in clear violation of the Rules of Professional Conduct from the American Bar association in which you are bound to, pursuant to Rule 3.5, 4.1, 8.4, 8.5, see Exhibit N. Department of Justice counsel you have violated Rule 3.5 by seeking to influence a judge or other official by means prohibited by law, Rule 4.1 by knowingly making a false statement of material fact or law, and failing to disclose a material fact when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, Rule 8.4 by violating or attempting to violate the Rules of Professional Conduct by knowingly assisting or inducing another to do so, or do so through the acts of another; committing a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; engaging in conduct involving dishonesty, fraud, deceit or misrepresentation; engaging in conduct that is prejudicial to the administration of justice; stating or implying an ability to improperly influence a government agency or official or to achieve results by means that violate the Rules of Professional Conduct or other law; engaging in conduct that the lawyer knows or reasonably should know is harassment or discrimination on the basis of race, sex, religion, national origin, ethnicity, disability, age, sexual orientation, gender identity, marital status or socioeconomic status in conduct related to the practice of law, Rule 8.5 for intentional misconduct, since a lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction, regardless of where the lawyer's conduct occurs, and may be subject to the disciplinary authority of both this jurisdiction and another jurisdiction for the same conduct.

Department of Justice counsel your impartial acts could be forwarded to the Federal Judges, in accordance with the Code of Conduct for the Official Duties of the United States Federal Judges, since the integrity and impartiality of the judiciary is promoted when judges take appropriate action based on reliable information of likely misconduct, to such extent appropriate action depends on the circumstances, but the overarching goal of such action should be to prevent harm to those affected by the misconduct and to prevent recurrence, deeming that a person reporting information of misconduct or disability must be informed at the outset of a judge's responsibility to disclose such information to the relevant chief district judge or chief circuit judge, outlining that appropriate action may include, but is not limited to, direct communication with the judge or lawyer, or other direct action if available, reporting the conduct to the appropriate authorities, to that extent such appropriate action may also include responding to a subpoena to testify or otherwise cooperating with or participating in judicial or lawyer disciplinary proceedings, emphasizing that a judge should be candid and honest with disciplinary authorities, pursuant to Canon 3B(6). Department of Justice counsel, a judge is required to maintain and enforce high standards of conduct and should personally observe those standards, so that the

integrity and independence of the judiciary may be preserved, and whether disciplinary action is appropriate, and the degree of discipline, it should be determined through a reasonable application of the text and should depend on such factors as the seriousness of the improper activity, the intent of the judge, whether there is a pattern of improper activity, and the effect of the improper activity on others or on the judicial system, pursuant to Canon 1, see Exhibit O.

Department of Justice counsel, since your acts or omissions where caused under the scope of your official duties, you could, individually, be subject to a lawsuit, as Plaintiff may initialize a Freedom of Information Act request from the Office of Information Policy, governed by the Department of Justice to gather further information to what contractual obligations and duties you have not performed within the scope of your duties, which could constitute a breach of contract between you, the Department of Justice employees, and the Department of Justice in itself. Citizens, such as the Plaintiff, are allowed to file suits on behalf of the government (called "*qui tam*" suits) against those who have defrauded the government, see Exhibit P.

Department of Justice counsel, here you can see in Exhibit Q that Plaintiff was called many things from the verified CSUN students that I had confirmed to your Federal Government department, but instead Defendant CSU retaliated, and harassed Plaintiff for it, for exploiting and exposing the truth, see *Complaint*. The evidence speaks for itself, as well as your actions with Defendant CSU, and for your intent to conceal and remove the truth by taking advantage of the Plaintiff to abuse the judicial process is not only wrong, but it's evil.

Throughout this whole case, all Plaintiff did was tell the whole truth, you can review the whole truth with your own observation, from the discovery evidence and Court filed documents, but you choose to consciously and willfully avoid the truth, violating the conscious avoidance doctrine, which is a criminal act, deeming that causing further crime upon a victim, by obstructing justice, and illegally defrauding the United States, while intentionally misleading and lying to the Judge, is the only solution to protecting individuals who want to harm Jews, then you are no better than those who want to hurt the Jewish people.

Department of Justice counsel, in my Jewish religion, we believe in Judgement Day, it's a belief that when a person goes to the afterlife, they meet God to be judged, by God himself, I know when my time comes, God would reflect upon all the actions I have done to save my Jewish community from turmoil, and not blame me because I have went through the most significant and unimaginable mental and physical

oppressions that made me unbearably suffer so much immense pain, leading to the significant decline of my health, however, I still stand here today, on behalf of my Jewish community, to defend them, to tell them to never give up, even if the situation may seem so impossible, given the circumstances, and to never give in to evil.

Department of Justice counsel, the 33 items of evidence, which you solemnly swear by truth, under oath, is perjurious, and a felonious crime, and an obstruction of justice in itself, as explained in *Plaintiff's Opposition to Motion to Strike*, a reasonable person can agree and conclude that you chose what evidence to conceal and hide in this proceeding to not only create a bias against the Plaintiff, since the evidence would have been unfavorable to Defendant CSU, but you inflict severe punishment upon the Plaintiff from the wrongdoings of your own actions towards Plaintiff EDWIN HAMID NAHAVANDI, when he sent the requests and stated "Here are the requests. I don't have custody and control, for possession, of the other requests for production. I'm aware that Defendant CSU, under penalty of perjury, stated that they have sent everything in their custody and control, for possession, but could you please give me access to my CSU account, which has the material you requested in Defendant CSU's custody and control, for possession... I need to obtain the CANVAS messages in relation to my agreement with Defendant CSU to attack and harm the Jewish people.", see Exhibit R, however, instead of actually investigating the truth, you intentionally ignored it, denying me of my right to obtain and access information from my own CSU account, in bad faith, and declaring instant sanctions to further exacerbate my ability to participate, just as Defendant CSU did.

Ultimately, Plaintiff would need to address this situation with the Court through the appropriate motions or ex parte applications, due to the urgency of the matter, based on the aforementioned facts and merits, to prevent further misconduct that could further jeopardize or damage this proceeding impartially and negatively. Plaintiff respectfully, asks the Department of Justice counsel, to refrain from any further attempts of intentional bad faith, as filing an instant motion for sanctions would be seen as another intentional attempt of bad faith, and will be documented for future referencing to the appropriate entities.

Moving Party's
# EXHIBIT G

| | |
|---|---|
| **From:** | Cristina Matsushima |
| **To:** | edwin.nahavandi@gmail.com |
| **Cc:** | Benjamin G. Diehl |
| **Subject:** | Nahavandi v. CSU - CSU Letter re Plaintiff"s Request for Pre-Filing Conference |
| **Date:** | Thursday, February 13, 2025 9:30:00 AM |
| **Attachments:** | Nahavandi v. CSU - CSU Letter re Plaintiff"s Request for Pre-Filing.pdf |

Mr. Nahavandi,

Please see the attached correspondence.

CRISTINA M. MATSUSHIMA
Deputy Attorney General
California Department of Justice
Office of the Attorney General
300 South Spring Street, Suite 1702
Los Angeles, California  90013
Tel:  (213) 269-6218
Fax:  (916) 731-2125
cristina.matsushima@doj.ca.gov



CALIFORNIA
**DEPARTMENT OF JUSTICE**

*Rob Bonta*
**Attorney General**

300 SOUTH SPRING STREET, SUITE 1702
LOS ANGELES, CA 90013-1230

Public: (213) 269-6000
Telephone: (213) 269-6218
Facsimile: (916) 731-2125
E-Mail: Cristina.Matsushima@doj.ca.gov

February 13, 2025

Via e-mail

Edwin Hamid Nahavandi
5710 Comanche Ave.
Woodland Hills, CA. 91367
Telephone: (818) 569-9673
edwin.nahavandi@gmail.com

RE:   *Nahavandi v. Board of Trustees of the CSU*, United States District Court, Central District
      of California, Case No. 2:24-cv-03791 RGK(Ex)
      CSU's Response to Plaintiff's Request for Pre-Filing Conference

Dear Mr. Nahavandi:

      We are in receipt of your February 6, 2025, correspondence requesting to schedule a
Prefiling Conference regarding the "improper advocacy and intentional purpose to harass
Plaintiff Edwin Hamid Nahavandi." While I am happy to schedule a conference at your
convenience, I would first like to request that you clarify what motion or motions you intend to
file in relation to this conference so that I can more meaningfully prepare. As it stands, the
actual purpose of the conference remains unclear. In the meantime, below I have addressed
several of the issues you raise in your letter.

      First, you state in your letter that "the Department of Justice counsel, in bad faith, had
intentionally and knowingly concealed material information of potential witnesses[.]" More
specifically, you take issue with the fact that in its Initial Disclosures, CSU states that the
identified individuals could be contacted through CSU's counsel of record, i.e., the California
Department of Justice, Office of the Attorney General (AGO). Because the AGO is counsel of
record for CSU, and because the identified individuals are current employees of CSU, this Initial
Disclosure is appropriate.

      Second, you state that Thy Monaco, "the designated Attorney for Defendant CSU . . .
knew about Plaintiff's Federally protected disability, . . . and expressed to Plaintiff the loss of
funding from his disability grant[.]" I understand your contention to be that Ms. Monaco should
have been identified in CSU's Initial Disclosures as a witness. However, based upon your own
letter, you appear to be claiming that Ms. Monaco may have relevant information regarding your
*disability* cause of action, which was dismissed by the Court. Order re Defendants' Motion to
Dismiss, ECF 42. CSU need not provide Initial Disclosures regarding dismissed causes of
action, which fall outside the scope of permissible discovery. Fed. R. Civ. P. 26(a)(1)(A).

February 13, 2025
Page 2

Moreover, as CSU's in-house counsel, Ms. Monaco's knowledge, impressions, and correspondence are subject to the attorney-client and work product privileges, and therefore are not discoverable. Fed. R. Evid. 502.

     The remainder of your correspondence consists of substantive arguments regarding your now-dismissed disability cause of action, unintelligible allegations of misconduct, and other allegations and threats against CSU and the AGO. Specifically, you assert that AGO counsel of record can or should be subject to criminal prosecution, both in a personal and professional capacity, based upon its representation and advocacy on behalf of CSU. Additionally, you request in your letter that CSU refrain from filing a motion for sanctions, which you state "would be seen as another intentional attempt of bad faith, and will be documented for future referencing to the appropriate entities." While you may disagree with CSU's litigation strategy and the rules that govern federal litigation, your personal attacks are baseless and legally incorrect. **Please take notice** that CSU will be informing the Court of your egregiously improper threat to report the AGO – CSU's counsel of record – to "the appropriate entities" for filing legally and procedurally proper motions.

     Should you wish to engage in civil discourse regarding the pending litigation, please provide additional information regarding the requested scope of the conversation. If you instead intend to use a Prefiling Conference as an opportunity to repeat your baseless allegations of misconduct, no Prefiling Conference is necessary.

Sincerely,

CRISTINA M. MATSUSHIMA
Deputy Attorney General

For    ROB BONTA
Attorney General

CMM:

LA2024302735
67423695.docx

Moving Party's
# EXHIBIT H

| | |
|---|---|
| **From:** | Cristina Matsushima |
| **To:** | edwin.nahavandi@gmail.com |
| **Cc:** | Benjamin G. Diehl |
| **Bcc:** | Cristina Matsushima |
| **Subject:** | Nahavandi v. CSU - CSU"s Motion for Sanctions - Joint Stipulation |
| **Date:** | Thursday, February 13, 2025 10:30:00 AM |
| **Attachments:** | Nahavandi v. CSU - Joint Stipulation re CSU"s Motion for Sanctions.docx |
| | CSU Motion for Sanctions_Exhibits.pdf |

Mr. Nahavandi,

Attached are CSU's Joint Stipulation and exhibits in support of its Motion for Sanctions. Pursuant to Local Rule 37-2.2:

> . . . . Unless the parties agree otherwise, **within seven days of receipt of the moving party's material**, counsel for the opposing party must personally deliver, e-mail, or fax to counsel for the moving party the opposing party's portion of the stipulation, together with all declarations and exhibits to be offered in support of the opposing party's position.  After the opposing party's material is added to the stipulation by the moving party's counsel, the stipulation must be provided to opposing counsel, who must sign it (electronically or otherwise) and return it to counsel for the moving party no later than the end of the next business day, so that it can be filed with the notice of motion.

Accordingly, please return your portion of the Joint Stipulation by **February 20, 2025**.  Thank you.

CRISTINA M. MATSUSHIMA
Deputy Attorney General
California Department of Justice
Office of the Attorney General
300 South Spring Street, Suite 1702
Los Angeles, California  90013
Tel:  (213) 269-6238
Fax:  (916) 731-2125
cristina.matsushima@doj.ca.gov

Moving Party's
# EXHIBIT I

Edwin Hamid Nahavandi
5710 Comanche Ave.
Woodland Hills, CA. 91367
Telephone: (818) 569-9673
Email: edwin.nahavandi@gmail.com

Plaintiff in pro per

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| EDWIN HAMID NAHAVANDI | Case No. 2:24-cv-03791-RGK(EX) |
|---|---|
| Plaintiff(s), | **DISCOVERY MATTER: LOCAL RULE 37 JOINT STIPULATION RESPONSE TO DEFENDANT'S MOTION FOR TERMINATING SANCTIONS AND MONETARY SANCTIONS OR IN THE ALTERNATIVE EVIDENTIARY SANCTIONS** |
| vs. | |
| BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY (the State of California acting in its higher education capacity); ERIKA DREW BECK, in her official capacity as President of California State University, Northridge; ZEINA OTAKY RAMIREZ, in her official capacity as Director of Student Conduct and Ethical Development at California State University, Northridge; WILLIAM WATKINS, in his official capacity as Vice President of Student Affairs at California State University, Northridge | |
| Defendant(s). | |

1.    The Department of Justice counsel has a *sworn oath*, *(DOJ Sworn Official Duties, Ex. A)* as declared by the highest-ranking members of congress in the legislative body of the Federal Government, the House of Representatives, to uphold the truth and ensure that the constitution, bill of rights, and laws of the United States are faithfully executed without prejudice and harm to others, including those persons who are Jewish, to negate and prevent evil upon those who want to harm Jewish people for their perceived status, including Plaintiff, who was criminally threatened through illegal coercive and obstructive methods by Defendant CSU, who weaponized their educational institution to instill fear upon the Plaintiff by threatening to inflict death and injury between a Plaintiff as a means to prevent Plaintiff from filing this lawsuit, see *Opposition to Motion to Strike*, focusing on the intentional basis of murder towards the Plaintiff, teaching content about what *year the person will die*, *(Defendant CSU Death Threat, Ex. B)* causing Plaintiff to *fear for his life*, *(Foreseeable Death Declaration, Ex. C)* including how Defendant CSU will get a reserved summary judgement and a dismissal of this lawsuit case from the Judge, see *Opposition to Motion to Dismiss* and *Motion for Continuance*, implicitly admitting that the Judge will refuse to preserve justice and commit a criminal felony to help the United States Department of Justice and the State Government of California obstruct justice towards the Plaintiff, to send a clear message to the Jewish audience that not even this Court will uphold the laws of the United States upon those persons of the Jewish religion, nor punish those who want to murder Jewish people.

2.    The Federal Bureau of Investigation defines *Conspiracy Against Rights*, *(FBI Criminal Felonies, Ex. D)* pursuant to 18 U.S.C. § 241, as an unlawful criminal felony for when two or more people conspire to injure, oppress, threaten, or intimidate any person of any state, territory, or district in the free exercise or enjoyment of any right or privilege secured to them by the constitution or the laws of the United States, and to such extent if death or an attempt to kill occurs, those persons are subject to life in prison.

3.     Furthermore, the Department of Justice counsel for Defendant CSU has offered no explanation to why Plaintiff was not allowed to defend his Jewish religion, community, and people, see *Complaint* and *Defendant's Responsive Pleading*, nor offers an explanation to why Defendant CSU hosts events in their University that glorify the murder of Jewish people on their campus, only that the Department of Justice counsel had contended that the murdering of Jewish people should be ignored, and refused to investigate individuals who want to murder the Jewish people, see *Motion to Dismiss*, allowing individuals to proceed with their intent to support the murder of Jews.

4.     After Defendant CSU had prevented Plaintiff from attending the University until he had explained why it was necessary for him to defend his Jewish religion, community, and people, Defendant CSU offered Plaintiff an agreement that if he would attack and harm the Jewish people, he would be able to attend the University and not get suspended. Plaintiff had to choose, it was either agree to Defendant CSU's offer to attack and harm the Jewish people so he could continue his education, or refuse Defendant CSU's offer and get suspended and lose his education for protecting his Jewish religion, community, and people.

5.     Defendant CSU only charged Plaintiff for his emails that protected his Jewish religion, community, and people, not his emails that attacked and harmed the Jewish people, which was when Plaintiff had accepted Defendant CSU's agreement to attack and harm the Jewish people, since attacking and harming the Jewish people as well as wanting to murder the Jewish people aligned with Defendant CSU's interests.

6.     When Plaintiff had sent his responses to the Department of Justice counsel, Plaintiff had also asked the Department of Justice counsel if they could *allow him to access his California State University account to obtain evidence (Concealment Of Evidence from Department of Justice, Ex. E)* to further prove his claims towards his agreement with Defendant CSU, which was to attack and harm the

1   Jewish people, but the Department of Justice refused to allow Plaintiff access to his
2   account and threatened Plaintiff with immediate sanctions.

3          7.     The refusal from the Department of Justice counsel to allow Plaintiff to
4   access his CSU account, which is in the control and custody for possession of
5   Defendant CSU, has further proved Plaintiff's claims when Plaintiff had stated to this
6   Court that Defendant CSU, who is also being defended by the United States
7   Department of Justice counsel, intentionally concealed discovery evidence, resulting
8   in the spoilation of evidence in which the Department of Justice counsel in bad faith
9   had denied their tampering of evidence and lied to the Federal Judge in this Court, see
10  *Motion to Compel*. This intentional misconduct from the Department of Justice
11  counsel had also prevented Plaintiff from checking whether his frivolous suspension
12  was removed from his transcript, which *lawfully had to be removed after his frivolous*
13  *suspension ended, since it was less than one academic semester. (Defendant CSU*
14  *Executive Order 1098, Ex. F)* The House of Representatives, the Federal Governing
15  body of the United States, who enacts the laws and rules for the United States District
16  Courts, has established that the failure of United States attorneys, such as the
17  Department of Justice, to fairly participate in discovery gives *authoritative*
18  *jurisdiction to the Federal Judges to report the misconduct of such figures such as the*
19  *Department of Justice counsel (Federal Rules of Misconduct from United States*
20  *Attorneys, Ex. G)* to the Attorney General of the United States and other appropriate
21  agencies.

22         8.     The Department of Justice counsel Cristina Matsushima had also
23  personally threatened Plaintiff before his deposition through intimidation and
24  coercion for Plaintiff to step down from this case and told Plaintiff that Defendant
25  CSU is not guilty and that he is the actual threat, rather than those people who want to
26  murder the Jewish people, including Defendant CSU who used their educational
27  institution as an instrument to instill fear upon the Plaintiff by threatening to inflict
28

1  death and injury between a Plaintiff as a means to prevent Plaintiff from filing this

2  lawsuit, see *Opposition to Motion to Strike*.

3       9.    Plaintiff has been severely harmed throughout this whole process and is

4  disturbed by the lack of remorse that the Department of Justice has displayed within

5  this proceeding. The Department of Justice counsel has shown no interest towards

6  combating and preventing Antisemitism, nor others who want to inflict murder and

7  bodily injury upon the Jewish persons in University campuses. The Department of

8  Justice counsel should care about a Jewish persons safety, not deprive or threaten it as

9  these ignorant or negligent acts from the Department of Justice counsel will only

10  endanger the lives of more Jewish people who depend on the Department of Justice to

11  protect them, and such refusal from the Department of Justice counsel will only allow

12  these inhumane discriminatory acts to continue, which is a clear violation of human

13  rights towards the Jewish people.

14       10.    The Department of Justice counsel has indecisively portrayed that

15  defending Universities who engage in Antisemitism is more important than

16  combating and preventing Antisemitism. There have been many *documented reports*

17  *of recent Antisemitism (Federal Government Records of Antisemitism, Ex. H)* to

18  which Jewish people had incurred bodily injury from students in other Universities,

19  see *Yitzchok Frankel v. Regents of the University of California*, No. 2:24-cv-04702-

20  MCS-PD (C.D. Cal. 2024), and to such extent the Department of Justice has stood

21  absent, refusing to pursue any action against Antisemitism in Universities within the

22  United States, allowing others to freely harm the Jewish people without consequence,

23  resulting in a continuous spread of Antisemitism, which is still prevalent in

24  Universities today due to the Department of Justice's intentional avoidance of

25  consciously turning a blind eye to Antisemitism, establishing that the Department of

26  Justice has violated the conscious avoidance doctrine, which is a criminal act in itself.

27       11.    Plaintiff had told the Department of Justice counsel that he had obtained

28  information on what constitutes discrimination, in regard to Antisemitism, from the

Department of Justice themselves to support his *Opposition to Motion to Dismiss*, and explained to the Department of Justice counsel that the information provided from the Department of Justice deemed that Plaintiff was factually discriminated against, informing the Department of Justice counsel that they are denying their own Department of Justice agency, telling the Department of Justice counsel how denying themselves is not factually possible and that they have somehow created that possibility of the Department of Justice denying the Department of Justice, see *Defendant's Exhibits*.

12.    Defendant CSU had premediated their intent to lie and obstruct justice in this Court during the time in which Defendant CSU had instilled fear upon the Plaintiff by threatening to inflict death and injury as a means to prevent Plaintiff from filing this lawsuit, see *Opposition to Motion to Strike*.

13.    During the duration of this proceeding Defendant CSU had carried on their premediated intent to lie and obstruct justice by dismissing and denying Plaintiff's disability altogether, see *Motion to Dismiss*, when Plaintiff was actually a *registered disability student in the University (Defendant CSU Disability Records, Ex. I)* and was receiving *funding from the Department of Rehabilitation for his disability*, *(Federal Government Disability Grant, Ex. J)* which Defendant *CSU's designated attorney Thy Monaco (Defendant CSU's Paid Attorney, Ex. K)* and prior Defendants ZEINA OTAKY RAMIREZ and WILLIAM WATKINS knew about since they *were notified that Plaintiff has an existent disability that is federally protected by discrimination laws, (Plaintiff's Attorney Informs Defendant CSU's Paid Attorney of Plaintiff's Federal Disability, Ex. L)* as Plaintiff had shown and explained to the Department of Justice counsel, see *Defendant's Exhibits*.

14.    Plaintiff had also explained and shown evidence to the Department of Justice counsel that *Defendant CSU has a contractual agreement with the Department of Rehabilitation (Federal Government Disability Grant, Ex. J)* and that if Defendant CSU were to accept the disability funds from the Department of

Rehabilitation, Defendant CSU cannot deny or exclude Plaintiff's disability benefits with any federal entity or it could lead to the suspension and debarment of federal aid funds to Defendant CSU, the State Government of California, telling the Department of Justice counsel that they have disregarded the fact that the only way to be funded by the Department of Rehabilitation is to have a *physical or mental impairment that substantially limits one or more major life activity, (Vocational Rehabilitation Services, Ex. M)* see *Defendant's Exhibits*.

15.    The Department of Justice counsel had implicitly explained that the reason to why they had concealed this material information in this Court, regardless of Defendant CSU's premeditated intent to lie and obstruct justice to this Court to deny and dismiss Plaintiff's claims, see *Opposition to Motion to Dismiss*, was because Defendant CSU's designated attorney Thy Monaco is protected from attorney-client privileges, see *Defendant's Exhibits*, giving an unintelligible argument that does not excuse them from mandatory disclosure of factual material, see *Green v. State of California*, 132 Cal. App. 4th 97 (2005); *Kyles v. Whitley*, 514 U.S. 419 (1995); *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422 (S.D.N.Y. 2004), and since an attorney-client privilege is only between the client Defendant CSU and the attorney of that client Thy Monaco, *who is also an "disability rights" attorney, (Defendant CSU's Paid Attorney, Ex. K)* and not between the Plaintiff and Defendant CSU and prior Defendants ZEINA OTAKY RAMIREZ and WILLIAM WATKINS, this material fact was subject to disclosure during the onset of their *Motion to Dismiss*, rather than wholly denying Plaintiff's disability altogether, since it was *openly addressed between the parties (Plaintiff's Attorney Informs Defendant CSU's Paid Attorney of Plaintiff's Federal Disability, Ex. L) in the anticipation of future litigation, (Notice of Lawsuit to Defendant CSU's Paid Attorney, Ex. N)* see *U.S. v. Stewart*, 433 F.3d 273 (2d Cir. 2006), and openly addressed by the Plaintiff in his *Complaint*, retrospective to the claims brought under Section 504 of the Rehabilitation Act, pursuant to 29 U.S.C. § 794, which clearly established that a

person who has a physical or mental impairment that substantially limits one or more major life activity and benefits from vocational rehabilitation services, such as the Department of Rehabilitation, they are recognized as a person with a disability in the United States, deeming that the Department of Justice counsel had factually admitted that they were aware of Plaintiff's disability, but intentionally disregarded it in this Court to conceal that information from the Federal Judge when filing their *Motion to Dismiss*, since it was most likely anticipated from the Department of Justice counsel that they would make an unintelligible frivolous argument, consciously aware that this information was not privileged and had to be disclosed, resulting in further intentional misconduct from the Department of Justice counsel, and a *valid false claims lawsuit*. *(Department of Justice Resources for False Claims, Ex. O)* Provisionally, if the Department of Justice counsel only had an attorney-client privileged communication between their client Defendant CSU to conspire to lie, commit perjury, give false statements, and continue obstructing justice to deprive Plaintiff from his constitutional rights, privileges, or other secured by the United States that communication would fall under the attorney-client privilege.

16.    Additionally, Plaintiff had revealed and clarified through exhibitable evidence to the Department of Justice counsel that Defendant CSU, *the State Government of California, had intentionally stole Plaintiff's Federal Government funds from both the Department of Rehabilitation and Department of Education (Defendant CSU Steals Plaintiff's Disability Money, Ex. P)* by fraudulently misallocating the Department of Education's funds to themselves while unlawfully obtaining the extra amount of monetary assets from the Department of Rehabilitation, who was funding Plaintiff's entire tuition for his disability, minus the expended funds provided by the Department of Education, see *Defendant's Exhibits*. The Plaintiff was awarded exactly $7,176 in Pell Grant funds for the 2022-2023 academic year, which was divided equally into $3,588 for Fall 2022 and $3,588 for Spring 2023, as *verified through Plaintiff's financial aid records. (Defendant CSU Steals Plaintiff's*

*Disability Money, Ex. P)* These expenditures were actual exact amounts offered, awarded, and accepted by the Plaintiff. Defendant CSU unlawfully disbursed only $2082 for Fall 2022 and $2082 for Spring 2023, as *verified through Plaintiff's financial receipt records, (Defendant CSU Steals Plaintiff's Disability Money, Ex. P)* resulting in a total misappropriated theft of $3,012 from the Department of Rehabilitation, who had to pay the extra amount of stolen funds. Federal law strictly prohibits educational intuitions from fraudulent misappropriation of expenditures through financial aid, see *United States v. University of Phoenix*, 461 F.3d 1166 (9th Cir. 2006).

17.     Even with the facts, claims, and evidence that the Plaintiff had provided to the Department of Justice counsel, Plaintiff was ignored, as the Department of Justice counsel was more focused on punishing Plaintiff for describing their own violations and misconduct, rather than punishing Defendant CSU for their uncivil, inhumane, and unlawful acts, see *Defendant's Exhibits*.

18.     Now the Department of Justice counsel seeks to intentionally weaponize the procedural rules as an instrument to obstruct justice to distort the factual record of Plaintiff's claims and evidence, and prevent critical evidence from being used in this Court rather than rebut it through lawful argumentation, proceeding in bad faith to abuse the judicial process and functional integrity of this Court to suppress evidence and silence Plaintiff just as Defendant CSU did when they threatened to inflict death and injury between a Plaintiff as a means to prevent Plaintiff from filing this lawsuit, see *Opposition to Motion to Strike*, and taught content about what *year the person will die*, *(Defendant CSU Death Threat, Ex. B)* causing Plaintiff to *fear for his life*, *(Foreseeable Death Declaration, Ex. C)* and how Defendant CSU will get a reserved summary judgement and a dismissal of this lawsuit case from the Judge, see *Opposition to Motion to Dismiss* and *Motion for Continuance*, to inflict fear towards the Plaintiff if he ever sought for justice against the State Government of California.

19.    Plaintiff reasonably believes that the Department of Justice counsel will attempt to seal this document to prevent the public from knowing about the Department of Justice's factual misconduct, obstruction of justice, and failure to take action against Antisemitism within this proceeding. Plaintiff EDWIN HAMID NAHAVANDI does NOT consent for this document to be sealed, as this document serves as a representation of public interest and public concern.

20.    Plaintiff has NOT disclosed any information in this document that violates the attorney-client privilege, which ONLY protects confidential communications between an attorney and their clients, unless the client voluntarily chooses to disclose that privilege, see *In re Lindsey*, 158 F.3d 1263 (D.C. Cir. 1998) has NOT disclosed any information in this document that violates the work-product doctrine, which ONLY protects materials by the parties in anticipation of litigation or trial, unless any party voluntarily chooses to disclose their own material on any document, see *U.S. v. Stewart*, 433 F.3d 273 (2d Cir. 2006), has NOT disclosed any mediation information or material in this document that violates the mediation confidentiality agreement.

21.    Plaintiff does NOT waive any information of his doctor-patient privileges between any of his medical doctors, psychologists, and psychiatrists. Plaintiff has already provided factual evidence that he has a disability that substantially limits his abilities and need not to provide any other information of his condition.

22.    Most importantly, the Department of Justice, who prosecutes criminals for the Federal Bureau of Investigation, such as those who want to cause death or injury upon a Jewish individual, is required by oath to operate under a legal and ethical framework that mandates the pursuit of truth in all matters as they are the nation's chief law enforcement entity, and holds an obligational responsibility and commitment to present the truth without obstruction and uphold justice towards any party who has violated them, pursuant to 5 U.S.C. § 3331, to ensure that the rights of

all parties are protected without obstructing justice, to such extent that the Department of Justice's role is not about winning this case, it's to preserve justice upon the victims who seek them, see *Berger v. United States*, 295 U.S. 78 (1935).

23.    The Department of Justice counsel violated this oath by refusing to take appropriate action against Antisemitism nor others who want to inflict bodily injury and death upon the Jewish people. The Department of Justice has indisputably established that it's the job of the Jewish people to prosecute and hold Universities who engage in Antisemitism responsible rather than the Department of Justice themselves, see *Yitzchok Frankel v. Regents of the University of California*, No. 2:24-cv-04702-MCS-PD (C.D. Cal. 2024).

24.    Courts have recognized that the Department of Justice serves as the sovereign arm of the executive branch and must adhere to the highest ethical and constitutional standards, ensuring that legal proceedings are not tainted by deception or procedural manipulation, including the concealment of material evidence to obstruct justice. A deviation from these principles whether through misrepresentation, suppression of evidence, perjury, false statements, or the refusal to preserve justice from such government entities is an offense to the judicial system in itself, see *Chambers v. NASCO, Inc*, 501 U.S. 32 (1991); *Napue v. Illinois*, 360 U.S. 264 (1959).

25.    Courts have found that attempts to suppress relevant evidence, even from legal filings such as a motion for sanctions, constitutes as an obstruction of justice as these obstructive tactics cause prejudicial bias against the party being suppressed and a litigatory advantage to those such as the Department of Justice who intend to suppress it, see *United States v. King*, 762 F.2d 242 (2d Cir. 1985); *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982).

26.    Courts have ruled that removing or withholding material evidence from the factual record is a violation of the due process clause, even if done through procedural means, as courts are not permitted to administer procedural maneuvers to

replace substantive justice and must guarantee that all litigants receive a fair opportunity to present their case without obstruction or the suppression of evidence, see *Napue v. Illinois*, 360 U.S. 264 (1959); *Brady v. Maryland*, 373 U.S. 83 (1963), as the court has inherent authority to intervene against a party who intends on obstructing justice, see *Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980).

27.    As a person with a disability Plaintiff may understand things differently, which can cause difficulties getting his standpoints addressed in this Court, and respectfully asks this Court to focus on the substance of what the Plaintiff is trying to explain, regardless of his impairments. Under the Code of Federal Regulations Title 28, Department of Justice, Section 35.108, a person with a disability that has a mental or physical impairment that substantially limits one or more major life activity includes, but is not limited to, major depression, reading, writing, speaking, or learning.

28.    Plaintiff has a disability that limits his ability to effectively present his viewpoints to this Court, he seeks to ensure that his concerns are fully interpreted and addressed. Plaintiff is not an attorney whatsoever and is unfamiliar with how to respond to the discovery requests. When drafting his responses Plaintiff recalled how the Department of Justice counsel had submitted their responses to Plaintiff's *Complaint*, see *Defendant's Defensive Pleading*, which were overseen and acted upon by the honorable Federal Judges in this Court. Plaintiff was already anxious since the honorable magistrate Judge Charles F. Eick had ordered Plaintiff to respond, regardless of the facts demonstrated in Plaintiff's *Opposition to Motion to Compel*, or honorable magistrate Judge Charles F. Eick would harshly punish the Plaintiff, including dismissing this case. Given the Federal Judges continuous oversight of the Department of Justice's Court filed documents, and the fact that the Federal Judges regularly addressed any improperness made by the Department of Justice, the Plaintiff reasonably believed that mirroring the professional structure and format used by the Department of Justice would be an appropriate approach for his discovery

1  responses. Plaintiff is confused as to why his response is considered improper, despite
2  having followed the example set by the Department of Justice counsel under this
3  Court's supervision. Plaintiff respectfully requests clarification from this Court
4  regarding the proper format and standard for discovery responses.

5

6                         DATED: 2/20/25

7                         Signature: Edwin Nahavandi

8                         Plaintiff in Pro Per

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF EDWIN HAMID NAHAVANDI

I, Plaintiff EDWIN HAMID NAHAVANDI (hereinafter "Plaintiff"), declare as follows:

    1.    I have personal knowledge of the following facts, and, if called as a witness, I could and would competently testify thereto, as well as provide evidence, if available, to support my testimony.

    I declare under penalty of perjury that the foregoing is true and correct.

DATED: _2/20/25_____

Signature: _Edwin Nahavandi_____

Plaintiff in Pro Per

# EXHIBIT A

---

**5 USC 3331: Oath of office**
Text contains those laws in effect on February 18, 2025

**From Title 5-GOVERNMENT ORGANIZATION AND EMPLOYEES**
    PART III-EMPLOYEES
    Subpart B-Employment and Retention
    CHAPTER 33-EXAMINATION, SELECTION, AND PLACEMENT
    SUBCHAPTER II-OATH OF OFFICE
**Jump To:**
    **Source Credit**

---

## §3331. Oath of office

An individual, except the President, elected or appointed to an office of honor or profit in the civil service or uniformed services, shall take the following oath: "I, AB, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office on which I am about to enter. So help me God." This section does not affect other oaths required by law.

( Pub. L. 89–554, Sept. 6, 1966, 80 Stat. 424 .)

HISTORICAL AND REVISION NOTES

| Derivation | U.S. Code | Revised Statutes and Statutes at Large |
|---|---|---|
|  | 5 U.S.C. 16. | R.S. §1757.<br>May 13, 1884, ch. 46, §§2, 3, 23 Stat. 22 . |

All but the quoted language in R.S. §1757 is omitted as obsolete since R.S. §1757 was originally an alternative oath to the oath prescribed in R.S. §1756 which oath was repealed by the Act of May 13, 1884, ch. 46, §2, 23 Stat. 22 . The words "An individual, except the President, . . . in the civil service or uniformed services" are substituted for "any person . . . either in the civil, military, or naval service, except the President of the United States". The second sentence of former section 16 is changed to read, "This section does not affect other oaths required by law.".

Standard changes are made to conform with the definitions applicable and the style of this title as outlined in the preface to the report.

# EXHIBIT B



| Outcome |
| --- |
| Die in Year 1 |
| Not Die Year 1 & Die in Year 2 |
| Not Die in 1 & 2 & Die in 3 |
| Not Die in 1,2 & 3 & Die in Year 4 |
| Not Die in Year 1-4 & Die In Year 5 |
| Not Die During 5 Year Period |

# EXHIBIT C

 Gmail

**Edwin Nahavandi <edwin.nahavandi@gmail.com>**

## December 27, 2024 Timestamp

1 message

**Edwin Nahavandi** <edwin.nahavandi@gmail.com>    Fri, Dec 27, 2024 at 2:04 PM
To: edwin.hamid.nahavandi@gmail.com, Edwin Nahavandi <edwin.nahavandi@gmail.com>, edovandi@gmail.com

This email serves as a timestamp on 12/27/24 or December 27, 2024, in relation to case number 2:24-cv-03791-RGK-MRWx, now called 2:24-cv-03791-RGK(EX), towards Plaintiff's factual evidentory claims of Defendant CSU's contextually threatened intent of death, inferring deadly intent towards the Plaintiff, if a Plaintiff chose to sue them, as well as requesting a reserved summary judgement against a Plaintiff, and a dismissal of this lawsuit case for lack of evidence, in reference to a Plaintiff and Defendant, mentioned in Defendant CSU's campus, from Professor Thomas Wedel, who was the instructor for a math class that teaches supply chain management, purchasing and inventory, planning, and scheduling, and in no relevance relates to the teachings or education of the Law. The events of Defendant CSU's threats were conducted before Plaintiff even filed the lawsuit, and for safety reasons will be recorded and submitted on this Courts database after their threatened summary judgement that occured before the filing of this lawsuit, on Plaintiff's Opposition, if injury or death occurs in the event of this proceeding or after the event of this proceeding towards Plaintiff Edwin Hamid Nahavandi. Plaintiff is in the process of reaching the Federal Bureau of Investigation, also known as the FBI related to this matter and others, so they are aware of possible or foreseeable injury or death towards Plaintiff Edwin Hamid Nahavandi, based on the merits of what Defendant CSU is capable of. Plaintiff reserves the right to be able to drive and walk peacefully, go grocery shopping, go pray in the places of worship attuned to his Jewish religion, and to safely make it home, without injury or death.

# EXHIBIT D

🌐 Federal Civil Rights Statutes — ⌐ ✕    +

🔒 https://www.**fbi.gov**/investigate/civil-rights/federal-civil-rights-statutes                                        

## Title 18, U.S.C., Section 241 - Conspiracy Against Rights

This statute makes it unlawful for two or more persons to conspire to injure, oppress, threaten, or intimidate any person of any state, territory or district in the free exercise or enjoyment of any right or privilege secured to him/her by the Constitution or the laws of the United States, (or because of his/her having exercised the same).

It further makes it unlawful for two or more persons to go in disguise on the highway or on the premises of another with the intent to prevent or hinder his/her free exercise or enjoyment of any rights so secured.

Punishment varies from a fine or imprisonment of up to ten years, or both; and if death results, or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title or imprisoned for any term of years, or for life, or may be sentenced to death.

## Title 18, U.S.C., Section 242 - Deprivation of Rights Under Color of Law

This statute makes it a crime for any person acting under color of law, statute, ordinance, regulation, or custom to willfully deprive or cause to be deprived from any person those rights, privileges, or immunities secured or protected by the Constitution and laws of the U.S.

This law further prohibits a person acting under color of law, statute, ordinance, regulation or custom to willfully subject or cause to be subjected any person to different punishments, pains, or penalties, than those prescribed for punishment of citizens on account of such person being an alien or by reason of his/her color or race.

Acts under "color of any law" include acts not only done by federal, state, or local officials within the bounds or limits of their lawful authority, but also acts done without and beyond the bounds of their lawful authority; provided that, in order for unlawful acts of any official to be done under "color of any law," the unlawful acts must be done while such official is purporting or pretending to act in the performance of his/her official duties. This definition includes, in addition to law enforcement officials, individuals such as Mayors, Council persons, Judges, Nursing Home Proprietors, Security Guards, etc., persons who are bound by laws, statutes ordinances, or customs.

Punishment varies from a fine or imprisonment of up to one year, or both, and if bodily injury results or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire shall be fined or imprisoned up to ten years or both, and if death results, or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

# EXHIBIT E

 Gmail                  **Edwin Nahavandi <edwin.nahavandi@gmail.com>**

## Requests

1 message

**Edwin Nahavandi** <edwin.nahavandi@gmail.com>        Fri, Jan 17, 2025 at 3:03 PM
To: Edwin Nahavandi <edwin.nahavandi@gmail.com>, "Benjamin G. Diehl" <Benjamin.Diehl@doj.ca.gov>, Cristina
Matsushima <Cristina.Matsushima@doj.ca.gov>
Cc: edovandi@gmail.com, edwin.hamid.nahavandi@gmail.com

Defendant CSU,

Here are the requests. I don't have custody and control, for possession, of the other requests for production. I'm
aware that Defendant CSU, under penalty of perjury, stated that they have sent everything in their custody and
control, for possession, but could you please give me access to my CSU account, which has the material you
requested in Defendant CSU's custody and control, for possession...

I need to obtain the CANVAS messages in relation to my agreement with Defendant CSU to attack and harm the
Jewish people.

---

 **Requests.zip**
6677K

# EXHIBIT F

the Student is not permitted: (i) on University Property or specified areas of Campus[9], or (ii) to have contact (physical or otherwise) with the Complainant, witnesses or other specified persons.

5. **Disciplinary Probation**. A designated period of time during which privileges of continuing in Student status are conditioned upon future behavior. Conditions may include the potential loss of specified privileges to which a current Student would otherwise be entitled, or the probability of more severe disciplinary sanctions if the Student is found to violate the Student Conduct Code or any University policy during the probationary period.

6. **Suspension**. Temporary separation of the Student from Student status from the California State University system.

   a. A Student who is suspended for less than one academic year shall be placed on inactive Student (or equivalent) status (subject to individual Campus policies) and remains eligible to re-enroll at the University or another campus (subject to individual Campus enrollment policies) once the suspension has been served. Conditions for re-enrollment may be specified.

   b. A Student who is suspended for one academic year or more shall be separated from Student status but remains eligible to reapply to the University or another campus (subject to individual Campus application polices) once the suspension has been served. Conditions for readmission may be specified.

   c. Suspension of one academic year or more, withdrawals in lieu of suspension, and withdrawals with pending misconduct investigations or disciplinary proceedings shall be entered on the Student's transcript permanently without exception; this requirement shall not be waived in connection with a resolution agreement.

7. **Expulsion**. Permanent separation of the Student from Student status from the California State University system. Expulsion, withdrawal in lieu of expulsion, and withdrawal with pending misconduct investigation or disciplinary proceeding shall be entered on the Student's transcript permanently, without exception; this requirement shall not be waived in connection with a resolution agreement.

B. **Multiple Sanctions**
   More than one sanction may be imposed for a single violation.

C. **Good Standing**
   A Student is not considered to be in good standing for purposes of admission to the University while under a sanction of suspension or expulsion, or while his or her admission or re-admission has been qualified[10].

D. **Administrative Hold and Withholding a Degree**
   The University may place an administrative hold on registration transactions and release of records and transcripts of a Student who has been sent written notice of a pending investigation or disciplinary case concerning that Student, and may withhold awarding a degree otherwise earned until the completion of the process set forth herein, including the

completion of all sanctions imposed.

E. **Record of Discipline**
A record of disciplinary probation or suspension is entered on a Student's transcript, with
beginning and end date, for the duration of the sanction. A record of expulsion or suspension
for one academic year or more shall note the effective date of discipline and remains on the
transcript permanently, without exception. A record of withdrawal in lieu of suspension or
expulsion and withdrawal with pending misconduct investigation or disciplinary proceeding
remains on the transcript permanently, without exception. These requirements shall not be
waived in connection with any resolution agreement.

# Article VI. Interim Suspension

A. **Grounds**
A president may impose an interim suspension pursuant to Title 5, California Code of
Regulations, section 41302 where there is reasonable cause to believe that separation of a
Student is necessary to protect the personal safety of persons within the University community
or University Property, and to ensure the maintenance of order.

B. **Notice and Opportunity for Hearing**
A Student placed on interim suspension shall be given prompt notice of the charges pending
against him or her as enumerated in Title 5, California Code of Regulations, section 41302 and
a factual description of the conduct alleged to form the basis for the charges. The Student
may request a hearing to determine whether continued interim suspension is appropriate by
filing a request with the Student Conduct Administrator. The Student Conduct Administrator
will notify the Hearing Officer.
In matters subject to Article IV, the Student Conduct Administrator will also notify the
Complainant and the Title IX Coordinator or DHR Administrator. The Complainant may
participate in any hearing conducted pursuant to this section.
Within **10 Working Days** of the request, the Hearing Officer shall conduct a hearing to
determine whether there is reasonable cause to believe that the continued interim separation
of the Student is necessary to protect the personal safety of persons within the University
community or University Property, and to ensure the maintenance of order[11].
The hearing is conducted pursuant to the provisions of Article III. D or Article IV. G of these
procedures, as appropriate.
The president shall review the Hearing Officer's report and shall promptly issue a final decision
regarding interim suspension. Notice to the Student charged and to the Complainant (in
matters subject to Article IV) shall be sent to the University-assigned or other primary e-mail
address linked to the party's University account. The final decision shall also be provided to the
DHR Administrator or the Title IX Coordinator where appropriate.
If the University establishes that there is reasonable cause for the interim suspension to
continue, it shall remain in effect until the University closes the disciplinary matter, whether by
resolution agreement, final decision or dropped charges, but in no case longer than the
president has determined is required to protect the personal safety of persons within the
University community or University Property, and to ensure the maintenance of order.

C. **Denial of Presence on Campus**
During the period of an interim suspension, the Student charged may not, without prior written
permission from the Campus president, enter any Campus of the California State University

# EXHIBIT G

*Failure of United States to Participate in Good Faith in Discovery*. Rule 37 authorizes the court to direct that parties or attorneys who fail to participate in good faith in the discovery process pay the expenses, including attorney's fees, incurred by other parties as a result of that failure. Since attorneys' fees cannot ordinarily be awarded against the United States (28 U.S.C. §2412), there is often no practical remedy for the misconduct of its officers and attorneys. However, in the case of a government attorney who fails to participate in good faith in discovery, nothing prevents a court in an appropriate case from giving written notification of that fact to the Attorney General of the United States and other appropriate heads of offices or agencies thereof.

# EXHIBIT H

🏛️ An official website of the United States government    Here's how you know

## U.S. Department of Education

HOME  /  ABOUT US  /  NEWSROOM  /  PRESS RELEASES

**PRESS RELEASE**

# U.S. Department of Education Probes Cases of Antisemitism at Five Universities

## U.S. Department Investigating Five Universities Where Widespread Antisemitic Harassment has Been Reported

**FEBRUARY 3, 2025**

WASHINGTON – Pursuant to President Trump's Executive Order, Additional Measures to Combat Anti-Semitism, the U.S. Department of Education today announced investigations into five institutions of higher education where widespread antisemitic harassment has been reported. The investigations are in response to the explosion of antisemitism on American campuses following the Hamas massacre of Israeli civilians on Oct. 7, 2023.

The Department's Office for Civil Rights (OCR) is opening the investigations under Title VI of the Civil Rights Act (1964), which protects students from discrimination and harassment based on national origin, including shared ancestry. The schools are:

- Columbia University
- Northwestern University
- Portland State University
- The University of California, Berkeley
- The University of Minnesota, Twin Cities

"Too many universities have tolerated widespread antisemitic harassment and the illegal encampments that paralyzed campus life last year, driving Jewish life and religious expression underground. The Biden Administration's toothless resolution agreements did shamefully little to hold those institutions accountable," **said Craig Trainor, Acting Assistant Secretary for Civil Rights.** "Today, the Department is putting universities, colleges, and K-12 schools on notice: this administration will not tolerate continued institutional indifference to the wellbeing of Jewish students on American campuses, nor will it stand by idly if universities fail to combat Jew hatred and the unlawful harassment and violence it animates."

These investigations build upon the foundational work of the House Committee on Education and the Workforce under then-Chairwoman Virginia Foxx, which <u>found</u> that university administrations "overwhelmingly failed" to protect or support their Jewish students, even making "astounding concessions" to illegal, anti-American encampments.

The Department of Education looks forward to working with the Department of Justice and the Department of Health and Human Services as a part of today's announced <u>task force</u> to combat antisemitism.

     
ES

Contact Us
1–800–USA–LEARN



www.ed.gov
**An official website of the Department of Education**

About Dept of Education        Accessibility Support        No FEAR Act data

Office of the Inspector General        Performance reports        FOIA        Privacy Policy

ED Archive

Looking for U.S. government information and services? **Visit USA.gov**

# Antisemitism on College Campuses Exposed, Education and the Workforce Committee Releases Report

**WASHINGTON, D.C., October 31, 2024**

**WASHINGTON** – Based on a year-long investigation, the Committee on Education and the Workforce majority, under Chairwoman Virginia Foxx (R-NC), has released findings on how antisemitism engulfed college campuses while administrators put the wants of terrorist sympathizers over the safety of Jewish students, faculty, and staff.

*"For over a year, the American people have watched antisemitic mobs rule over so-called elite universities, but what was happening behind the scenes is arguably worse. While Jewish students displayed incredible courage and a refusal to cave to the harassment, university administrators, faculty, and staff were cowards who fully capitulated to the mob and failed the students they were supposed to serve,"* **said Chairwoman Foxx**. *"Our investigation has shown that these 'leaders' bear the responsibility for the chaos likely violating Title VI and threatening public safety. It is time for the executive branch to enforce the laws and ensure colleges and universities restore order and guarantee that all students have a safe learning environment."*

The report's findings clearly support four conclusions:

1. ***University administrators made astounding concessions to the organizers of illegal encampments***. For example, in the case of Northwestern University (Northwestern), administrators entertained demands to hire an "anti-Zionist" rabbi and divest from and remove Sabra Hummus from campus cafeterias.
2. ***University administrators deliberately chose to withhold support from Jewish students***. Harvard University's (Harvard) decision making was particularly egregious, as demonstrated by choices to intentionally omit condemnation of Hamas and acknowledgment of hostages in its widely-criticized equivocal statement  on the October 7 attacks, and then-President Claudine Gay asking Harvard Corporation Senior Fellow not to call the phrase "From the River to the Sea" antisemitic hate speech.
3. ***University administrators overwhelmingly failed to impose meaningful discipline for those who engaged in antisemitic conduct***. Across the board, enforcement of campus rules was wildly uneven, from Harvard and Columbia faculty playing key roles in derailing discipline toward antisemitic conduct violations and Rutgers University (Rutgers) actually disciplining Jewish students who spoke out against the harassment, to the overall lack of consequences for those involved in encampments at schools including the University of California, Los Angeles (UCLA), University of California, Berkeley (UC Berkeley), Yale University (Yale), and the Massachusetts Institute of Technology (MIT).
4. ***University administrators considered Congressional oversight a nuisance at best and with open hostility at worst***. Administrators at the University of Pennsylvania (Penn), for instance, attempted to orchestrate negative media coverage of Members of Congress who scrutinized the university while Harvard president Claudine Gay disparaged U.S. Representative Elise Stefanik's (R-NY) character to the university's Board of Overseers.

Throughout the investigation, more than 400,000 pages of documents have been obtained—some via the first subpoenas to universities in the Committee's 157-year history—and transcribed interviews were conducted, all examining universities across the country.

Click here to read the report.

**BACKGROUND AND TIMELINE OF INVESTIGATION**:

- December 5, 2023: The Committee on Education and the Workforce holds its first full committee hearing examining the outbreak of antisemitism on college campuses following the October 7 attacks. The hearing, titled "Holding Campus Leader Accountable and Confronting Antisemitism," featured abysmal testimony from Dr. Claudine Gay of Harvard, Ms. Liz Magill of Penn, Dr. Pamela Nadell of American University, and Dr. Sally Kornbluth of MIT.
- December 7, 2023: Foxx announces the formal investigation into Harvard, Penn, and MIT, and puts other colleges on notice, saying that "disgusting targeting and harassment of Jewish students is not limited to these institutions, and other universities should expect investigations as well, as their litany of similar failures has not gone unnoticed."
- January 9, 2024: The Committee makes its first document request of Harvard, citing Dr. Gay's testimony before Congress as a failure to address the longstanding and pervasive antisemitism on campus.
- January 24, 2024: The Committee makes its first document request of Penn, and calls into question the university's "clear double standard" that tolerates "antisemitic vandalism, harassment, and intimidation, but suppresses and [penalizes] other expression it deemed problematic."
- February 12, 2024: The Committee makes its first document request of Columbia, outlining the numerous public incidents of antisemitism, including vandalism and assault, taking place on campus.
- February 16, 2024: Harvard's failure to produce requested documents results in compulsory measures on the part of the Committee. For the first time in the 157-year history of the Committee, a subpoena is issued to an institution of higher education.
- February 29, 2024: Foxx and other Members hear from Jewish students attending Harvard, Penn, MIT, Columbia, UC Berkeley, Rutgers, Stanford University, Tulane University, and Cooper Union for the Advancement of Science and Art about their experiences with antisemitism on campus.
- March 8, 2024: The Committee makes its first document request of MIT, highlighting the disparity between the university's rosy assessment of the campus environment with student responses that said the majority of Jewish students did not feel comfortable being Jewish or Israeli on campus, and majority did not feel the university's actions were adequate.
- March 18, 2024: The Committee conducts a transcribed interview with former Harvard Antisemitism Advisory Group Member, Dr. Dara Horn.
- March 19, 2024: The Committee makes its first document request of UC Berkeley, following the violent riot that began as an anti-Israel protest and months-long failure to keep Jewish students safe.
- March 27, 2024: The Committee makes its first document request of Rutgers, which has drawn fire for what students called a "selective enforcement of [University] rules," including the decision to open disciplinary proceedings against an Orthodox Jewish law student who pushed back on antisemitic, pro-Hamas messages.
- April 17, 2024: Foxx holds a hearing titled "Columbia in Crisis: Columbia University's Response to Antisemitism," which focuses on the stunning failure of the university to address the situation on campus, from lax disciplinary action to the retention of faculty members who hold pro-terror views.
- May 23, 2024: Foxx holds a hearing titled "Calling for Accountability: Stopping Antisemitic College Chaos," with the presidents of Rutgers and Northwestern, as well as the chancellor of UCLA testifying. The hearing honed in on the illegal encampments that had broken out on campuses across the country.
- June 20, 2024: The Committee conducts a transcribed interview with Yale President Peter

Salovey.

- <u>August 9, 2024</u>: The Committee conducts a transcribed interview with University of Michigan President Santa Ono.
- <u>August 21, 2024</u>: Following repeated failures to turn over documents necessary to the Committee's investigation, a subpoena is issued for Columbia, specifically seeking information on the "Gaza Solidarity Encampment," and Board of Trustees communications.
- <u>August 29, 2024</u>: The Committee conducts a transcribed interview with Penny Pritzker, Senior Fellow, Harvard Corporation.

# Defining Anti-Semitism - United States Department of State

The Department of State has used a working definition, along with examples, of anti-Semitism since 2010. On May 26, 2016, the 31 member states of the International Holocaust Remembrance Alliance (IHRA), of which the United States is a member, adopted a non-legally binding "working definition" of anti-Semitism at its plenary in Bucharest. This definition is consistent with and builds upon the information contained in the 2010 State Department definition. As a member of IHRA, the United States now uses this working definition and has encouraged other governments and international organizations to use it as well.

**Bucharest, 26 May 2016**

In the spirit of the Stockholm Declaration that states: "With humanity still scarred by … antisemitism and xenophobia the international community shares a solemn responsibility to fight those evils" the committee on Antisemitism and Holocaust Denial called the IHRA Plenary in Budapest 2015 to adopt the following working definition of antisemitism.

On 26 May 2016, the Plenary in Bucharest decided to:

Adopt the following non-legally binding working definition of antisemitism :

"Antisemitism is a certain perception of Jews, which may be expressed as hatred toward Jews. Rhetorical and physical manifestations of antisemitism are directed toward Jewish or non-Jewish individuals and/or their property, toward Jewish community institutions and religious facilities."

To guide IHRA in its work, the following examples may serve as illustrations:

Manifestations might include the targeting of the state of Israel, conceived as a Jewish collectivity. However, criticism of Israel similar to that leveled against any other country cannot be regarded as antisemitic. Antisemitism frequently charges Jews with conspiring to harm humanity, and it is often used to blame Jews for "why things go wrong." It is expressed in speech, writing, visual forms and action, and employs sinister stereotypes and negative character traits.

Contemporary examples of antisemitism in public life, the media, schools, the workplace, and in the religious sphere could, taking into account the overall context, include, but are not limited to:

- Calling for, aiding, or justifying the killing or harming of Jews in the name of a radical ideology or an extremist view of religion.
- Making mendacious, dehumanizing, demonizing, or stereotypical allegations about Jews as such or the power of Jews as collective — such as, especially but not exclusively, the myth about a world Jewish conspiracy or of Jews controlling the media, economy, government or other societal institutions.
- Accusing Jews as a people of being responsible for real or imagined wrongdoing committed by a single Jewish person or group, or even for acts committed by non-Jews.
- Denying the fact, scope, mechanisms (e.g. gas chambers) or intentionality of the genocide of the Jewish people at the hands of National Socialist Germany and its supporters and accomplices during World War II (the Holocaust)
- Accusing the Jews as a people, or Israel as a state, of inventing or exaggerating the Holocaust.
- Accusing Jewish citizens of being more loyal to Israel, or to the alleged priorities of Jews

worldwide, than to the interests of their own nations.
- Denying the Jewish people their right to self-determination, e.g., by claiming that the existence of a State of Israel is a racist endeavor.
- Applying double standards by requiring of it a behavior not expected or demanded of any other democratic nation.
- Using the symbols and images associated with classic antisemitism (e.g., claims of Jews killing Jesus or blood libel) to characterize Israel or Israelis.
- Drawing comparisons of contemporary Israeli policy to that of the Nazis.
- Holding Jews collectively responsible for actions of the state of Israel.

**Antisemitic acts are criminal** when they are so defined by law (for example, denial of the Holocaust or distribution of antisemitic materials in some countries).

**Criminal acts are antisemitic** when the targets of attacks, whether they are people or property – such as buildings, schools, places of worship and cemeteries – are selected because they are, or are perceived to be, Jewish or linked to Jews.

**Antisemitic discrimination** is the denial to Jews of opportunities or services available to others and is illegal in many countries.

# EXHIBIT I

**Subject:** DRES - Alternative Testing - Next Steps to Scheduling Your Exams
**From:** noreply-2-sait@csun.edu
**Date:** 8/31/2021, 8:10 AM
**To:** edwin.nahavandi.360@my.csun.edu

Dear **Edwin,**

A DRES counselor has approved your first alternative testing accommodation request for ███████.

*Note:* Your instructor, ███████ will also receive an email that you have approved alternative testing accommodations for this course.

# Your next steps

Please contact your instructor as soon as possible to communicate how you will use your testing accommodations and to confirm how they will be provided.

# Your accommodations may be provided in the following ways

- For fully online courses (FOA, FOS, FOI) your instructor will provide your testing accommodations for exams (quizzes, midterms, and final) online.

- For on-campus courses, your instructor or DRES will proctor the exams.
  - If DRES is proctoring your exams, your instructor must first log in to SAAS and create an exam profile for the course before you can schedule an exam.

# Managing On-Campus Exams

You are responsible for managing your alternative testing exam schedule (requesting exams, cancellations, etc.) for on-campus exams. Please follow these next steps:

- Log in to SAAS and add your exam date(s) and time(s). You can refer to this video on adding exams.
- Schedule exams 5 days in advance for regular exams and 10 days in advance for final exams. Please refer to the DRES Alternative Testing Hours on the DRES homepage.

If you or your course instructor have any questions, please contact the DRES office at any time for assistance by calling (818) 677-2684 or emailing dres@csun.edu.

**This automatic email was generated by the Student Access and Accommodation System (SAAS) and**

# EXHIBIT J

STATE OF CALIFORNIA
DEPARTMENT OF REHABILITATION
**AUTHORIZATION AND INVOICE FOR DIRECT SERVICE FEES**
DR 297F (06/18)

| DOCUMENT NUMBER | AMENDMENT NUMBER |
|---|---|
| ▮▮▮▮ | ▮ |

| REGISTRATION NUMBER | ISSUE DATE |
|---|---|
| | 02/10/23 |

**DATES OF SERVICE**

01/23/23 TO 05/12/23

| COUNSELOR'S NAME | CASELOAD CODE |
|---|---|
| ▮▮▮▮ | ▮▮ |

TO: (VENDOR/CONTRACTOR'S NAME AND ADDRESS)
CSU, Northridge - University Cash Services
University Cash Services
18111 Nordhoff Street
Northridge, CA 91330
(818) 677-3115

CONSUMER'S NAME, ADDRESS AND TELEPHONE
Nahavandi Edwin
5710 Comanche Ave
Woodland Hills, CA 91367
(818) 569-9673

**DOR Use Only: CALIFORNIA STATE UNIVERSITY NORTHRIDGE**

| DESCRIPTION OF SERVICES | SERVICE OF COSTS | | QTY | TOTAL AMOUNT |
|---|---|---|---|---|
| | RATE | UNIT (HR, DAY, ETC.) | | |
| 95C  Four-Year College/University - Public: Tuition <br> Spring 2023 Tuition <br> STUDENT ID: ▮▮▮▮ <br> Cost/DOR responsibility: $2,281.00 <br><br> Graduate Tuition: $4,363.00 <br> State University Grant: $2,082.00 <br><br> ▮▮▮▮ <br><br> ▮▮▮▮ | $ 2,281.00 | | 1.00 | $ 2,281.00 |
| 95E  Four-Year College/University - Public: Parking Fees <br> Parking for Spring 2023 term <br> Cost: $219.61 | $ 219.61 | | 1.00 | $ 219.61 |
| TOTAL | | | | $ 2,500.61 |

SEND INVOICE/PROGRESS REPORT (DR226) TO:

DEPARTMENT OF REHABILITATION
15400 SHERMAN WAY SUITE 140
VAN NUYS, CA 91406

Consumer's name must appear on the invoice and services must be clearly itemized.
Note: Invoices for training and private tuition must include a report of progress priority to payment.
General Terms and Conditions are incorporated by reference GTC-610 can be found at:
https://www.dgs.ca.gov/OLS/Resources/Page-Content/Office-of-Legal-Services-Resources-List-Folder/Standard-Contract-Language
Invoices are paid in accordance with the Prompt Payment Act
http://leginfo.legislature.ca.gov/faces/codes_displaySection.xhtml?lawCode=GOV&sectionNum=927.&highlight=true&keyword=Prompt%20Payment

*DEPARTMENT CERTIFICATION AND APPROVAL*
*I HEREBY CERTIFY, upon my own personal knowledge that this authorization for the vocational rehabilitation services specified above is issued in accordance with the procedure prescribed by law governing the purchase of such items for the State of California; that all such legal requirements have been fully complied with; and that budgeted funds are available for the period and purpose of the expenditure stated above.*

SIGNATURE OF VENDOR/CONTRACTOR

| AUTHORIZED SIGNATURE | VENDOR/CONTRACTOR TITLE | DATE OF INVOICE |
|---|---|---|
| ▮▮▮▮ | | |

FOR ADDITIONAL INFORMATION

STATE OF CALIFORNIA                                                                    DEPARTMENT OF REHABILITATION

**AUTHORIZATION AND INVOICE FOR DIRECT SERVICE FEES**

DR297F (05/2020)

## BILLING INSTRUCTIONS

1.  **GOVERNING LAW:** The services resulting from this contract shall be governed by and shall be interpreted in accordance with the laws of the State of California and applicable Federal laws, rules, policies and regulations.

2.  **REQUIRED PAYMENT DATE:** Payment will be made in accordance with the provisions of the California Prompt Payment Act, Government Code Section 927 et seq. Unless expressly exempted by statue, the Act requires state agencies to pay properly submitted, undisputed invoices, not more than 45 days after (a) the date of acceptance of goods or the performance of services; or (b) receipt of an undisputed invoice, whichever is later.

3.  **AMENDMENTS/CHANGES:** No change or modification to the terms, quantities or specifications of the services listed in this authorization may be made without the approval of the DOR. Unauthorized amendments/changes will not be paid for.

4.  **INVOICES:** Enter the date of service and amount billed for each service authorized. Return original with signature, title, date of invoice and a notation of yes or no regarding corporation status to the Department of Rehabilitation (DOR) at the "Send Invoice/Report to:" address. All invoices must be dated. Retain a copy for your files.
    The State of California requires that all parties entering into business transactions that may lead to payment(s) from the State must provide their 9 digit Taxpayer Identification Number (TIN) as required by the State Revenue and Taxation Code, Section 18646, to facilitate tax compliance enforcement activities and preparation of Form 1099 and other information as required by Internal Revenue Code Section 6109(a). The TIN for individuals and sole proprietors is the Social Security Number (SSN).

## CONFIDENTIALITY OF PERSONAL CONSUMER INFORMATION

The Vendor agrees that any report or material created during the performance of this contract will not be released to any source except as required by this contract or otherwise authorized by the State. Any information obtained for the performance of services is confidential and shall not be published or open to public inspection in any manner, except as authorized by the State. Vendor agrees to maintain the confidentiality of any information concerning any individual consumers it may obtain in the performance of this contract, and specifically agrees to comply with the provisions applicable to such information as set forth in 34 CFR of Federal Regulations, Section 361.38, Title 9, California Code of Regulations, Section 7140 et seq., and the Information Practices Act of 1977 (California Civil Code Section 1798 et seq.) The Vendor agrees to report any security breach or incident involving DOR consumers' personal information to the DOR authorizing representative listed on page 1 and DOR's Information Security Officer. The DOR's Information Security Officer can be contacted via e-mail at isoinfo@dor.ca.gov.

## TERMS AND CONDITIONS AND VENDOR ACCEPTANCE

By accepting this authorization, Vendor/Contractor is acknowledging full review and acceptance of the State's terms and conditions located at https://www.dor.ca.gov/Home/VocationalRehabilitationServiceProviders, https://www.dgs.ca.gov/OLS/Resources/Page-Content/Office-of-Legal-Services-Resources-List-Folder/Standard-Contract-Language and made a part of this agreement by this reference as if attached hereto.

## DEBARMENT AND SUSPENSION

By accepting and fulfilling this agreement for goods and/or services, the vendor/contractor certifies that neither it nor its principals is presently debarred, suspended, declared ineligible, or voluntarily excluded from participation in this transaction by any Federal department or agency. https://www.sam.gov/SAM/pages/public/index.jsf

## VOID FOR TAX DELINQUENCY (AB1424)

Any agreement that a state agency enters into after July 1, 2012, is void if the contract is between a state agency and a vendor/contractor whose name appears on either list of the 500 largest tax delinquencies pursuant to Section 7063 or 19195 of the Revenue and Taxation Code. (Public Contract Sec. 10295.4). In accordance with Public Contract Code Section 10295.4, agencies are required to cancel agreements with entities that appear on either list. (Franchise Tax Board) https://www.ftb.ca.gov/about-ftb/newsroom/top-500-past-due-balances/index.html. California Department of Tax Fee Administration CDTFA) https://www.cdtfa.ca.gov/taxes-and-fees/top500.htm
Additional training and awareness tools are available at the California Office of Information Security and Privacy Protection (OISPP) website. OISPP created the self-training manual, "Protecting Privacy in State Government" that DOR revised to meet its business needs.

## DARFUR CONTRACTING ACT

By agreeing to this purchase, pursuant to Public Contract Code section 10478, the vendor does not currently nor has within the previous three years had business activities or other operations outside of the United States and certifies that it is not a "scrutinized" company as defined in Public Contract Code section 10476.

# EXHIBIT K

# Thy Monaco | CSU

Thy Monaco joined the California State University Office of General Counsel in September 2014.
Thy is the University Counsel for California State University, Northridge and a member of the
External Relations team. She previously was University Counsel at California State University, San
Bernardino. Prior to that she served on  the Office of General Counsel's Litigation Team and was
responsible for litigating a variety of systemwide and campus-based matters in state and federal
courts. Thy serves as a resource attorney for financial aid, bankruptcy, cannabis/hemp and
international activities. Prior to joining the CSU, she was a Deputy Attorney III for the California
Department of Transportation for approximately eight years, litigating eminent domain,
catastrophic personal injury and employment matters. Thy started her legal career as a staff
attorney for the Public Law Center, focusing on human trafficking, disability rights and the
Southeast Asian Legal Outreach Program.

**Education:**

- J.D., Loyola Law School, Los Angeles (2003)
- Staff Member, Loyola of Los Angeles Entertainment Law Review
- B.A., Sociology, University of California, San Diego (1996)

**Other Legal Experience:**

- Judicial Extern for the Hon. Samuel L. Bufford, United States Bankruptcy Judge, Central
  District
- Judicial Extern for ALJ Pamela Sellers, U.S. Equal Employment Opportunity Commission

**Contact:**
Phone: (562) 951-4500
Fax: (562) 951-4956
tmonaco@calstate.edu

**Support Staff:**
Michelle Sarria

# EXHIBIT L

# STANLEY R. APPS, ATTORNEY AT LAW

(310) 709-3966                                    stan@appsatlaw.com

April 28, 2023

Dr. Zeina Otaky-Ramirez
Assistant Dean of Students & Director of Student Conduct and Ethical Development
California State University Northridge
18111 Nordhoff Street
Northridge, CA 91330-8239

Dr. William Watkins, Vice President of Student Affairs
California State University Northridge
18111 Nordhoff Street
Northridge, CA 91330-8239

Thy Monaco, University Counsel
California State University, Office of General Counsel
401 Golden Shore
Long Beach, CA 90802

Sent via U.S. Certified Mail and via email to: zeina.ramirez@csun.edu ; maria.angell@csun.edu;
tmonaco@calstate.edu

RE: Notice of Legal Representation of Student Edwin Nahavandi
as to Student Conduct Case Number: 2022005901;
Demand for Manifestation of Disability Hearing under §504 of the Rehabilitation Act
and Objections to Scheduled Student Conduct Hearing

Dear Vice President Watkins, Dean Otaky-Ramirez, and University Counsel Monaco:

Please be notified that I have been retained as legal counsel by Mr. Edwin Nahavandi and his family, to assist Mr. Nahavandi regarding California State University Northridge Student Conduct Case No. 2022005901.

First, as you are likely aware, Mr. Nahavandi is a student with disabilities whose attendance at the University is sponsored and fully-funded by the California Department of Rehabilitation. He is recognized by the state as a person whose disabilities substantially limit his ability to participate in multiple major activities of daily life, including thinking, concentrating, decision-making, problem-solving, self-advocacy, emotional regulation, and other major activities of daily living relevant to his attendance at the University. His mental health disabilities include without limitation: auditory processing disorder, major depression, and severe anxiety. Due to his disabilities and his status as a student sponsored by the Department of Rehabilitation, Mr. Nahavandi is entitled to the protections of California law and federal law applicable to students with disabilities. It is my contention that the incidents that are the basis of the proposed Student Conduct Hearing constitute a manifestation or manifestations of Mr. Nahavandi's disabilities.

# STANLEY R. APPS, ATTORNEY AT LAW

(310) 709-3966                              stan@appsatlaw.com

Because the behaviors addressed by the Notice of Conduct Hearing constitute a manifestation or manifestations of Mr. Nahavandi's mental health disabilities, Mr. Nahavandi is entitled to a Manifestation Hearing pursuant to Section 504 of the Rehabilitation Act of 1973 before any Student Conduct Hearing can take place. The Student Conduct Hearing can only go forward if it is determined that Mr. Nahavandi's email behavior was not a manifestation of his disabilities, including his severe anxiety and resulting panic attacks, triggered when he was exposed to disturbing anti-Semitic messages and statements on the California State University Northridge campus.

As you may know, Mr. Nahavandi is Jewish, and he has experienced trauma while attending your University due to his exposure to anti-Semitic rhetoric on your campus. Mr. Nahavandi has never before been exposed directly to this type of communications, and they upset him a great deal and led to him sending some communications that he now regrets. At the same time, however, your exclusive focus on punishing Mr. Nahavandi for sending emails referring to his experience of anti-Semitism on your campus strikes me as questionable. In my opinion, your resources could be better spent on taking meaningful action to curb open expression of anti-Semitic hate speech on your campus, rather than seeking to mete out further punishment to a student who was traumatized by exposure to such messages.

In regard to the currently-scheduled Student Conduct Hearing, scheduled for June 15, 2023 at 1:00 p.m. PST via Zoom, I am aware that Mr. Nahavandi is not allowed to be accompanied or represented by an attorney at the Student Conduct Hearing. While I have no quarrel in general with the exclusion of attorneys from such proceedings at your university, I ask that an exception be made in Mr. Nahavandi's case and that he be permitted to have me both accompany and represent him at the Hearing. Without such an exception being granted, Mr. Nahavandi will be unable to attend or meaningfully participate in the Conduct Hearing due to his disability of severe anxiety, which substantially impairs his ability to represent his point of view in an effective and organized manner in regard to a "high stakes" situation such as the proposed Student Conduct Hearing.

In either case, I request that the Student Conduct Hearing be rescheduled for now, to a future date after a Manifestation Hearing has been carried out and a determination has been reached as to whether manifestation of Mr. Nahavandi's disabilities was the proximate cause of the incidents addressed by the Notice of Conduct Hearing.

In addition to the demand for Manifestation Hearing, I further object to the proposed Student Conduct Hearing on the grounds that there was no actual violation of the Student Conduct Code, Title 5, California Code of Regulations Section 41301(b)(15)(E), which is the violation alleged in the Notice of Conduct Hearing. An actual violation of this provision of the Code would require Mr. Nahavandi to have sent emails that rose to the level of being "obscene" or "intimidating" or "abusive." In fact, however, I have reviewed the emails sent by Mr. Nahavandi on the dates referenced in the Notice of Conduct Hearing, and none of the emails sent by Mr. Nahavandi actually rise to the level of containing any sort of threatening, abusive or obscene content.

# EXHIBIT M



## STUDENT WITH A DISABILITY

Students with disabilities are a subset of youth with disabilities. A student with a disability is an individual who meets the criteria listed below:

1. Is not younger than 16 or older than 21 years of age.
2. Is enrolled in a recognized education program.
3. Is one or more of the following:
   1. Eligible for and receiving special education or related services under the Individuals with Disabilities Education Act.
   2. Eligible for and receiving accommodations under a 504 plan.
   3. Has a physical or mental impairment that substantially limits one or more major life activity, and has a record of or is regarded as having such an impairment.

### Explore Your Options

### Ready to Work

### Youth and Families

### Laws and Regulations

## Contact

### Find an Office

### Youth Services

# EXHIBIT N

November 20, 2023

Edwin Nahavandi
5710 Comanche Ave
Woodland Hills CA 91367

Thy Monaco
401 Golden Shore
Long Beach CA 90802

**<u>Via USPS / Certified Mail</u>**

**RE: Notice of Claim**

Dear Thy Monaco,

This letter serves as notice of my intent to file a lawsuit against California State University, Northridge in the near future if I (Edwin Nahavandi) choose to. Notices are generally required in academic settings to meet the criteria for filing a lawsuit. Please note that this is not a commencement of a lawsuit, but a condition that is supposedly needed to be met to bring a lawsuit in the near future. Its purpose is to make you (Thy Monaco) and the California State University on notice of the existence of these statements for the intent to bring a lawsuit later on.

On the CSU Government Claims Complaint form, which will be sent to the California State University Office of the Chancellor I have included approximately about 100 pages worth of documentation regarding California State University, Northridge's negligence and discrimination towards me (Edwin Nahavandi).

The CSU Government Claims Complaint form briefly summarizes the date of the timeline, dollar amount of claim, how the amount was calculated, the location of the incident, described the specific damage and injury, explained the circumstances that led to the damage or injury, and explains why the CSU is responsible for the damage and injury.

In other words, the specific damage or injury from California State University, Northridge's negligence and discrimination is loss of government funds, loss of tuition funds, loss of benefits from services and personal injuries, which include panic attacks, huge cyst growth with the recommendation of surgery, fatigue, emotional distress, and insomnia, but not limited to other personal injuries.

The circumstances that led to the damage or injury was due to California State University, Northridge's negligence because California State University, Northridge owed a duty of care, but breached it, which caused personal injury that made me suffer damages, and discrimination towards my disability, religion, race, culture, but not limited to other violations expressed in that documentation.

Sincerely, Edwin Nahavandi

**Subject:** Notice of Claim
**From:** "Nahavandi, Edwin" <edwin.nahavandi.360@my.csun.edu>
**Date:** 11/20/2023, 10:16 PM
**To:** tmonaco@calstate.edu
**CC:** edwin.nahavandi@gmail.com

Hi Ms. Monaco

I have sent a notice of claim through priority certified mail, I wanted to give you an electronic copy of
the notice of claim as well.

Regards, Edwin

Attachments:

Notice of Claim Thy.pdf                                                             65.4 KB

# EXHIBIT O



# The False Claims Act

Many of the Fraud Section's cases are suits filed under the False Claims Act (FCA), 31 U.S.C. §§ 3729 - 3733, a federal statute originally enacted in 1863 in response to defense contractor fraud during the American Civil War.

The FCA provides that any person who knowingly submits, or causes to submit, false claims to the government is liable for three times the government's damages plus a penalty that is linked to inflation.  FCA liability can arise in other situations, such as when someone knowingly uses a false record material to a false claim or improperly avoids an obligation to pay the government.  Conspiring to commit any of these acts also is a violation of the FCA.

In addition to allowing the United States to pursue perpetrators of fraud on its own, the FCA allows private citizens to file suits on behalf of the government (called "*qui tam*" suits) against those who have defrauded the government.  Private citizens who successfully bring qui tam actions may receive a portion of the government's recovery.  Many Fraud Section investigations and lawsuits arise from such qui tam actions.

The Department of Justice obtained more than $2.9 billion in settlements and judgments from civil cases involving fraud and false claims against the government in the fiscal year ending Sept. 30, 2024.  More information about those recoveries can be found here and the 2024 FCA statistics can be found here."

*Updated January 15, 2025*

✉  **U.S. Department of Justice**

   **Civil Division**

# EXHIBIT P

STATE OF CALIFORNIA
DEPARTMENT OF REHABILITATION
**AUTHORIZATION AND INVOICE FOR DIRECT SERVICE FEES**
DR 297F (06/18)

| DOCUMENT NUMBER | AMENDMENT NUMBER |
|---|---|
| ██████████ | ██ |

| REGISTRATION NUMBER | ISSUE DATE |
|---|---|
| | 02/10/23 |

| **DATES OF SERVICE** | COUNSELOR'S NAME | CASELOAD CODE |
|---|---|---|
| 01/23/23 TO 05/12/23 | ████████ | ███ |

**TO: (VENDOR/CONTRACTOR'S NAME AND ADDRESS)**
CSU, Northridge - University Cash Services
University Cash Services
18111 Nordhoff Street
Northridge, CA 91330
(818) 677-3115

**CONSUMER'S NAME, ADDRESS AND TELEPHONE**
Nahavandi Edwin
5710 Comanche Ave
Woodland Hills, CA 91367
(818) 569-9673

**DOR Use Only: CALIFORNIA STATE UNIVERSITY NORTHRIDGE**

| DESCRIPTION OF SERVICES | SERVICE OF COSTS | | QTY | TOTAL AMOUNT |
|---|---|---|---|---|
| | RATE | UNIT (HR, DAY, ETC.) | | |
| 95C    Four-Year College/University - Public: Tuition<br>Spring 2023 Tuition<br>STUDENT ID: 200117248<br>Cost/DOR responsibility: $2,281.00<br><br>Graduate Tuition: $4,363.00<br>State University Grant: $2,082.00<br><br>████████████<br><br>████████████ | $ 2,281.00 | | 1.00 | $ 2,281.00 |
| 95E    Four-Year College/University - Public: Parking Fees<br>Parking for Spring 2023 term<br>Cost: $219.61 | $ 219.61 | | 1.00 | $ 219.61 |
| TOTAL | | | | $ 2,500.61 |

SEND INVOICE/PROGRESS REPORT (DR226) TO:

DEPARTMENT OF REHABILITATION
15400 SHERMAN WAY SUITE 140
VAN NUYS, CA 91406

Consumer's name must appear on the invoice and services must be clearly itemized.
Note: Invoices for training and private tuition must include a report of progress priority to payment.
General Terms and Conditions are incorporated by reference GTC-610 can be found at:
https://www.dgs.ca.gov/OLS/Resources/Page-Content/Office-of-Legal-Services-Resources-List-Folder/Standard-Contract-Language
Invoices are paid in accordance with the Prompt Payment Act
http://leginfo.legislature.ca.gov/faces/codes_displaySection.xhtml?lawCode=GOV&sectionNum=927.&highlight=true&keyword=Prompt%20Payment

*DEPARTMENT CERTIFICATION AND APPROVAL*
*I HEREBY CERTIFY, upon my own personal knowledge that this authorization for the vocational rehabilitation services specified above is issued in accordance with the procedure prescribed by law governing the purchase of such items for the State of California; that all such legal requirements have been fully complied with; and that budgeted funds are available for the period and purpose of the expenditure stated above.*

SIGNATURE OF VENDOR/CONTRACTOR

| AUTHORIZED SIGNATURE | VENDOR/CONTRACTOR TITLE | DATE OF INVOICE |
|---|---|---|
| ██████████████ | | |

FOR ADDITIONAL INFORMATION

| STATE OF CALIFORNIA<br>DEPARTMENT OF REHABILITATION<br>**AUTHORIZATION AND INVOICE FOR DIRECT SERVICE FEES**<br>DR 297F (06/18) | DOCUMENT NUMBER ▮ | AMENDMENT NUMBER ▮ |
|---|---|---|
| | REGISTRATION NUMBER | ISSUE DATE<br>07/29/22 |

**DATES OF SERVICE**

08/01/22 TO 12/26/22  ▮  CASELOAD CODE

| TO:(VENDOR/CONTRACTOR'S NAME AND ADDRESS)<br>**CALIFORNIA STATE UNIVERSITY NORTHRIDGE**<br>**STUDENT ACCOUNTING**<br>**18111 NORDHOFF STREET**<br>**NORTHRIDGE, CA 91330**<br>**(818) 677-4734**<br><br>**DOR Use Only: CALIFORNIA STATE UNIVERSITY NORTHRIDGE** | CONSUMER'S NAME, ADDRESS AND TELEPHONE<br>Nahavandi Edwin<br>5710 Comanche Ave<br>Woodland Hills, CA 91367<br>(818) 569-9673 |
|---|---|

| DESCRIPTION OF SERVICES | SERVICE OF COSTS | | QTY | TOTAL AMOUNT |
|---|---|---|---|---|
| | RATE | UNIT (HR, DAY, ETC.) | | |
| 95C     Four-Year College/University - Public: Tuition<br>         Fall 2022<br><br>         Student ID: ▮<br><br>         Tuition and other Fees: ....$777.00 | $ 777.00 | | 1.00 | $ 777.00 |
| TOTAL | | | | $ 777.00 |

| SEND INVOICE/PROGRESS REPORT (DR226) TO:<br><br>    DEPARTMENT OF REHABILITATION<br>    15400 SHERMAN WAY SUITE 140<br>    VAN NUYS, CA 91406 | Consumer's name must appear on the invoice and services must be clearly itemized.<br>Note: Invoices for training and private tuition must include a report of progress priority to payment.<br>General Terms and Conditions are incorporated by reference GTC-610 can be found at:<br>https://www.dgs.ca.gov/OLS/Resources/Page-Content/Office-of-Legal-Services-Resources-List-Folder/Standard-Contract-Language<br>Invoices are paid in accordance with the Prompt Payment Act<br>http://leginfo.legislature.ca.gov/faces/codes_displaySection.xhtml?lawCode=GOV&sectionNum=927.&highlight=true&keyword=Prompt%20Payment |
|---|---|
| *DEPARTMENT CERTIFICATION AND APPROVAL.*<br>*I HEREBY CERTIFY, upon my own personal knowledge that this authorization for the vocational rehabilitation services specified above is issued in accordance with the procedure prescribed by law governing the purchase of such items for the State of California; that all such legal requirements have been fully complied with; and that budgeted funds are available for the period and purpose of the expenditure stated above.* | SIGNATURE OF VENDOR/CONTRACTOR |

| AUTHORIZED SIGNATURE | VENDOR/CONTRACTOR TITLE | DATE OF INVOICE |
|---|---|---|
| | | |

| FOR ADDITIONAL INFORMATION CONTACT | TELEPHONE NO | |
|---|---|---|

| ***SERVICES RECEIVED*** *(APPROVED FOR PAYMENT)* | | |
|---|---|---|
| SIGNATURE OF APPROVER FOR PAYMENT | DATE OF APPROVAL | Vendor/Contractor Taxpayer Identification Number (TIN) is required on all invoices. |
| REVOLVING FUND CHECK NUMBER | AMOUNT OF CHECK ISSUED<br>$ | TIN ▮      INCORPORATED<br>    ✓ Yes<br>    No |

## DEPARTMENT USE ONLY

| DISTRICT | STATUS | CASELOAD | SSN | ACCOUNT CODE | AMOUNT | CASE SERVICE CODE | DATE OF SERVICE MO YR | FISCAL YEAR | CONTRACT/ SPECIAL PROGRAM |
|---|---|---|---|---|---|---|---|---|---|
| ▮ | Service | ▮ | | ▮ | $777.00 | ▮ | 08 2022 | 2022 - 2023 | |

| STATE OF CALIFORNIA<br>DEPARTMENT OF REHABILITATION<br>**AUTHORIZATION AND INVOICE FOR DIRECT SERVICE FEES**<br>DR 297F (06/18) | DOCUMENT NUMBER<br>████████ | | AMENDMENT NUMBER<br>█ |
|---|---|---|---|
| | REGISTRATION NUMBER | | ISSUE DATE<br>08/17/22 |
| **DATES OF SERVICE**<br>08/15/22 TO 12/25/22 | COUNSELOR'S NAME<br>████ | | CASELOAD CODE |

TO:(VENDOR/CONTRACTOR'S NAME AND ADDRESS)
CALIFORNIA STATE UNIVERSITY NORTHRIDGE
STUDENT ACCOUNTING
18111 NORDHOFF STREET
NORTHRIDGE, CA 91330
(818) 677-4734

**DOR Use Only: CALIFORNIA STATE UNIVERSITY NORTHRIDGE**

CONSUMER'S NAME, ADDRESS AND TELEPHONE
Nahavandi Edwin
5710 Comanche Ave
Woodland Hills, CA 91367
(818) 569-9673

| DESCRIPTION OF SERVICES | | SERVICE OF COSTS | | QTY | TOTAL AMOUNT |
|---|---|---|---|---|---|
| | | RATE | UNIT (HR, DAY, ETC.) | | |
| 95E | Four-Year College/University - Public:<br>Parking Fees<br>FALL 2022<br><br>STUDENT ID: ████ | $ 219.61 | | 1.00 | $ 219.61 |
| | TOTAL | | | | $ 219.61 |

SEND INVOICE/PROGRESS REPORT (DR226) TO:

DEPARTMENT OF REHABILITATION
15400 SHERMAN WAY SUITE 140
VAN NUYS, CA 91406

*DEPARTMENT CERTIFICATION AND APPROVAL*
*I HEREBY CERTIFY, upon my own personal knowledge that this authorization for the vocational rehabilitation services specified above is issued in accordance with the procedure prescribed by law governing the purchase of such items for the State of California; that all such legal requirements have been fully complied with; and that budgeted funds are available for the period and purpose of the expenditure stated above.*

Consumer's name must appear on the invoice and services must be clearly itemized.
Note: Invoices for training and private tuition must include a report of progress priority to payment.
General Terms and Conditions are incorporated by reference GTC-610 can be found at:
https://www.dgs.ca.gov/OLS/Resources/Page-Content/Office-of-Legal-Services-Resources-List-Folder/Standard-Contract-Language
Invoices are paid in accordance with the Prompt Payment Act
http://leginfo.legislature.ca.gov/faces/codes_displaySection.xhtml?lawCode=GOV&sectionNum=927.&highlight=true&keyword=Prompt%20Payment

SIGNATURE OF VENDOR/CONTRACTOR

| AUTHORIZED SIGNATURE<br>████████ | VENDOR/CONTRACTOR TITLE | DATE OF INVOICE |
|---|---|---|

| FOR ADDITIONAL INFORMATION CONTACT<br>████ | TELEPHONE NO<br>████ | |
|---|---|---|

**SERVICES RECEIVED** (APPROVED FOR PAYMENT)

| SIGNATURE OF APPROVER FOR PAYMENT | DATE OF APPROVAL | Vendor/Contractor Taxpayer Identification Number (TIN) is required on all invoices. |
|---|---|---|

| REVOLVING FUND CHECK NUMBER | AMOUNT OF CHECK ISSUED<br>$ | TIN<br>████ | INCORPORATED<br>✓ Yes<br>No |
|---|---|---|---|

## DEPARTMENT USE ONLY

| DISTRICT | STATUS | CASELOAD | SSN | ACCOUNT CODE | AMOUNT | CASE SERVICE CODE | DATE OF SERVICE MO YR | FISCAL YEAR | CONTRACT/ SPECIAL PROGRAM |
|---|---|---|---|---|---|---|---|---|---|
| ██ | Service | ████ | | ██ | $219.61 | ██ | 08 2022 | 2022 - 2023 | |



# myNorthridge

**SOLAR SA**

**Manage Content**

**Content Management**

**Reporting Tools**

**Self-Service Password Change**

**CSUN Webmail**

**Browse by Category**

**Student How To's**

Edwin Nahavandi

go to ...

Financial Aid

## Award Summary
Financial Aid Year 2022-2023

Select the scheduled disbursements dates hyperlink to review when you may receive funds.

### Academic Year

| Award Description | Category | Offered | Accepted |
|---|---|---|---|
| State University Grant | Grant | 7,176.00 | 7,176.00 |
| DL Unsubsidized Loan 1 | Loan | 14,624.00 | 0.00 |
| Academic Year Totals | | 21,800.00 | 7,176.00 |

Currency used is US Dollar.

Financial Aid Summary

Accept/Decline Awards

### Spring Semester 2023 Term Award Detail

| Spring Semester 2023 | | View Scheduled Disbursement Dates | |
|---|---|---|---|
| Award Description | Category | Offered | Accepted |
| State University Grant | Grant | 3,588.00 | 3,588.00 |
| DL Unsubsidized Loan 1 | Loan | 7,312.00 | 0.00 |
| Term Totals | | 10,900.00 | 3,588.00 |

### Fall Semester 2022 Term Award Detail

| Fall Semester 2022 | | View Scheduled Disbursement Dates | |
|---|---|---|---|
| Award Description | Category | Offered | Accepted |
| State University Grant | Grant | 3,588.00 | 3,588.00 |
| DL Unsubsidized Loan 1 | Loan | 7,312.00 | 0.00 |
| Term Totals | | 10,900.00 | 3,588.00 |

Currency used is US Dollar

| | | | | |
|---|---|---|---|---|
| **Fall Semester 2022** | Student Representation Fee | $2.00 | | 04/18/2022 |
| **Fall Semester 2022** | Tuition and Other Fees | $4,488.00 | | 04/18/2022 |
| **Fall Semester 2022** | Tuition and Other Fees | | $125.00 | 05/26/2022 |
| **Fall Semester 2022** | State University Grant | | $2,082.00 | 08/26/2022 |
| **Fall Semester 2022** | CC HOUSING INITIAL PAYMENT | | $50.00 | 09/11/2022 |
| **Fall Semester 2022** | Housing Initial Charge | $50.00 | | 09/11/2022 |
| **Fall Semester 2022** | Housing | $4,476.33 | | 09/15/2022 |
| **Fall Semester 2022** | DL Unsubsidized Loan 1 | | $7,235.00 | 09/23/2022 |
| **Fall Semester 2022** | FINANCIAL AID BALANCE CHECK | $475.67 | | 09/26/2022 |
| **Fall Semester 2022** | Parking | $219.61 | | 09/26/2022 |
| **Fall Semester 2022** | VAN NUYS VR PKG | | $219.61 | 09/26/2022 |
| **Fall Semester 2022** | VAN NUYS VR TUI | | $777.00 | 09/26/2022 |
| **Fall Semester 2022** | FINANCIAL AID BALANCE CHECK | $777.00 | | 09/28/2022 |
| **Fall Semester 2022** | VAN NUYS VR TUI | | $1,390.00 | 11/03/2022 |

| | | | | |
|---|---|---|---|---|
| **Spring Semester 2023** | Tuition and Other Fees | $4,363.00 | | 01/20/2023 |
| **Spring Semester 2023** | Housing | | $3,234.73 | 01/26/2023 |
| **Spring Semester 2023** | DL Unsubsidized Loan 1 | | $4,437.00 | 01/27/2023 |
| **Spring Semester 2023** | State University Grant | | $2,082.00 | 01/27/2023 |

Moving Party's
# EXHIBIT J

| From: | Edwin Nahavandi |
|---|---|
| To: | Cristina Matsushima; Benjamin G. Diehl |
| Subject: | Re: Nahavandi v. CSU - Joint Stipulation - Request for signature |
| Date: | Tuesday, February 25, 2025 3:36:11 AM |

---

**EXTERNAL EMAIL:** This message was sent from outside DOJ. Please do not click links or open attachments that appear suspicious.

Benjamin G. Diehl and Cristina Matsushima,

I ask that when I do get killed, when they kill me, to tell the truth about why I died, and to please not deny that the State was involved in my death, after they kill me. I just wanted to protect my Jewish people, please don't allow them to kill me. I'm just upset that I'm going to die, it hurts. It's not right for the State to threaten to kill me, neither is it right to protect the State who threatens to kill me. I'm tired, I can't sleep, I had several nightmares of getting shot and killed and stabbed to death because of these threats to kill me. I'm afraid of dying, and I'm scared to death, I don't want to die. Playing with someone's life and threatening to kill them is wrong, your federal department should care about a Jewish persons life. Killing someone over this will only cause more fear to my community. If they chose to kill me for standing up, then let it only be me that dies, not my people. Please tell them, it's okay if they want to kill me, just don't kill my people, I don't want them to be in danger. Tell them to just kill me, even if it means that I will be killed for this.

On Mon, Feb 24, 2025, 6:33 PM Cristina Matsushima <Cristina.Matsushima@doj.ca.gov> wrote:

Mr. Nahavandi,

Pursuant to Local Rule 37-2.2, I have added the following language to the "Opposing Party's Position" section of the Joint Statement: "Plaintiff provided his response in a separate

document. See Matsushima Decl., ¶ 18, Ex. I." I will attach your Response (served 2/20/2025) to my declaration as Exhibit I. I have included a redlined version of the Joint Stipulation for ease of review.

Pursuant to LR 37-2.2, please sign, date, and return the clean copy by 7:00 p.m. tomorrow. I only need the executed signature page. Alternatively, please let me know whether I can add your electronic signature by 7:00 p.m. tomorrow.

Thank you.

CRISTINA M. MATSUSHIMA

Deputy Attorney General

California Department of Justice

Office of the Attorney General

300 South Spring Street, Suite 1702

Los Angeles, California  90013

Tel:  (213) 269-6218

Fax: (916) 731-2125

cristina.matsushima@doj.ca.gov

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

# CERTIFICATE OF SERVICE

Case Name: **Nahavandi v. Board of**               No.    **2:24-cv-03791 RGK(Ex)**
              **Trustees of the CSU**

I hereby certify that on <u>February 25, 2025</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DECLARATION OF CRISTINA M. MATSUSHIMA IN SUPPORT OF DEFENDANT'S MOTION FOR SANCTIONS AND RE PLAINTIFF'S FAILURE TO SIGN JOINT STIPULATION**

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

I further certify that some of the participants in the case are not registered CM/ECF users. On <u>February 25, 2025</u>, I have caused to be mailed in the Office of the Attorney General's internal mail system, the foregoing document(s) by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within three (3) calendar days to the following non-CM/ECF participants:

Edwin Nahavandi
5710 Comanche Ave.
Woodland Hills, CA. 91367
edwin.nahovandi@gmail.com

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>February 25, 2025</u>, at Los Angeles, California.

|  |  |
|---|---|
| Cecilia Apodaca | */s/ Cecilia Apodaca* |
| Declarant | Signature |

LA2024302735
67451666.docx